### UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Alexandra R Trunzo and Anthony Hlista, individually, and on behalf of other similarly situated former and current homeowners in Pennsylvania,<br><br>                        Plaintiffs,<br><br>vs.<br><br>Citi Mortgage, a mortgage servicer, LBPS, A Mortgage servicer and Phelan Hallinan & Schmieg, LLP; a law firm and debt collector.<br><br>                      Defendants. | Civil Action No. 2:11-cv-01124 |

### AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1.    Named Plaintiffs, a married couple, Alexandra R. Trunzo and Anthony Hlista ("Named Homeowners") bring this class action on behalf of themselves and other similarly situated homeowners ("Homeowners") against Defendants.  Homeowners seek damages resulting from Defendants' wrongful handling of their mortgage loans and illegal collection practices. Defendants, *inter alia*, charged, and attempted to collect, illegal and contractually unauthorized charges and fees on their mortgages.  Similar charges and fees were paid by Named Homeowners.

### PARTIES

2.    Named Homeowners, Alexandra R. Trunzo and Anthony Hlista, are married individuals residing at 2925 Idaho Avenue, Bethel Park, Pennsylvania.  Named Homeowners signed the Note and Mortgage with original lender, West Penn Financial ("WPF").  *See* Exhibit A and Exhibit B, attached hereto.  That Note and Mortgage was immediately assigned to Defendant,

1

Citi Mortgage, Inc. ("Citi"), attached hereto as Exhibit C.

3.      WPF was the original Mortgage Lender, but on, and after, August 31, 2007, Citi was the Residential Mortgage Lender as a result of WPF's assignment. *See* Exhibit C.

4.      Citi, a New York corporation, has its principal place of business in New York.   Citi owned and serviced Named Homeowners' loan immediately after the closing on August 31, 2007.  Citi was a creditor and/or lender during relevant time periods under the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.3.  As late as 2010, it was holding itself out to Named Homeowners, and the public, as the mortgagee.  *See* Exhibit D.  It is believed, and therefore averred, that Citi acquired all obligations under the Note and the Mortgage, but did not acquire the beneficial interest in the Note itself.  Instead, beneficial interest in the Note was acquired by FNMA, colloquially known as Fannie Mae.  *See* Exhibit E.  During the time period of August 31, 2007, to November 1, 2010, Citi also serviced the mortgage.  *See* Exhibit F.

5.      Seterus, Inc. ("Seterus"), formally, and interchangeably, known as IBM Lenders Business Process Service ("LBPS"), is a Delaware corporation, with its principal place of business in Oregon.  It is in the Mortgage servicing business.  LBPS began servicing Named Homeowners' Mortgage on or about November 1, 2010.  *See* Exhibit G, November 7, 2010, Transfer of Servicing Notice from LBPS.  At relevant times, LBPS was a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6) and both a debt collector and creditor and/or lender under the FCEUA, 73 P.S. § 2270.3.

6.      Defendant Phelan Hallinan & Schmieg, LLP ("Phelan"), is a Pennsylvania limited liability partnership with a principal law office located at One Penn Center Plaza, 1617 JFK Boulevard, Suite 1400, Philadelphia, Pennsylvania.  During the relevant times, it was a debt

collector under the FDCPA, 15 U.S.C. §1692a(6) and under the FCEUA, 73 P.S. § 2270.3 for Citi and, thereafter, LBPS.

7.    FNMA, colloquially known as Fannie Mae, is a public/private entity active in the secondary mortgage market.  It is believed that at all relevant times on and after August 31, 2007, FNMA owned the beneficial interest in Named Homeowners' Note, exclusive of the servicing rights and obligations.  FNMA is not a Defendant.  *See* Exhibit E.

## FACTS

8.    Non-defendant, WPF and Named Homeowners entered into a residential real estate loan transaction on August 31, 2007.  (*See* Exhibit A and Exhibit B, believed to be non-executed copies of the governing Note and Mortgage.)  Immediately all obligations under the Note and the Mortgage were assigned to Citi.  *See* Exhibit H, believed to be a non-executed copy of the Real Estate Settlement Procedures Act ("RESPA") Servicing Disclosure.   By the terms of the Mortgage, upon assignment of the Note, all servicing obligations to borrowers are retained or acquired by the owner of the servicing rights.  Exhibit B, ¶13 and ¶20.[1]

9.    Named Homeowners borrowed $69,900.00 from WPF at 7.25% APR and agreed to repay the loan to WPF (or the successors and assigns of the Mortgage and Note) by making monthly principal and interest payments of $476.85 over a thirty (30) year period.  Their payments were initially scheduled to begin on October 1, 2007, and end September 1, 2037.  Exhibit A.

10.    Named Homeowners also simultaneously agreed in the Mortgage contract to make monthly escrow payments for taxes and insurance, in amounts to be determined by WPF or its

---

[1] The assignments of record are not current. This is not unusual, and therefore, the assignments of record, the ownership interests at the time of the filing and not thereafter.  From the date that the note was assigned, by the terms of the Mortgage, all servicing obligations were transferred to whatever party serviced the Note.  From August 31, 2007, the servicing rights and obligations to borrower were owned by Citi and as of November 1, 2010, the servicing rights and obligations to borrower were owned by LBPS.

assigns pursuant to the RESPA, 12 U.S.C. §2601, *et seq.*  Exhibit B.

