## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDRA R. TRUNZO and ANTHONY HLISTA, individually, and on behalf of other similarly situated former and current homeowners in Pennsylvania, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:11-cv-01124 |
| v. | ) ) | Judge Mark R. Hornak |
| CITI MORTGAGE, a mortgage servicer, LBPS, a mortgage servicer and PHELAN, HALLINAN, and SCHMIEG, LLP, a law firm and debt collector, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Motions for reconsideration play an important role in the adjudication of claims and defenses when they present a court with a compelling argument that its initial decision was erroneous because the Court did not consider controlling precedent, or mischaracterized or misapprehended the factual record. The quest to "get it right" is central to sound judicial decision making, and such motions can add to that effort. However, because the motion now before the Court (ECF No. 77) essentially restates, with added vigor, the arguments made

previously, and does not satisfy the substantial standard for reconsideration,[1] the Motion is denied.

In its Motion for Reconsideration, Defendant Phelan, Hallinan, and Schmieg, LLP ("PHS") first contends that this Court missed the mark in not dismissing claims against the law firm arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (2006), *et seq.* PHS argues again that because its first communication to the Plaintiffs was in response to an inquiry from them, this communication could not, as a matter of law, serve as the basis of an FDCPA claim since it is a "consumer initiated communication."[2] According to PHS, the response to a communication transmitted by a consumer, no matter the context or purpose, can never be the basis of an FDCPA claim, creating an absolute "safe harbor." In making this argument, PHS sidesteps the specific facts alleged in the Amended Complaint and fails to account for the mandate that in ruling on its Motion to Dismiss and on this Motion, the Court is obligated to consider those allegations as true when applying the applicable law.

The facts, as alleged, are that the Plaintiffs contacted PHS, not out of an effort to catch PHS in a simple calculation error and thereby generate the foundation for a baseless class action case[3], but because PHS's own client directed the Plaintiffs to PHS for the sole and central purpose of dealing with their actual debt at issue here. Plaintiffs' contact with PHS was <u>not</u>

---

[1] The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to address newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration will only be granted on one of the following three grounds: (1) if there has been an intervening change in controlling law; (2) if new evidence, which was not previously available, has become available; or (3) if it is necessary to correct a clear error of law or to prevent manifest injustice. *Max's Seafood Café ex rel Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

[2] This argument, focusing on the initial communication, discounts the fact there were multiple communications from PHS to Plaintiffs.

[3] *See* Def's PHS Mem. Of Law in Support of its Mot. for Reconsideration 8, ECF No. 78 [hereinafter PHS Mem.] ("If consumer initiated communications are permitted to create an en FDCPA claim. . . it creates a tremendous incentive for class action attorneys to send correspondence requesting pay off and reinstatement statements, hoping for error.") PHS also filed a Reply Memorandum in support of its Motion for Reconsideration, ECF No. 82 (hereinafter "Reply Mem."), which the Court has also considered.

"unsolicited," *see Lane v. Fein, Such & Krane, LLP*, 767 F.Supp. 2d 382, 387 (E.D.N.Y. 2011), but was expressly directed. Considering the facts as alleged in the Amended Complaint, the Plaintiffs cannot be considered the "originator" of the communications with PHS which were part of a series of communications aimed at getting Plaintiffs to pay money they owed. Plaintiffs allege that they had no choice but to communicate with PHS about its efforts to collect their debt because Plaintiffs were directed to do so; such communication was not a voluntary act.[4]

Further, the Amended Complaint and its attachments do not reveal this to be the type of case that PHS contends should drive the Court's consideration here, e.g., one stemming from a servicer's receipt of an unsolicited letter from a consumer who was poised to take pre-planned legal action when the lender's response contained an unintentional math error. Such a case, when and if it is filed, will be addressed in due course on its own merits.[5] The core allegation here is quite different, and does not invoke the parade of horribles PHS advances, because the Amended Complaint alleges that the sole and exclusive reason for contact between the Plaintiffs and PHS was the express written direction from PHS's client, after that client had closed the door on any further communications directly with Plaintiffs in their effort to keep their house.[6]

---

[4] It may be, as PHS argues in its Reply Memorandum at 9, that they are "merely" foreclosure lawyers engaged in foreclosing on properties in default. Or, it may be that their activities relative to delinquent mortgages are something more, such as collecting debts on behalf of their clients and acting as a vital cog in the process of "bring[ing] . . . account[s] current" with Citi Mortgage, Inc. [ECF No. 34-11]. That is precisely the sort of factual issue that cannot be resolved at the Motion to Dismiss stage.