**Citi Mortgages Collection Attempts**

11.    Named Homeowners made monthly payments under the terms of their Mortgage in 2007, 2008, 2009, and part of 2010.  In August of 2010, Named Homeowners contacted Citi seeking an alternate arrangement enabling them to make up two missed payments.  On August 13, 2010, Named Homeowners received an August 6, 2010 letter (*see* Exhibit I), in which Citi offered to evaluate their financial situation.  Named Homeowners were provided ten (10) days to provide the requested financial information.

12.    Only four days after this offer, and well before the expiration of this ten (10) day period, on August 16, 2010, Named Homeowners attempted to make a payment to Citi.  Although they were only two months behind at the time the payment was tendered, Citi refused payment, stating their Mortgage had already been referred for foreclosure.  Soon thereafter, and still prior to the expiration of the ten (10) day period, Named Homeowners received an August 10, 2010 letter, from Defendant Citi (*see* Exhibit J) asserting that all reasonable efforts afforded them to cure the default had failed, and informing them that their loan had been referred to the law firm Phelan Hallinan & Schmieg, LLP, to begin foreclosure proceedings.  Referring a loan for foreclosure while a workout request was still pending violates the guidelines established by the department of the treasury implementing the HAMP program. Neither Citi nor Phelan ever sent an Act 6 Notice and/or an Act 91 Notice.  *See* Act 6, 41 P.S. §403(a) and Act 91, 35 P.S. §1680.403c.

13.    After their tendered payment was refused, and after receipt of Citi's August 10, 2010 letter, Named Homeowners contacted Defendant Phelan, enquiring about how to avoid foreclosure.  In an August 30, 2010 letter (*see* Exhibit K), Phelan stated that a total of $5,204.44

would be required to bring the loan current, if the funds were received in their office by September 10, 2010. This amount included $3,763.40 in payments due, $143.03 in late fees, and also included $1,298.00 in assorted legal fees and 'foreclosure costs'.

14.    Named Homeowners immediately obtained the assistance of counsel through Neighborhood Legal Services Association ("NLSA"), and were referred to Attorney Daniel Vitek.  Named Homeowners' counsel determined that only $3,906.44 of the requested amount represented legitimate charges under Pennsylvania law.  Named Homeowners promptly placed $3,906.44 into a NLSA client account.  In a September 9, 2010 letter to Phelan, Attorney Vitek pointed out that no 'Act 6 Notice of Intent to Foreclose' had been provided to his client and that accordingly, the $1,298.00 demanded of Named Homeowners violated Pennsylvania law.  *See* 41 P.S. §406(3).  That letter is attached hereto as Exhibit L.  Attorney Vitek requested a correction in the reinstatement figure provided by Phelan, and stated that his client was prepared to immediately tender the $3,906.44 held in escrow upon said correction.

15.    After receiving no response to this offer, Named Homeowners sought additional legal assistance from Attorney Malakoff in mid-October of 2010.

16.    On or around November 1, 2010, the servicing rights on Named Homeowners' loan were transferred to Defendant LBPS.  On November 9, 2010, LBPS sent Named Homeowners a letter (*See* Exhibit M) detailing all current charges on the account.  The total amount of debt indicated was $73,611.41, which included $1,359.00 over and above charges for unpaid principle, unpaid interest, and escrow overdraft.  This $1,359.00 advance was itemized under "Advances on Borrowers Behalf" and included $225.00 for "Title," $81.00 for "Property Inspections," $340.00 for "Foreclosure" and $713.50 for "Legal/Attorney"; these charges are inconsistent with those demanded in Phelan's letter of August 30, 2010.

5

17.    On November 17, 2010, a Qualified Written Request ("QWR") was sent to LBPS, requesting a detailed breakdown of all amounts alleged to be due and owing.

18.    In a December 6, 2010 letter (*See* Exhibit N), Defendant LBPS restated the amount required for reinstatement at $6,416.09, this included $3,814.80 for "Principle and Interest," $1,226.79 for "Escrow," and $1,374.50 in "Various Other Charges," including $1,053.50 for "Foreclosure Costs" and "Legal/Attorney".

19.    In a December 7, 2010 letter (*See* Exhibit O), Phelan demanded, on behalf of LBPS, $5,362.59 to reinstate Named Homeowner's loan.  This figure included $3,814.80 for "Principle and Interest," $1,226.79 for "Escrow," $96.00 for "Late Fees"[2], and $225.00 for "Title Services Work".  The charges and fees itemized in the December 7, 2010 letter, deleted the $1,053.50 dollars for "Foreclosure Costs" and "Legal/Attorney" itemized in the prior, December 6, 2010 letter. Subsequent communication between Attorney Malakoff and Phelan reaffirmed that this was the full amount demanded to pay the arrearage in full and reinstate the loan, and that this figure would be valid through December 14, 2010.

20.    On December 10, 2010, payment in full of the amount demanded by Phelan was sent to Phelan's offices. Included in this payment was $96.00 for "Late Fees"(actually fees for unreasonable serial inspections), and $225.00 for "Title Services Work". As no Act 6 or Act 91 notice had been provided, neither fee had contractual authority and/or was legal.