[5] In their Reply Memorandum, PHS seems to argue that this is the case here, supplying the Court with correspondence to Plaintiffs dated July 6, 2010 advising Plaintiffs that they were in default and that Citi intended to foreclose. PHS also provides the Court with a stream of emails between it and Plaintiffs' counsel from December, 2010. To the extent PHS by those filings seeks to contest the factual picture painted by the Amended Complaint, or the motivation for the filing of this action, resolution of the Motion to Dismiss is not the procedural point to do so. Further, this latest filing by PHS does not address documents attached to the Amended Complaint as ECF Documents 34-9 through 34-11. While PHS seems to contend that this case has as its starting point an effort by Plaintiffs' counsel to "troll" for this case (Reply Mem. at 2, n.2), that contention would seemingly be belied by the fact that this matter began with an actual mortgage default and an actual foreclosure effort.

[6] The factual context of the lead case relied on by PHS is not akin to that present here, but instead deals with a communication from a consumer that had its genesis in the consumer's desire to gather information unrelated to any collection activity. *Gorham-DiMaggio v. Countrywide Home Loans*, No. 1:05-CV-0583, 2005 WL 2098068, at *2-

PHS further contends that the Court improperly reasoned that it was a "debt collector" engaged in "debt collection" because PHS included language in every one of its letters to Plaintiffs which stated that the purpose of each such letter was "debt collection" and that PHS is a "debt collector." PHS now advises the Court that it puts that language in every letter it sends out because it would be "foolhardy" not to do so. PHS Memo. 9. At first blush, this approach would seem to run wholly counter to the intent of the FDCPA that recipients of such letters be put on notice when a communication is actively aimed at debt collection. PHS would instead be necessarily arguing here that consumers, such as Plaintiffs, should not always believe that debt collection warning in its letters, since that language may be false, and, according to PHS, was not accurate in this case.[7] In any event, contrary to PHS's argument, the Court did not hold that this language was conclusive on this issue, only that its inclusion was plainly relevant. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215, 1217 (11th Cir. 2012) (stating inclusion of FDCPA debt collection language was evidence that party was a debt collector engaged in collecting a debt).

PHS also argues that because it was hired to foreclose on the Plaintiffs' residential mortgage, such activity is not "debt collection" by a "debt collector" for FDCPA purposes as a matter of law. PHS posited in a footnote to its Memorandum in Support of its Motion to Dismiss (ECF No. 20) that it was not a "debt collector" engaged in "debt collection" since law firms engaged to foreclose on residential mortgages are outside of the definition of either term. (ECF

---

3 (W.D. N.Y. Aug. 30, 2005) (involving a consumer phone call regarding status of uncashed check). The arguments that PHS advances might carry greater weight in those settings. They are unavailing on these alleged facts.

[7] If so, how is it that lay people, such as Plaintiffs, are to know when it is "real" and when it is not? Is such guesswork what Congress had in mind? In the context of the FDCPA, the "unsophisticated consumer is to be protected against confusion whatever form it takes," *Bartlett v. Heible*, 128 F.3d 497, 500 (7th Cir. 1997); *see Lasher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011), *cert. denied*, 132 S.Ct. 1143 (2012) (applying "least sophisticated debtor" standard).