21.    By letter dated December 7, 2010 Phelan represented to the Named Homeowner's that:

> In accordance with your recent request, please find a reinstatement figure in the amount of $5,362.59, which is the amount needed to bring the account current

---

2 The $96.00 in "late fees" are averred to actually represent charges for unreasonable, serial home inspections undertaken pursuant to foreclosure, 6 of which billed at the rate of $13.50 and one at the rate of $15.00. This represented the third time that defendant's charged Named Homeowner's unreasonable and inappropriate inspection fees. All such fees were paid by defendant, and never subsequently refunded. There is no evidence that Citi, Phelan or LBPS ever disbursed these alleged fees to a third Party.  Strict proof, therefore, will be demanded.

with IBM LENDERS BUSINESS PROCESS SERVICES, INC.  Funds must be received in our office by December 14, 2011 in order to process and forward to our client.

The total amount demanded, $5,362.59 (as evidenced by an attachment to that letter) included an "Escrow Advance" of $1,226.79.  The demand from Phelan did not include an explanation that the $1,226.79 would only be sufficient to correct the Escrow shortage, but not sufficient to bring Named Homeowner's Escrow Account up to the required surplus. Thus, by paying what was demanded, named homeowners were quickly confronted with an escrow deficiency of $919.85.

22.    In a December 20, 2010 LBPS letter, escrow and account activity analysis demonstrated that the funds sent to Phelan were received and credited to Named Homeowners account, bringing the principle and interest current through, but not including, the January 1, 2011 payment, due a mere ten (10) days later . *See* Exhibit P.

23.    The December 20, 2010, correspondence also contained an invoice for the coming January payment.  The invoice correctly itemized the amount of Named Homeowners' monthly payment, but again demanded $1,053.50 in other charges. These charges are believed to be the same as those demanded in the December 6, 2010, statement of the requirements to reinstate the loan that had been deleted in the December 7, 2010, letter establishing the amount, verified subsequently in writing, required to bring the account current.  These charges, which are neither authorized by the mortgage contract nor Pennsylvania law, were in any event precluded by the completion of the December 7, 2010, Reinstatement Agreement.

24.    On January 4, 2011, a response to the QWR was received.  It showed that as of December, Named Homeowners' Mortgage was current.  It also showed that as of the end of December 2010, the escrow account was not overdrawn and stated that the $1,053.00 charge for attorney fees/mortgage costs had been waived.

7

25.     No corrected invoice for the January 2011 payment was ever received.  Furthermore, the invoice for the February payment still demanded the $1,053.00 charge for attorney fees/mortgage costs.  Exhibit Q.  Thus, for two months following Named Homeowners' satisfaction of their end of the Reinstatement Agreement, LBPS continued to bill Named Homeowners for contractually unauthorized and illegal fees and charges; fees and charges obviated by the reinstatement agreement, and which LBPS had agreed in writing to waive.  Thus, Named Homeowners were billed five times for illegal foreclosure fees and costs.

26.     Despite its failure to produce an accurate invoice, LBPS twice applied contractually unauthorized late charges of $23.84 when Named Homeowners failed to tender the inflated sums demanded in the inaccurate invoices submitted by LBPS for the January and February payments. Despite repeated requests, LBPS has refused to waive the January and February late charges, even while acknowledging the inaccuracy of the invoices.  The inaccuracies in the January and February invoices were substantial.  The invoices for January 2011 and February 2011 were for an excess of double the amount due and owing under the Note and Mortgage.

**Foreclosure Related Overcharges Paid by the Named Homeowners**

27.     Beginning in June 2010, and continuing thereafter, Named Homeowners were wrongfully charged $13.50 or $15.00 for "Delinquency Expenses," sometimes labeled "Inspection Fees" or "Late Charges."  These charges, which add up to $96.00, and were deceptively labeled "Late Fees," were all paid by Named Homeowners along with their payment bringing their loan current on December 10, 2010.  In addition to the $96.00 for "Late Charges" (actually "Inspection Fees"), Named Homeowners also paid $225.00 for "Title Services Work".  Apparently, in anticipation of litigation, Defendant LBPS attempted, but unsuccessfully, to refund this amount

to Named Homeowners, and divided the refund between offsets to escrow and reduction in principle.[3] Defendants' belated attempts to correct there illegal overcharge practices does not change the fact that Named Homeowners were at a minimum deprived of the use of their funds for several months without compensation.

28.   Named Homeowners were also charged "Late Fees" after being unable to pay statement invoices billed for January and February of 2011, which were dramatically inflated (more than doubled) by illegal foreclosure charges.

29.   During the pre-March 2011 time period, Named Homeowners were charged (and paid) unauthorized fees and expenses including foreclosure fees and expenses.  The added amounts charged and paid, prior to discovery, cannot be determined in some instances by the labels. However, "but for," the wrongful foreclosure charges, the unauthorized charges and fees would not have been incurred.  These wrongful foreclosure charges that would not have incurred, "but for" the wrongful foreclosure charges and expenses include property inspections, late charges and/or unauthorized interest charges calculated on a wrongfully inflated balance.  All of these "but for" charges, irrespective of the label, are wrongful foreclosure charges.

## CLASS ACTION ALLEGATIONS

30.   This class action is brought pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

31.   The class consists of all former or current homeowners (sometimes referred to as "Homeowners") who obtained financing secured by a first mortgage on property located within the Commonwealth of Pennsylvania, wherein collection demands on said mortgage loans were made by Defendant Phelan.  The class includes, but is not limited to, Homeowners whose Note

---

[3] In fact, Jonathan Bart, Wilentz Goldman & Spitzer, P.A., prior to December 16, 2010, had been retained to represent Phelan in this matter.

and Mortgage was serviced by Citi or LBPS. The class excludes Homeowners wherein no payments, or demands for payments, have been made in the past six years.