No. 20, at 8 n.1). PHS concedes that courts considering this argument are not unanimous in their positions on this issue. *Compare Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x. 458, 460 (11th Cir. 2009) *with Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006). Given the language of PHS's letter to Plaintiffs regarding bringing "their account current" and stating that PHS was, in fact, a debt collector engaged in collecting a debt, the Court cannot say that PHS was, on those facts as averred in the Complaint, necessarily excluded from the definition of a "debt collector" collecting a "debt." *See Memmott v. OneWest Bank FSB*, No. 10-3042-CL, 2011 WL 1560985, at *5 (D. Or. Feb. 9, 2011) *adopted as modified by Memmott v. OneWest Bank, FSB*, No. 10-3042-CL, 2011 WL 1559298 (D. Or. Apr. 25, 2011).[8]

On this point, the Court finds Chief Judge Traxler's opinion in *Wilson* persuasive. *Wilson* held that excluding all foreclosures from the definition of "debt collections" creates an "enormous" and unintended "loophole" in the FDCPA and that attorneys standing in the shoes of PHS are not definitionally exempt from the FDCPA's "debt collector" provisions. 443 F.3d at 376-78. *See also Reese*, 678 F.3d at 1217-1219 (recognizing the necessity for a factual analysis of law firm's specific activity and communications as alleged and declining to adopt such bright-line exclusions from FDCPA coverage). In *Wilson*, the defendant law firm's first letter to the plaintiffs stated that it was for the purpose of debt collection. Its second letter included a "validation notice," but also said that it was not a debt collector and was not engaged in debt collection. 443 F.3d at 374-75. The *Wilson* court rejected the argument that because the

---

[8] PHS, relying on *Memmott v. OneWest Bank FSB*, claims that it cannot be a "debt collector" because it was not, either as a matter of fact or law, engaged in "debt collection." This is where PHS's decision to include in all letters its "we are debt collectors engaged in debt collection" boilerplate does create a problem at the Motion to Dismiss stage. PHS's August 30, 2010 letter to Plaintiffs speaks to "bring[ing] the above account current" and specifically states that "this firm [PHS] is a debt collector attempting to collect a debt." It is difficult to imagine language that would advise a consumer any more clearly that PHS is (a) a debt collector (b) attempting to collect a debt. If the truth is that this language was not operative in this case (and Plaintiffs should not have believed it to be so), those would be issues of fact not subject to resolution on a Motion to Dismiss.

foreclosure of a residence was akin to an *in rem* proceeding rather than the collection of a debt created by personal obligation, the law firm's activities were therefore exempt from FDCPA scrutiny. *Id.* at 376-77. The court concluded that attorneys engaged in the foreclosure process, particularly those involved in the process of consumers "reinstating" accounts (as was PHS in this case), are not excluded from the definition of "debt collectors." *Id.* at 377-79.[9] Here, the facts alleged place PHS in a position analogous to the defendant in *Wilson*, and for the reasons applied by the *Wilson* court, this Court declines to adopt PHS's contention that it, and its activities as alleged here, were conclusively outside of the FDCPA.

As to the Court's ruling regarding the state law Loan Interest and Protection Act ("LIPA") claims against PHS, PHS argues that this Court seemingly concluded, erroneously, that Judge Mitchell's opinion denying a Motion to Dismiss in *Glover v. Udren*, No. 08-990, 2010 WL 5829248 (W.D. Pa. Oct. 21, 2010) was binding precedent as to this claim. PHS argues that Judge Mitchell's decision was "vacated" as a result of the voluntary dismissal of those claims in that case and that, because of such vacation, the only law that this Court may or should (it is difficult to tell which level of imperative PHS urges) apply in this case is the recent opinion of Allegheny County Senior Common Pleas Judge R. Stanton Wettick in *Glover v. Udren Law Offices, P.C.*, No. GD-11-018015 (Pa. Ct. Comm. Pl. June 13, 2012). PHS implores this Court to read, again, Judge Wettick's Opinion and apply it here.[10]

---

[9] That attorneys may be classified as "debt collectors," depending on the facts in a given case, is well-settled law in this Circuit. *Crossley v. Lieberman*, 868 F.2d 566, 569-70 (3d Cir. 1989). The actual facts will significantly influence whether a law firm's activity makes it a "debt collector" engaged in "debt collection." *See Sandlin v. Shapiro & Fishman*, 919 F.Supp. 1564, 1567 (M.D. Fla. 1996).