**Numerosity**

32.     The class is so numerous that it is impracticable to bring all Homeowners before this Honorable Court.  The exact number of Homeowners is unknown, but is believed to include well over 10,000.  The exact number and identity can be determined from Defendants' records.  In many instances, class members either are unaware that their claims exist or have sustained individual damages too small to justify the attorney's fees and other costs of maintaining individual lawsuits.  When aggregated, however, individual damages are sufficiently large to justify this class action.

**Predominance and Commonality**

33.     Defendants, Citi and LBPS, acquired servicing rights for Notes and Mortgages with Homeowners that contained identical or virtually identical monthly payment, escrow, and acceleration and foreclosure attorney fee provisions, except as to the numerical amount.

34.     Defendants Citi and LBPS used standardized electronic programs.  Therefore the type of charges (as opposed to numerical amounts) that were imposed on and collected from Named Homeowners were identical or virtually identical to the charges imposed on and collected from the Homeowners throughout the relevant time period.

35.     Defendant Phelan used standardized billing practices for its collection and foreclosure activities on behalf of Defendants Citi and LBPS.  Phelan's demands for actual and anticipated attorney's fees and costs in collection letters sent on Citi and LBPS' behalf were also on standardized forms.

36.     Common questions of law and fact exist and predominate over any individual questions

10

of law or fact and include, but are not limited to, the following:

1) Did Defendants Citi or LBPS breach their contractual obligations under the Mortgage when they charged and/or collected the following Phelan charges or fees:

    (1)    Attorney's fees and court costs that they had not yet incurred,

    (2)    Attorney's fees and court costs that they had not yet disbursed,

    (3)    Attorney's fees that were unreasonable, because they were calculated on a flat-rate or percentage basis without express contractual authorization,

    (4)    Attorney's fees that violated the Loan Interest and Protection Law ("LIPA"), 41 P.S. § 404 and 41 P.S. §406, and

    (5)    Attorney's fees that had not been awarded by a court?  (Count I)

2) To the extent that Defendants Citi or LBPS are not parties to Homeowners Mortgage contract, did said Parties charge, collect, and retain collection costs, foreclosure expenses and fees that were not authorized under the Homeowners' Notes and Mortgages, and which resulted in their unjust enrichment at Homeowners' expense? (Count II)

3) Did Defendants LBPS or Phelan charge and/or collect legally and contractually unauthorized charges or fees that were misrepresented to Homeowners in violation of the FDCPA, 15 U.S.C. §1692, et al.? (Count III)

4) Did Defendants LBPS or Phelan (as debt collectors) charge and/or collect unauthorized charges and fees that were misrepresented to Homeowners in violation of the FCEUA, 73 P.S. §2270.4(a)?  (Count IV)

5) Did Defendants Citi or LBPS, (as a creditor or lender) charge or collect unauthorized charges and fees that were misrepresented to Homeowners in violation of the FCEUA, 73 P.S. §2270.4(b)? (Count V)

6) Did Defendants Citi, LBPS, or Phelan violate the LIPA, 41 P.S. §404 and 41 P.S. §406 when they collected prohibited foreclosure related fees and costs?  (Count VI)

7) Did Defendants Citi, LBPS, or Phelan violate the Unfair Trade Practices and Consumer Protection Law ('UTPCPL"), 73 P.S. §201-1, *et seq*., when they each separately misrepresented the amount Homeowners owed and charged and collected excessive charges?  (Count VII)

## Typicality

37.    Named Homeowners' claims are identical or at least typical to the class claims.  Named Homeowners and the class of Homeowners have sustained virtually identical types of damages, have been subjected to identical illegal collection attempts, and their claims arise from identical or virtually identical provisions in their Notes and Mortgages (except for numerical amounts), and are based on identical legal theories.  Damages can be mechanically and mathematically determined from Defendants' business records.

## Adequacy of Representation

38.    Named Homeowners have and will continue to assure the adequate representation of members of the Homeowner class.  Named Homeowners' economic interest and the interests of the class members are squarely aligned.  Named Homeowners' claims are typical of the class's claims.  They have no conflict with class members in the maintenance of this action, and their interests are antagonistic to Defendants' interests.

39.    Named Homeowners have and will continue to vigorously pursue class members' claims. Named Homeowners can acquire the financial resources to litigate this action.   In this connection, Class Counsel has agreed to advance all reasonable costs to litigate this action and otherwise protect the class members.

40.    Class Counsel is experienced in litigating consumer class actions in the state and federal courts.  Class Counsel is handling this case on a contingent fee basis as awarded by this Honorable Court.

41.    There is a risk of inconsistent or varying adjudication if individual actions are maintained that could create incompatible standards of conduct for Defendants.  Moreover, adjudication of Named Homeowners' claims would, as a practical matter, be dispositive of the class claims.

There is no other known litigation in Pennsylvania presenting the complex contractual and statutory issues presented by this case.  Named Homeowners' claims and many of the other class members' claims arose in this judicial district.

42.    A class action provides the only known fair and efficient method of adjudicating this controversy.

43.    The substantive claims of the class are virtually identical in all material respects and will require evidentiary proof of the same kind and application and interpretation of the same Mortgages, Notes, and applicable laws.