[10] PHS also contends that this Court went off course in addressing the application of §502 of LIPA, 41 Pa. Cons. Stat. Ann. §502 (West 1999 & Supp. 2012) as to "residential mortgage lenders," claiming that it never argued that liability enforced via §502 could only be that of a "residential mortgage lender." PHS Memo. 4, 11. To the contrary, PHS argued that it could have no LIPA liability enforced via §502 because it was not a "residential mortgage lender" at pages 10-11 of its Brief in Support of its Motion to Dismiss (ECF No. 20).

The Court's Opinion in this case fully considered the reasoning of both Judge Mitchell and Judge Wettick, and while having a deep level of respect for Judge Wettick's judicial craftsmanship, the Court concluded, then and now, that the reasoning applied by Judge Mitchell in his *Glover* opinion is persuasive. The Court reached its conclusion not because either Judge Mitchell's or Judge Wettick's opinion was binding on this Court, but because of the Court's considered analysis of those opinions. The fact that the claims in *Glover* that were the subject of Judge Mitchell's opinion were later voluntarily dismissed by the parties does not, either as a matter of law or of logic, erase its reasoning.[11]

Finally, PHS urges the Court to now put the brakes on this case and certify it for immediate appellate disposition of the FDCPA and LIPA claims against it to our Court of Appeals. 28 U.S.C. §1292(b). In support of its request, PHS contends that there is a substantial risk of what would essentially be a discovery nightmare (PHS Memo. 14) if the FDCPA/LIPA claims against it remain in the case, and PHS is sufficiently certain of the error of this Court's reasoning to urge a pause in the proceedings while they seek immediate review. The Court is mindful that such an early decision on important legal issues could affect pretrial proceedings, but that is true in every civil action. At least at this point, the Court concludes that if the principal reason for an early appeal is a fear of unreasonable or disproportionate discovery, that is a matter this Court can deal with by regulating discovery, rather than stalling the case in its entirety while the 28 U.S.C. § 1292(b) petition process plays out. As noted in this Opinion, and the Court's initial Opinion, it is the application of legal principles to the actual facts pled here

---

[11] PHS contends that upon stipulated dismissal of the LIPA claims before Judge Mitchell, his opinion and its reasoning vanished. Whatever the law may be in other Circuits, *see* Michael Loudenslager, *Erasing the Law: The Implications of Settlements Conditioned Upon Vacation or Reversal of Judgments*, 50 Wash. & Lee L. Rev., 1229 (1993), that is most certainly not the law in this Circuit. Claims may go away, opinions and their reasoning do not. *Clarendon v. Nu-West Industries, Inc.*, 936 F.2d 127, 129 (3d Cir. 1991); *see also, U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994); *Sentinel Trust Company v. Universal Bonding Insurance Co.*, 316 F.3d 213, 220 (3d Cir. 2003); *Devore v. City of Philadelphia*, No. 00-3598, 2003 WL 21961975 (E.D. Pa. June 24, 2003).

that guides the Court's decision at the Motion to Dismiss stage.   In the Court's judgment, resolution of the FDCPA claims against PHS relates as much to a consideration of the facts alleged in the Amended Complaint as it does to the broader legal pronouncements PHS advances.   Further, as to the LIPA claims, they involve issues of state law and are therefore not more especially suited to early federal appellate review, particularly when a state appellate court is soon to consider them.   Pl's Resp. to Def.'s Mot. for Reconsideration 14, ECF No. 79.[12]

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated:  July 23, 2012

cc:      All Counsel of Record

---

[12] Specifically, as to the "communications initiation" argument advanced by PHS to avoid FDCPA liability, the Court concludes that there is simply not a "substantial ground for differences of opinion" as to the Court's legal ruling. 28 U.S.C. §1292(b).  The Court further concludes that expedited and piecemeal appellate review as to some, but not all, claims, (e.g. FDCPA and LIPA claims against PHS) against only one of several defendants will not materially advance the ultimate termination of the litigation. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754-55 (3d Cir. 1974) (*en banc*).