44.    There are no unusual legal or factual issues which would cause management problems not normally and routinely handled in class actions because, *inter alia*, damages can be calculated mechanically and with mathematical precision, without the need for individual class member testimony.  Therefore, administering any class fund will be relatively cost effective. Named Homeowners believe, and therefore aver, that members of the class are unaware that their contractual and statutory rights have been violated, or, if aware, would be financially unable to pursue their claims individually because of the relatively small nature of their individual damages in relation to the value of the legal services that would be needed.  A class action is the only practical proceeding in which Homeowners can recover their losses.

### COUNT I

**Defendants Citi and LBPS Breached Their Contractual Obligations when Homeowners were Charged and/or Paid Unauthorized Attorney's Fees and Costs**

45.    The preceding paragraphs are incorporated.  Defendant Citi and/or LBPS has represented itself to the Named Homeowners as "the lender."  This Count includes Homeowners who were charged or paid attorney's fees and court costs as a result of a proposed state judgment never

signed, or signed only by the Prothonotary or its deputy.  This Count also includes post judgment fees and costs entered by a Prothonotary, unless such fees were added by the Prothonotary in the course of a merely ministerial implementation of a signed court order.  This Count excludes Homeowners who paid only attorney's fees and costs as a result of a state judgment signed by a Court.  Whether an entity is a lender, servicer and/or lender/servicer is based on its functions and activities and not necessarily on the label that it places upon itself.  Discovery is therefore needed to determine, from a functional or activity standpoint whether Citi and/or LBPS is, in fact, a lender, servicer and/or lender/servicer. In addition, such discovery will determine the precise time period(s) in which they were a lender, servicer and/or lender/servicer. Furthermore, according to the terms of the Mortgage (*see* Exhibit B) all servicing obligations to the borrower are held by the party that services the loan. Thus, with respect to the servicing obligations to the borrower inhering in the mortgage and note contracts, the servicer (here, either Citi or LBPS) is the contractually responsible party.

46.    Defendants, Citi and LBPS, breached their contractual obligations to Homeowners by charging and/or collecting attorney's fees and costs before acceleration of the debt, and before paying and disbursing such fees and cost to their attorneys.  *See* Exhibit A, ¶6(e).  [After acceleration "the note holder will have the right to be paid back by me for all its costs and expenses in enforcing this note …".]

47.    Defendants, Citi and LBPS, breached their contractual obligations to Homeowners by charging and/or collecting attorney's fees and costs before they were "incurred" or where not incurred at all.  *See* Exhibit B, ¶14.  ["Lender may charge borrower fees for **services performed** in connection with borrowers default …" (Emphasis added.)]

48.    Defendants, Citi and LBPS, breached their contractual obligations to Homeowners by

14

charging and/or collecting attorney's fees that were unreasonable, because, *inter alia,* they were calculated on a flat-rate or percentage-of-debt basis instead of an hourly basis without express contractual authority.  *See* Exhibit A, ¶6(e).

49.    Moreover, the LIPA only authorizes the mortgagee to collect "reasonable" and "actually incurred" attorney's fees as awarded by a court.  *See* LIPA, 41 P.S. § 406(2) ["Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorneys' fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor".]  There is no delegation of judicial power to a Prothonotary or deputy Prothonotary to award unliquidated damages (i.e. reasonable attorney fees).  Defendants Citi and LBPS breached their contractual obligations to Homeowners by charging and/or collecting attorney's fees that violated the LIPA, 41 P.S. §404(b)(3) and 41 P.S. §406.  Their Mortgages required them to abide by the terms and conditions of the LIPA, but they did not.  Exhibit B, ¶14.  ["Lender may not charge fees that are expressly prohibited by… Applicable law".]

50.    Finally, Defendants Citi and LBPS breached their contractual obligations to Homeowners by charging and/or collecting attorney's fees before sending any Act 6 or Act 91 Compliant Notice and before the expiration of the Act 6 mandated thirty (30) day notice period.  41 P.S. §403(a).  It was also a violation of Act 6 to charge attorney's fees, or the equivalent irrespective of the label, in excess of $50.00 prior to the commencement of foreclosure. 41 P.S. §406(3).  Their Mortgages required them to abide by the terms and conditions of the both Act 6 and Act 91, but they did not.  Exhibit B, ¶14.  ["Lender may not charge fees that are expressly prohibited by … Applicable law".]

51.    Homeowners have suffered damages as a result of Defendants Citi and LBPS breaches of

contract, including, *inter alia*, being charged or paying improper attorney's fees, costs, interest and late charges.  Named Homeowners paid some or all of these unauthorized charges.

WHEREFORE, Plaintiff-Homeowners request that contractual damages be awarded against Defendants Citi and LBPS for the breaches of contract that occurred within the past six years.  Plaintiff-Homeowners also seek an accounting.

## COUNT II

### Defendants Citi and/or LBPS were Unjustly Enriched

52.   The preceding paragraphs are incorporated, except for Count I.  This Count provides an alternative to Count I against Defendants Citi and LBPS. If Defendants Citi and LBPS are determined by the Court not to be party to the Homeowners' Mortgages or Notes, as claimed in Count I, then, in the alternative, Plaintiff-Homeowners assert this unjust enrichment claim against Defendants Citi and/or LBPS.

53.   Defendants Citi and/or LBPS had the contractual right under their Servicing Agreements to charge and collect and retain certain fees, costs and expenses it advanced to Homeowners and, in addition, to retain a percentage of the Homeowners' payments for its servicing activities.

54.   Defendants Citi and/or LBPS were unjustly enriched when they collected and retained contractually unauthorized (with respect to Homeowners' mortgage agreement) fees, costs and expenses from Homeowners and the class Homeowners, as set forth in Counts I.

55.   In addition, Defendants Citi and LBPS were unjustly enriched when they retained a percentage of the Homeowners' unpaid debt balance to the extent that such payments were wrongfully inflated as a result of charges, fees, costs and expenses unauthorized by the mortgage contract, that had been added to the Homeowners unpaid principle balance as identified in Count I.  Named Homeowners paid some or all of these unauthorized charges.

16

WHEREFORE, Plaintiff-Homeowners respectfully request that restitution be awarded against Defendants Citi and LBPS for unjust enrichment violations within the four year period preceding the date on which Homeowners' Original Complaint was filed.  Plaintiff-Homeowners also seek an accounting and constructive trust.

## COUNT III

**Defendants LBPS and Phelan Violated the Federal Fair Debt Collection Practices Act**

56.    The preceding paragraphs are incorporated.

57.    This Count is brought against Defendants Phelan (as a debt collector for Citi and/or LBPS), and LBPS (as a debt collector for FNMA) under the FDCPA, 15 U.S.C. §1692, *et seq*. Defendant Citi is not alleged to be a debt collector under the FDCPA.

58.    Pennsylvania Act 6, 41 P.S. §403(a) and Pennsylvania Act 91, 35 P.S. §1680.403c require that thirty-three (33) day notice (from the post marked date of the notice) compliant with Act 6 and Act 91 be provided prior to acceleration of the debt or commencement of foreclosure proceedings.   Act 6 further stipulates "no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act," and that only $50.00 can be charged during the period immediately following the expiration of the notice period but prior to the commencement of foreclosure.  41 P.S. §406(3).  [No other types of foreclosure related fees or costs were authorized.]

59.    Though no notice compliant with 41 P.S. §403(a) or 35 P.S. §1680.403c was ever sent by Defendants, or received by Homeowners, attorneys' fees were charged for which repeated attempts at collection were made.   Furthermore, attorney's fees in excess of $50.00 were demanded prior to the commencement of Foreclosure.  Defendants LBPS and Phelan violated the FDCPA by representing to Homeowners that they owed amounts they did not owe, including

17

charges for, *inter alia*, illegal, unincurred and/or unreasonable attorney's fees and court costs, improper late fees, and other contractually and legally unauthorized charges, including collection of illegal foreclosure fees and charges.  Defendants Phelan and LBPS violated the FDCPA by charging Homeowners for and/or collecting these improper charges.

60.    Debt collectors that make false representations about the "character, amount or legal status of any debt" violate the FDCPA, §1692e(2)(A).

61.    Debt collectors that charge, attempt to collect or collect amounts that are not "expressly authorized by the agreement creating the debt or permitted by law" violate the FDCPA, §1692f(1).  Named Homeowners paid some or all of these unauthorized charges.

WHEREFORE, Plaintiff-Homeowners respectfully request statutory damages, attorney's fees, and costs pursuant to 15 U.S.C.A. §1692k against Defendants Phelan and LBPS for its FDCPA violations within the year preceding the date on which Homeowners' Original Complaint was filed.

## COUNT IV

**Defendants LBPS and Phelan Violated the Pennsylvania Fair Credit Extension Uniformity Act Insofar as this State Law is Applicable to Debt Collectors**

62.    The preceding paragraphs are incorporated.

63.    This Count is brought against Defendants Citi and LBPS as debt collectors for FNMA, and Phelan as debt collectors for either Citi or LBPS and/or FNMA, under the FCEUA, 73 P.S. §2270.4(a)

64.    The FCEUA, §2270.4(a) makes it illegal for a debt collector to violate the provisions of the FDCPA, 15 U.S.C. §1692, *et seq.*  However, the violation period of the FCEUA is for two years rather than for one year as in the FDCPA.

18

65.     Defendants Citi, LBPS and Phelan's debt collection activities violated the FCEUA insofar as their conduct violated the FDCPA, as set forth in Counts III and IV.   Named Homeowners paid some or all of these unauthorized charges.

WHEREFORE, Plaintiff-Homeowners respectfully request an award of three times the actual damages sustained, but not less than one hundred dollars, attorney's fees and costs against Defendants Citi, LBPS and Phelan as provided for in the FCEUA, 73 P.S. §2270.5(a), which incorporates the statutory remedy provisions the UTPCPL, 73 P.S. §201-9.2, for their FCEUA violations within the two years preceding the date on which Homeowners' Original Complaint was filed.

## COUNT V

**Defendant Citi and LBPS Violated the Pennsylvania Fair Credit Extension Uniformity Act Insofar as it is Applicable to Creditors or Lenders**

66.     The preceding paragraphs are incorporated.   The FCEUA unlike the FDCPA applies to creditors or lenders, and is not limited to debt collectors.

67.     This Count is brought against Defendant Citi and LBPS as creditors under the FCEUA, 73 P.S. §2270.4(b), insofar as they were also engaged in lender transactions in addition to debt collection activities.

68.     The FCEUA does not exclusively focus on whether the Defendant "loaned the money" but instead, on whether the Defendant was owed a debt or allegedly owed a debt.   Thus, the FCEUA defines "creditor" as follows:

> A person, including agents, servants or employees conducting business under the name of a creditor and within this Commonwealth, to whom a debt is owned or alleged to be owed.

73 P.S. §2270.3.

19

69.    Defendants, Citi and LBPS, were persons "to whom a debt is owed or alleged to be owed."

70.    Creditors, like Defendants Citi and LBPS, that make false representations about the "character, amount or legal status of any debt" violate the FCEUA, §2270.4(b)(5)(ii).

71.    Creditors, like Defendant Citi and LBPS, that charge, attempt to collect or collect any amount that is not "expressly authorized by the agreement creating the debt or permitted by law" violate the FCEUA, §2270.4(b)(6)(i).

72.    Defendants Citi and LBPS violated the FCEUA by representing to Homeowners that Homeowners owed amounts that they did not, including charges for, *inter alia*, illegal, unincurred and/or unreasonable attorney's fees and costs (calculated on a flat-rate or percentage-of-debt basis instead of an hourly basis), and foreclosure related attorney's fees that had not been awarded by a court.

73.    Defendants Citi and LBPS violated the FCEUA by charging Homeowners for and/or collecting these improper charges.  Named Homeowners paid some or all of these unauthorized charges.

WHEREFORE, Plaintiff-Homeowners respectfully request an award of three times the actual damages sustained, but not less than one hundred dollars, attorney's fees and costs against Defendants Citi, LBPS and Phelan as provided for in FCEUA, 73 P.S. §2270.5(a), which incorporates the statutory remedy provisions from the UTPCPL, 73 P.S. §201-9.2, for their FCEUA creditor related violations within the two years preceding the date in which Homeowners' Original Complaint was filed.

## COUNT VI

**Defendants Citi, LBPS and Phelan Violated the Pennsylvania Loan Interest and Protection**

20

**Act by Collecting Prohibited Foreclosure- Related Attorney's Fees and Costs**

74.     The preceding paragraphs are incorporated.

75.     This Count against Defendants Citi, LBPS and Phelan arise under the LIPA, 41 P.S. §101 *et seq*.  This Count includes but is not limited to Homeowners with state judgments that were either not signed or signed by a Prothonotary or its Deputy.  This Count also includes post judgment fees and costs entered by a Prothonotary, unless such fees were added by the Prothonotary in the course of a merely ministerial implementation of a signed court order.  This Count excludes Homeowners who paid foreclosure attorney's fees and costs as a result of a state judgment signed by a Court.

76.     The LIPA, 41 P.S. §101 (Definitions) includes within its broad scope "persons" and "residential mortgage lenders," defined as follows:

> "Person" means an individual, corporation, business trust, estate trust, partnership or association or any other legal entity, and shall include but not be limited to residential mortgage lender.
>
> "Residential mortgage lender" means any person who lends money or extends or grants credit and obtains a residential mortgage to assure payment of the debt.  The terms shall also include the holder at any time of a residential mortgage obligation.

77.     Defendants, Citi and/or LBPS, based on their debt collection, loan forbearance and detention activities, are "residential mortgage lenders," "persons," and/or "creditors."

78.     The LIPA, 41 P.S. § 406 provides:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
>
> (1) Reasonable fees for services included in actual settlement costs.
>
> (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are

21

reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

(3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

79.     Defendants, Citi, LBPS and Phelan, charged or collected attorney's fees and costs that violated 41 P.S. §404 and 41 P.S. §406, including:

1)  Foreclosure-related attorney's fees and costs (in excess of $50) that were charged or collected before the expiration of the 33-day right to cure, in violation of LIPA, 41 P.S. §404;

2)  Foreclosure-related attorney's fees and costs (in excess of $50) that were charged or collected after the thirty-three-day right to cure expired but before a foreclosure complaint or other legal proceeding was filed, in violation of LIPA, 41 P.S. §406(3);

3)  Foreclosure-related attorney's fees that were charged or collected before they were "actually incurred," in violation of LIPA, 41 P.S. §406;

4)  Foreclosure-related attorney's fees that were percentage-fee based instead of hourly-based without express contractual authority, in violation of LIPA, 41 P.S. §406(2) which only authorizes "reasonable" fees.

5)  Foreclosure related fees and costs (pre and/or post the foreclosure judgment) that were not awarded by a court.

6) Overcharges resulting from violations of the Home Affordable Medication Program ("HAMP") in August 2010 and in violation of RESPA in December 2010. There overcharges are not authorized by law within the meaning of Act 6 §501 and §502.

80.     Belatedly on March 2, 2011, Defendant, LBPS, sent the Named Homeowners an Act 91 Notice.  Exhibit R (excerpted).

81.     The Defendants Citi and LBPS unilaterally could and would increase the Homeowners' debt by adding unauthorized amounts to their unpaid debt balance that it deemed due and owing.

82.   The unauthorized attorney's fees and costs that Defendants Citi, LBPS and Phelan collected are recoverable under the LIPA, 41 P.S. §501 and 41 P.S. §502.  Named Homeowners paid some or all of these unauthorized charges.

WHEREFORE, Plaintiff-Homeowners respectfully request an award of statutory damages and reasonable attorney's fees, costs, and expenses under LIPA, 41 P.S. §502 and 41 P.S. §503, against Defendants Citi, LBPS and Phelan for their LIPA violations within the four years preceding the date on which Homeowners' Original Complaint was filed.  In addition, Plaintiff-Homeowners respectfully request set-offs computed at triple the excess charges that they paid.

## COUNT VII

### Defendants Citi, LBPS and Phelan Violated the Unfair Trade Practices and Consumer Protection Law by Overcharging and Misrepresenting the Amounts Homeowners Owed

83.   The preceding paragraphs are incorporated.

84.   This Count arises under the UTPCPL, 73 P.S. §201-9.2.  The UTPCPL prohibits the following unfair practices:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

85.   Defendants Citi, LBPS and Phelan violated the UTPCPL by misrepresenting the amount that Homeowners owed, as set forth above in the preceding allegations.

86.   Overcharges resulting from violations of the Home Affordable Medication Program ("HAMP") in August 2010 and in violation of RESPA in December 2010.  There overcharges

are not authorized by law within the meaning of Act 6 §501 and §502.

87.   Homeowners paid the misrepresented and overcharged amounts in whole or part.  The fact of the Homeowners' payments, in part for the unauthorized charges added to their debt, establish the requisite "reliance" on Defendants' misrepresentations.

88.   Homeowners have suffered damages as a result of the overcharges and misrepresentations and overcharges made by Defendants Citi, LBPS and Phelan, including, *inter alia*, payment of excessive and improper charges, including the unauthorized acceleration related foreclosures fees and costs.  Named Homeowners paid some or all of these unauthorized charges.

WHEREFORE, Plaintiff-Homeowners respectfully request an award of statutory damages, attorney's fees, and costs, pursuant to the UTPCPL 73 P.S. §201-9.2, against Defendants Citi, LBPS and Phelan for their UTPCPL violations during the six years preceding the date on which Homeowners' Original Complaint was filed.

## REQUEST FOR RELIEF

WHEREFORE, Named Plaintiffs, a married couple, Alexandra R. Trunzo and Anthony Hlista, individually and on behalf of other similarly situation former and current homeowners in Pennsylvania, respectfully requests that this Honorable Court award the following relief:

1.   Under Court I, for contractual damages against Citi and LBPS for the breaches of contract that occurred within the past six years; and an accounting is also requested.

2.   Under Count II, for restitution against Defendants Citi and LBPS for unjust enrichment violations within the four year period preceding the date on which Homeowners' Original Complaint was filed; and an accounting and constructive trust are also requested.

3.   Under Count III, for statutory damages, attorney's fees, and costs pursuant to 15 U.S.C.A. §1692k against Phelan and LBPS for its FDCPA violations within the year preceding

24

the date on which Homeowners' Original Complaint was filed.

4.   Under Count IV, for an award of three times the actual damages sustained, but not less than one hundred dollars, attorney's fees and costs against, LBPS and Phelan as provided for in FCEUA, 73 P.S. §2270.5(a), which incorporates the statutory remedy provisions the UTPCPL, 73 P.S. §201-9.2, for their FCEUA violations within the two years preceding the date on which Homeowners' Original Complaint was filed.

5.   Under Count V, for an award of three times the actual damages sustained, but not less than one hundred dollars, attorney's fees and costs against Citi, LBPS and Phelan as provided for in FCEUA, 73 P.S. §2270.5(a), which incorporates the statutory remedy provisions the UTPCPL, 73 P.S. §201-9.2, for its FCEUA creditor related violations within the two years preceding the date in which Homeowners' Original Complaint was filed.

6.   Under Count VI, for award of statutory  damages and reasonable attorney's fees, costs, and expenses under LIPA, 41 P.S. §502 and 41 P.S. §503, against Citi, LBPS and Phelan for their LIPA violations within the four years preceding the date on which Homeowners' Original Complaint was filed.  In addition, Plaintiff-Homeowners respectfully request set-offs computed at triple the excess charges that they paid.

7.   Under Count VII, for an award of statutory damages, attorney's fees, and costs, pursuant to the UTPCPL, 73 P.S. §201-9.2 against Citi, LBPS and Phelan for their UTPCPL violations during the six years preceding the date on which Homeowners' Original Complaint was filed.

Respectfully submitted,

MICHAEL P. MALAKOFF, P.C.

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire
Pa. Id. #11048

25

Suite 200, The Frick Building
Pittsburgh, PA 15219
Telephone: (412)281-4217
Facsimile: (412)281-3262
malakoff@mpmalakoff.com

*Attorney for Plaintiff Homeowners, Alexandra Trunzo and Anthony Hlista, individually, and on behalf of other similarly situated former and current homeowners in Pennsylvania*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this **22nd** day of **November 2011**, a true and correct copy of the foregoing **Amended Class Action Complaint** was served on the following via the Court's electronic filing system:

Citi Mortgage, Inc.
c/o Thomas R. Johnson, Esquire
tom.johnson@klgates.com
Brian P. Anderson, Esquire
Brian.anderson@klgates.com
K&L GATES LLP
K&L Gates Center
610 Sixth Avenue
Pittsburgh, PA 15222

LBPS
c/o Kevin C. Meacham, Esquire
kcmeacham@jonesday.com
JONES DAY
500 Grant Street
Suite 4500
Pittsburgh, PA 15219

Phelan Hallinan and Schmieg, LLP
c/o Jonathan J. Bart, Esquire
jbart@wilentz.com
Daniel S. Bernheim, 3d, Esquire
dbernheim@WILENTZ.com
WILENTZ, GOLDMAN & SPITZER P.A.
Two Penn Center, Suite 910
Philadelphia, PA 19102

*/s/Michael P. Malakoff*
Michael P. Malakoff, Esquire