## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDRA R. TRUNZO and ANTHONY HLISTA, | ) ) | |
| | ) | Civil Action No. 2:11-cv-01124 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Mark R. Hornak |
| CITI MORTGAGE, et. al., | ) ) | |
| Defendants. | ) ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Before the Court are three motions: (1) Defendant CitiMortgage, Inc.'s Motion to Strike Class Allegations, ECF No. 80; (2) Defendant Phelan, Hallinan, and Schmieg, LLP's Motion Pursuant to Federal Rule of Civil Procedure 12(c) to Dismiss Class Action Allegations, ECF No. 100; and (3) Defendant Seterus, Inc.'s Motion to Deny Class Certification, ECF No. 103. The Court has reviewed the Amended Class Action Complaint filed by Plaintiffs Alexandra Trunzo and Anthony Hlista (collectively "Homeowners" or "Plaintiffs"), Defendants' respective Motions, and the corresponding briefs in support and opposition to these Motions. For the reasons that follow, (1) Defendant CitiMortgage, Inc.'s Motion to Strike Class Allegations is granted; (2) Defendant Phelan, Hallinan, and Schmieg, LLP's Motion Pursuant to Federal Rule of Civil Procedure 12(c) to Dismiss Class Action Allegations is denied without prejudice; and (3) Defendant Seterus, Inc.'s Motion to Deny Class Certification is also denied without prejudice.

# I. BACKGROUND

This Court explained the essential facts surrounding this case in *Trunzo v. Citi Mortgage*, 876 F. Supp. 2d 521 (W.D. Pa. 2012) ("*Trunzo I*"). They are as follows.

Plaintiffs bring a class-action suit against three defendants who are all related to the collection of payments due under Plaintiffs' mortgage and associated note. These defendants are CitiMortgage ("Citi"), LBPS ("Seterus"),[1] and Phelan, Hallinan, and Schmieg, LLP ("PHS"). According to the Amended Complaint, the purported class is comprised of

> all former or current homeowners (sometimes referred to as "Homeowners") who obtained financing secured by a first mortgage on property located within the Commonwealth of Pennsylvania, wherein collection demands on said mortgage loans were made by Defendant Phelan. The class includes, but is not limited to, Homeowners whose Note and Mortgage was serviced by Citi or LBPS. The class excludes Homeowners wherein no payments, or demands for payments, have been made in the past six years.

Pl.'s Am. Class Action Compl. ("Am. Compl."), ECF No. 34, ¶ 31.

Plaintiffs executed a promissory note and mortgage with their original lender, West Penn Financial ("WPF") on August 31, 2007, in order to purchase a house located in Bethel Park, Pennsylvania. Shortly after WPF and Plaintiffs completed their transaction, Plaintiffs received a document entitled "Notice of Assignment, Sale or Transfer of Servicing Rights" ("First Servicing Notice"). Am. Compl. Ex. C, ECF No. 34–3. The First Servicing Notice informed Plaintiffs that, on the same day that Plaintiffs obtained their mortgage from WPF, WPF transferred the servicing rights under the mortgage—i.e. "the right to collect payments"—to Citi. *Id.* The notice specifically provided that this transfer "does not affect any term or condition of the mortgage instruments, other than terms directly relating to the servicing of your loan." *Id.*

---

[1] LBPS has since changed its name to "Seterus" and will be referred to as such throughout this Opinion.

Plaintiffs also received a document from WPF entitled "Mortgagee Letter," which announced that Citi was the "new servicer of [Homeowners'] loan" and that all future correspondence and payments should be directed to Citi. Am. Compl. Ex. F, ECF No. 34–6. Similar to the First Servicing Notice, the Mortgagee Letter stated that the transfer of the servicing rights from WPF to Citi "[did] not affect any term or condition of the mortgage instrument." *Id.* While both the First Servicing Notice and Mortgagee Letter advised that the servicing rights were transferred to Citi on August 31, 2007, Plaintiffs assert that the beneficial interest in their note was acquired, and is currently held, by the Federal National Mortgage Association, colloquially known as "Fannie Mae." Am. Compl. ¶ 4, Ex. E., ECF Nos. 34, 34–5.

Plaintiffs met their payment obligations under their note until June 2010, when they ceased payment and entered into default on their mortgage. In early August 2010, Plaintiffs contacted Citi to negotiate an "alternate arrangement" whereby Plaintiffs would be able to become current on their mortgage. Am. Compl. ¶ 11, ECF No. 34. On August 13, 2010, Plaintiffs received a letter dated August 6, 2010 from Citi requesting certain financial information in order to evaluate whether Plaintiffs would be eligible for a modified repayment schedule, forbearance plan, loan modification, or other alternate method for Plaintiffs to return to good standing on their mortgage. Am. Compl. Ex. I, ECF No. 34–9. Plaintiffs were asked to respond with the requested information by August 16, 2010, which was ten (10) days from the date of the letter.

On August 16, 2010, Plaintiffs attempted to remit a payment to Citi, which was refused. Citi stated that it would not accept Plaintiffs' payment because their mortgage had, at that point, already been referred for foreclosure. Shortly thereafter, Plaintiffs received a letter dated August 10, 2010 from Citi's Foreclosure Department, informing Plaintiffs that their mortgage was still in

default and claiming "[a]ll reasonable efforts afforded you to cure this default have failed." Am. Compl. Ex. J, ECF No. 34–10. The letter further provided that Plaintiffs should refer all future questions to the law firm handling the foreclosure proceedings, Defendant PHS.

Accordingly, Plaintiffs contacted PHS and inquired about avoiding foreclosure. This inquiry by Plaintiffs to PHS led to a litany of conflicting reinstatement figures, fees, and costs that forms the primary nexus of Plaintiffs' Amended Complaint. This series of contradictory communications began on August 30, 2011, when Plaintiffs received an initial letter from PHS that contained a total reinstatement amount of $5,204.44 needed for Plaintiffs to become current on their mortgage. Am. Compl. Ex. K, ECF No. 34–11.

Meanwhile, Citi assigned its servicing rights to Plaintiffs' mortgage to Defendant Seterus on November 1, 2010. Plaintiffs were informed of this transfer via a letter entitled "Transfer of Servicing Notice" ("Second Servicing Notice"). Am. Compl. Ex. G, ECF No. 34–7. The Second Servicing Notice contains language similar to that found in the First Servicing Notice, namely that the transfer "[did] not affect any other terms or conditions of [Plaintiffs'] mortgage other than the terms directly related to the servicing of [their] mortgage loan." *Id.* Seterus promptly mailed Plaintiffs a letter on November 9, 2010 that detailed the total amount of their debt with fees, $73,611.41, but Seterus did not include in this letter a loan reinstatement amount.

The November 9th letter was followed by: (1) a December 6th letter from Seterus that included a reinstatement amount with fees, totaling $6,416.09, which was different from the reinstatement amount of the August 30th letter from PHS; and (2) a December 7th letter from PHS that included yet a third reinstatement amount with fees, totaling $5,362.59, which was different from the two prior amounts present in the November 9th and December 6th letters. Am. Compl. Exs. M, N, O, ECF. Nos. 34–13, 34–14, 34–15.

4

After remitting payment to PHS on December 10, 2010, Plaintiffs assert that their mortgage was current through, but not including, January 1, 2011. They received correspondence from Seterus on December 20, 2010 that seemingly advised Plaintiffs that their payment was received by PHS, because Plaintiffs' escrow account had been credited. However, Plaintiffs allege that the December 20th correspondence also included an invoice for January 2011, whereby Seterus demanded an additional, unauthorized payment of $1,053.50. Am. Compl. ¶ 23.

Then, on January 4, 2011, Plaintiffs received a response to a "Qualified Written Request" submitted to Seterus on November 17, 2010. Seterus's response showed that Plaintiffs were, at this time, current on their mortgage, their escrow account was not overdrawn, and that the $1,053.50 in attorney fees and mortgage costs had been waived. Despite this account statement, Plaintiffs claim to have again received an invoice from Seterus in February 2011 that included this same, supposedly-waived $1,053.50 charge. *Id.* ¶ 25. Plaintiffs also contend that Seterus levied late fees against them when they refused to pay this incorrect charge, which the servicer has repeatedly declined to waive even though, according to Plaintiffs, Seterus has admitted that the $1,053.50 was demanded in error.

On August 3, 2011, Plaintiffs filed a class-action complaint in the Court of Common Pleas of Allegheny County. ECF No. 1–2. Seterus removed Plaintiffs' action to this Court on September 1, 2011, based on several of Plaintiffs' claims that arise under federal law. ECF No. 1. Citi and PHS timely consented to the removal. ECF Nos. 3, 4. Each of the Defendants subsequently filed an initial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), to which Plaintiffs responded by filing an Amended Complaint. ECF Nos. 19, 22, 24, 34. After all three Defendants filed Motions to Dismiss, this Court granted Defendants' Motions in part and denied them in part.

As a result of this Court's June 25, 2012 Opinion and Order, Plaintiffs' Amended Complaint was trimmed down to the following four Counts: (1) unjust enrichment against Seterus (Count II); (2) violations of the federal Fair Debt Collections Practices Act against Seterus and PHS (Count III); (3) violations of the Pennsylvania Loan Interest and Protection Act under 41 Pa. Cons. Stat. Ann. § 502 against Seterus and PHS (Count VI); and (4) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law under 73 Pa. Cons. Stat. Ann. § 201-2(4)(xxi)) (Count VII). *See Trunzo I*, 876 F. Supp. 2d 521.

On February 1, 2013, this Court granted in part and denied in part Plaintiffs' Motion to Vacate the Initial Case Management Order in light of the Defendants' respective Motions to Deny/Strike/Dismiss the Trunzo's class allegations. *See* Order dated Feb. 1, 2013 (text-only entry). The provisions of subparagraphs 3(e)-(h) inclusive were stayed pending further Order of this Court. *Id.* On February 26, 2013, this Court granted Plaintiffs' Motion for Reconsideration, such that the provisions of subparagraph 3(d) of the Initial Case Management Order were also stayed. *See* Order, ECF No. 141. As a result of these Orders, the following provisions were stayed: (1) discovery related to class certification; (2) the filing of the parties' expert reports as to class certification; (3) depositions of class certification experts; (4) the filing of Plaintiffs' Motion for Class Certification, along with Defendants' Joint Memorandum in Opposition and any ensuing Reply by Plaintiffs; and (5) a class certification hearing.

## II. DISCUSSION

### a. Defendant Citi's Motion to Strike Class Allegations

Defendant Citi requests that the Court strike the class allegations against it contained in Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 23(d)(1)(D). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quotation marks omitted). "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1),(2), or (3)." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)-(b)). To satisfy Rule 23(a),

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply, adequacy).

*In re Cmty. Bank of N. Va.,* 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23).

As for the latter part of the Rule 23 analysis, Plaintiffs seek to certify their purported class under both Rule 23(b)(2) and Rule 23(b)(3). *See* Am. Compl. ¶ 30. Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . (3) the court finds that the questions of law or fact common to class members predominate [predominance] over any questions affecting only

individual members, and that a class action is superior [superiority] to over available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Under Rule 23(d)(1)(D), a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). However, courts grant motions to strike under Rule 23(d)(1)(D) before class discovery only in "the rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 246 (E.D. Pa. 2012) (quoting *Landsman & Funk P.C. v. Skinder-Strauss Associates*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)), and "no amount of discovery will demonstrate that the class can be maintained," *id.* at 245; *see also Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (holding that class certification was properly denied without discovery where plaintiffs could not make a *prima facie* showing of Rule 23's prerequisites or that discovery measures were not likely to produce persuasive information substantiating the class action allegations); *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 182 (M.D. Pa. 2008) (noting that a "district court will strike class allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action").

As the Supreme Court has noted:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982). "The plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed.R.Civ.P. 23 are satisfied or that discovery is likely to produce substantiation of the class

allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion. *Id.*[2]

Here, Defendant Citi requests that the Court strike all class allegations in Plaintiffs' Amended Complaint with respect to Citi. *See* Def.'s Mot. to Strike Class Allegations, ECF No. 80. In *Trunzo I*, this Court dismissed all of the claims against Citi except for Count VII, which alleges that Citi violated the catch-all provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Con. Stat. Ann. § 201-2(4)(xxi).

As an initial matter, this Court agrees that the allegations in Plaintiffs' Amended Complaint make clear that Plaintiffs' purported class cannot be certified under Rule 23(b)(2). As Plaintiffs concede, *see* Pls.' Br. in Opp'n at 7 n.6, nowhere in Plaintiffs' Amended Complaint have they requested any "final injunctive or corresponding declaratory relief[3] respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2). Rather, Plaintiffs request the following relief in the remaining Counts of their Amended Complaint: restitution, an accounting, and constructive trust

---

[2] Plaintiffs filed a Notice of Supplemental Authority at ECF No. 162, among many other such Notices, bringing to the Court's attention *Durso v. Samsung Electronics America, Inc.*, 2013 WL 5947005, *4 (D. New Jersey 2013), in which the United States District Court for the District of New Jersey concluded that a motion to strike was premature when it was filed before the plaintiffs' class certification motion was filed. However, the *Durso* court still recognized that "a defendant may move to strike class action allegations prior to discovery in cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Id.* at *3 (citing *Landsman & Funk PC*, 640 F.3d at 93 n.30). This Court does not find the *Durso* court's "premature motion to strike" analysis persuasive, as the *Durso* court characterizes a motion to strike class allegations under Federal Rule of Civil Procedure 23 as, "for all practical purposes, identical to an opposition to a motion for class certification." *Id.* at *4. That is not necessarily so. An opposition to a motion for class certification does not *per se* entail the argument that "no amount of discovery will demonstrate that the class can be maintained," *Goode*, 284 F.R.D. at 246, and that the district court can "strike allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action," *Woodard*, 250 F.R.D. at 182. Rather, this narrow premise is the province of a defendant's motion to strike. Plaintiffs also filed a Notice of Supplemental Authority at ECF No. 151 for *Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013), and *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013), citing these cases for the proposition that class discovery is important. While that is undoubtedly true in certain circumstances, the purpose of a motion to strike class allegations is for the defendant to allege, in those "rare cases," that the complaint itself demonstrates that the requirements for maintaining a class action cannot be met, such that class discovery is unnecessary.

[3] "Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note.

in Count II; statutory damages, attorney's fees, and costs under the Federal Fair Debt Collection Practices Act in Count III; statutory damages, attorney's fees, costs, and expenses under the Pennsylvania Loan Interest and Protection Act in Count VI; and statutory damages, attorney's fees, and costs under the UTPCPL in Count VII.

Rule 23(b)(2) certifications do "not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) Advisory Committee Note. Accordingly, the Supreme Court has held that claims for monetary relief cannot be certified under Rule 23(b)(2) where "the monetary relief is not incidental to injunctive or declaratory relief" and "each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores*, 131 S. Ct. at 2557. The named Plaintiffs' Amended Complaint does not request injunctive or corresponding declaratory relief of any kind. Thus, Plaintiffs cannot seek to certify their purported class under Rule 23(b)(2).

### b. Plaintiffs' class allegations are deficient under Rule 23(a)(3) and Rule 23(b)(3) because Plaintiffs' UTPCPL claim against Citi is not typical of the putative class and individual issues predominate.

It is also plain from the face of Plaintiffs' Amended Complaint that Plaintiffs' purported class fails under the antecedent typicality requirement of Rule 23(a)(3), as well as under the predominance requirement of Rule 23(b)(3). As explained above, "sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims." *Falcon*, 457 U.S. at 160. "The plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed.R.Civ.P. 23 are satisfied *or that discovery is likely to produce substantiation of the class allegations.*" *Mantolete*, 767 F.2d at 1424 (emphasis added). Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion. *Id.*

In Plaintiffs' Amended Complaint, Plaintiffs define the putative class as:

all former or current homeowners (sometimes referred to as "Homeowners") who obtained financing secured by a first mortgage on property located within the Commonwealth of Pennsylvania, wherein collection demands on said mortgage loans were made by Defendant Phelan. The class includes, but is not limited to, Homeowners whose Note and Mortgage was serviced by Citi or LBPS. The class excludes Homeowners wherein no payments, or demands for payments, have been made in the past six years.

Am. Compl. ¶ 31.  To satisfy Rule 23(a), the defined class must meet the Rule's requirements of numerosity, commonality, typicality, and adequacy of representation.  *See In re Cmty, Bank of N. Va.*, 622 F.3d at 291.  Further, Rule 23(b)(3) sets forth that:

A class action may be maintained if Rule 23(a) is satisfied and if:

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
    (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3) (emphasis added).  Citi avers that Plaintiffs' class allegations are deficient under Rule 23(a)(3) because Plaintiffs' claim is not typical of the putative class, and Plaintiffs' class allegations are deficient under Rule 23(b)(3) because individual issues predominate.  The essence of Citi's whole argument is that the named Plaintiffs' "allegations give rise to defenses possessed by Citi that are unique to the named Plaintiffs' specific circumstances – in particular, defenses concerning the elements of causation and deceptive conduct."  Mem. in Supp. of CitiMortgage Inc's Mot. to Strike Class Allegations ("Def.'s Mem.

in Supp."), ECF No. 81, at 1. "Those defenses are based on Plaintiffs' own allegations,[4] which show that their particular alleged harm (a December 2010 payment of $5,362.59) occurred as a result of what Plaintiffs allege happened at a time when Citi had nothing to do with Plaintiffs' mortgage." *Id.* at 1-2. Citi further avers that the named Plaintiffs' purported class cannot be certified under Rule 23(b)(2) because Plaintiffs are not requesting any "final injunctive or corresponding declaratory relief," *id.* at 4; *see* Fed. R. Civ. P. 23(b)(2), and Plaintiffs' purported class fails under the antecedent typicality requirement of Rule 23(a)(3) and the predominance requirement of Rule 23(b)(3).

Plaintiffs, on the other hand, contend that "dismissal of the class allegations at this early stage would prevent the Trunzos from developing a class record through discovery," that Citi's "causation defense" and "justifiable reliance" defense are without merit, and that "the deceptive conduct pled . . . preceded the initiation of the foreclosure process, and began in August of 2010 when the Trunzos contacted Citi to negotiate an alternative arrangement whereby they would be able to come current on their mortgage[,] . . . [and] instead of waiting to receive the Trunzos' financial information as requested, Citi promptly referred the Trunzos' delinquent debt to Phelan who immediately made its allegedly unauthorized and illegal attorneys' fee and costs demands." Pls.' Substituted Br. in Opp'n to Citi's Mot. for a Protective Order ("Pls.' Br. in Opp'n"), ECF No. 118, at 14, 22.

Plaintiffs assert that they pled two types of UTPCPL losses in their Amended Complaint: "first, when a charge was incurred (with or without payment), it resulted in an automatic lien on their property. The Trunzos were, therefore, automatically injured by an ascertainable loss of the value of their property." *Id.* at 5 (citing *Burns v. Pa. Department of Correction*, 544 F.3d 279,

---

[4] In this way, these are really not "defenses," but are, in reality, arguments that the Amended Complaint itself lacks the necessary plausible allegations that would support all the necessary elements of the substantive claim for relief.

286-87 (3d Cir. 2008)). Second, Plaintiffs aver that "during the foreclosure process the Trunzos also incurred an ascertainable loss of money . . . result[ing] from the payment of the foreclosure related charges." *Id.*

Citi counters that it is not arguing that the ultimate validity of its "defenses" can (or even must) be determined based on the face of Plaintiff's Amended Complaint, as Plaintiffs represent, *see id.* at 14, but that "[i]t is clear, however, from the complaint itself and its attached exhibits that Citi has individualized causation defenses based on the unique circumstances concerning Plaintiffs' loan." Def.'s Resp. in Supp. of Mot. to Strike Class Allegations ("Def.'s Resp."), ECF No. 136, at 6. "Whether those defenses ultimately succeed will be decided at a later date, but because those individual defenses will be the focus of the litigation going forward, this case cannot proceed as a class action." *Id.* The Court will address the elements of Rule 23, as they pertain to Plaintiffs' class claim against Citi, *seriatim.*

### 1. Rule 23(a)

#### a. Numerosity

"There is no minimum number of members needed for a suit to proceed as a class action," but "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Marcus*, 687 F.3d at 595 (internal citation omitted). Plaintiffs allege in their Amended Complaint that "[t]he exact number of Homeowners is unknown, but is believed to include well over 10,000." Am. Compl. ¶ 32. The Court therefore finds that the numerosity requirement of Rule 23(a) could be met.

### b. Commonality

The commonality requirement is satisfied "if the named plaintiffs share at least one common question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013). In *Wal-Mart Stores, Inc. v. Dukes*, the United States Supreme Court explained that a plaintiff attempting to satisfy the commonality requirement must demonstrate that the claims of the proposed class members "depend upon a common contention" that is "capable of classwide resolution." 131 S. Ct. at 2551. In order for a "contention" to constitute a "common question," it must yield the same answer with respect to each member of the proposed class. *Id.*; *id.* at 2556 ("for purposes of Rule 23(a)(2), even a single common question will do"). Here, inasmuch as the question of whether Citi "engag[ed] in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" would be a factual and legal claim common to the entire class, this criterion could be met (as the parties do not contest). *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *Lester v. Percudani*, 217 F.R.D. 345, 349-50 (M.D. Pa. 2003).

### c. Typicality

"The concepts of typicality and commonality are closely related and often tend to merge." *Marcus*, 687 F.3d at 598 (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Indeed, "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (citing *Falcon*, 457 U.S. at 157). "Typicality, however, derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other

members of the class even though common issues of law or fact are present." *Marcus*, 687 F.3d

at 598 (internal quotations omitted).

To determine whether a named plaintiff is markedly different from the class as a whole,

courts engage in a comparative analysis that addresses three distinct, though related, concerns:

> (1) The claims of the class representative must be generally the same as those
> of the class in terms of both (a) the legal theory advanced and (b) the factual
> circumstances underlying that theory; (2) the class representative must not be
> subject to a defense that is both inapplicable to many members of the class
> and likely to become a major focus of the litigation; and (3) the interests and
> incentives of the representative must be sufficiently aligned with those of the
> class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).  Although varying

factual circumstances among class members will not always preclude the finding of typicality,

*Newton v. Merrill Lynch*, 259 F.3d 154, 184 (3d Cir. 2001), typicality will be defeated where "a

class representative is subject to unique defenses which threaten to become the focus of the

litigation," *Schering Plough*, 589 F.3d at 598; *Porter v. Nationscredit Consumer Disc. Co.*, 229

F.R.D. 497, 499 (E.D. Pa. 2005) (denying certification of UTPCPL claim), *aff'd*, 285 Fed. Appx.

871 (3d Cir. 2008).

Indeed, the Third Circuit has "explained the rationale behind this principle, noting that

the 'challenge presented by a defense unique to a class representative' is that 'the representative's

interests might not be aligned with those of the class, and the representative might devote time

and effort to the defense at the expense of issues that are common and controlling for the class.'"

*Schering Plough*, 589 F.3d at 598 (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir.

2006)).  In the end, the typicality requirement is not satisfied unless the "alleged cause of [the]

injuries is some common wrong" applicable to all class members.  *Baby Neal*, 43 F.3d at 58

(citing *Falcon*, 457 U.S. at 157-59).

Here, Plaintiffs' purported class, as it relates to the only remaining allegations against Citi for violations of the UTPCPL, fails to meet the typicality standard because the legal theories controlling the potential class members' claims are not, and would not be, consistent class-wide.[5] Citi has identified individualized causation issues (lack of causation and intervening causes) arising from the specific circumstances of the named Plaintiffs' claim which demonstrate that their claim is not typical of the putative class.

The UTPCPL is Pennsylvania's consumer protection law. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa. Super. Ct. 2012). Its purpose is to prevent "[un]fair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," as defined by the Act. *Id.*; 73 Pa. Cons. Stat. Ann. § 201-3. After this Court's decision in *Trunzo I*, § 201-2(4)(xxi), also known as the "catchall provision," is the only UTPCPL provision remaining in this case under Count VII. Section 201-2(4)(xxi)'s reach is expansive, in that it  encompasses a wide range of circumstances, given that a defendant need only engage in "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" for liability to attach.  73 Pa. Cons. Stat. Ann. § 201-2(4)(xxi).

As Citi emphasized at the Motion to Dismiss stage of this case, Citi was not an original signatory to the note and mortgage.  However, as this Court noted in *Trunzo I*, "the Third Circuit in *In re Smith*, 866 F.2d 576 (3d Cir. 1989), emphasized that a district court should not limit the UTPCPL's application to only those circumstances where the unfair or deceptive conduct induced the consumer to make the initial purchase." *Trunzo I*, 876 F. Supp. 2d at 543 (citing *In*

---

[5]  Plaintiffs contend that "this Honorable Court would not have denied Citi's Fed.R.Civ.P. 12(b) Motion to Dismiss under the UTPCPL claims" "if Citi's asserted defenses can be determined based on the face of the Trunzos' Complaint without discovery."  However, as this Court noted in *Trunzo I*, "[t]he propriety of class action treatment for the claims that will survive the various Motions to Dismiss [was] not currently before the Court."  *Trunzo I*, 876 F. Supp. 2d at 527.

*re Smith*, 866 F.2d at 576). To interpret the statute otherwise "would insulate all kinds of practices from the UTPCPL, such as debt collection, which occur[s] after entering an agreement and which w[as] not a basis for the original agreement." *Id.*

However, the UTPCPL's expansive reach is not limitless. The UTPCPL does not impose liability on a loan assignee absent claims of an assignee's wrongdoing. *Murphy v. F.D.I.C.*, 408 Fed. Appx. 609, 611 (3d Cir. 2010); *Williams v. Nat'l Sch. of Health Tech., Inc.,* 836 F. Supp. 273, 283 (E.D. Pa.1993) (noting that the UTPCPL "does not impose liability on parties who have not themselves committed wrongdoing."); *Roche v. Sparkle City Realty,* 2009 WL 1674417, at *4 (E.D. Pa. 2009) ("[N]umerous courts have found that loan assignees cannot be held liable under the UTPCPL without allegations that they specifically committed wrongdoing.").

Moreover, the UTPCPL contains a "stringent causation requirement" mandating that Plaintiffs allege and prove that Citi's actions caused their alleged losses. *See Williams v. Empire Funding Corp.*, 227 F.R.D. 362, 366 (E.D. Pa. 2005); *see also Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) (noting that the Pennsylvania Supreme Court has "categorically and repeatedly stated that, due to the causation requirement in the Consumer Protection Law's standing provision, 73 Pa. Cons. Stat. § 201-9.2(a) (permitting suit by private plaintiffs who suffer loss 'as a result of' the defendant's deception), a private plaintiff pursuing a claim under the statute must prove justifiable reliance.").[6]

---

[6] Plaintiffs contend that *Hunt v. U.S. Tobacco Co.*, as a pre-*Bennett* Third Circuit interpretation of Pennsylvania law, is outdated, given the *Bennett* court's seminal ruling that "deceptive conduct which creates a likelihood of confusion or misunderstanding can constitute a cognizable claim under Section 201-2(4)(xxi)," and that "heightened 'fraud pleading' standards are not required to maintain a cause of action under the 'catch-all' section of the UTPCPL." Based on *Bennett*, Plaintiffs in essence aver that reliance is not an element of a "catch-all" provision claim when deceptive conduct is alleged under the UTPCPL. However, *Bennett* was silent on whether reliance is still an element of a deceptive conduct UTPCPL claim (there being multiple elements of common law fraud), and in fact cites approvingly to three cases where reliance is indeed a recognized element of such a claim. *See Bennett*, 40 A.3d at 153 (citing *Schnell v. Bank of New York Mellon*, 828 F. Supp. 2d 798 (E.D. Pa. 2011); *Vassalotti v. Wells Fargo Bank, N.A.,* 732 F. Supp. 2d 503, 510 n. 7 (E.D. Pa. 2010); *Seldon v. Home Loan Services, Inc.,* 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009)); *see also Weinberg v. Sun Co, Inc.*, 777 A.2d 442, 446 (Pa. 2001) (recognizing that

To maintain any private action under the UTPCPL, Plaintiffs must allege and prove that they sustained an "ascertainable loss of money or property . . . *as a result of*" the defendant's allegedly deceptive conduct. 73 Pa. Cons. Stat. Ann. § 201-9.2 (emphasis added); *see Williams*, 227 F.R.D. at 371 (a private UTPCPL plaintiff must "establish that defendant's purportedly unlawful conduct caused a definable loss of money or property"). Moreover, in the context of class litigation, it is well-settled that "a plaintiff must have standing to represent a class by showing that he has been personally injured and not than an injury has been suffered by other unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

---

justifiable reliance is a required element in all [*footnote continued from previous page*] private actions seeking money damages under the UTPCPL); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438-39 (Pa. 2004) (same); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 203 (Pa. 2007) (same). Indeed, while the *Bennett* court held that "heightened fraud pleading standards are not required to maintain a cause of action under the catch-all section of the UTPCPL," *Bennett* did not specify whether that lower standard does or does not include individual reliance. Notably, post-*Bennett*, the Pennsylvania Superior Court has recognized that the UTPCPL plaintiff must still prove justifiable reliance and causation, because the legislature "never intended [the] statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 592 (Pa. Super. Ct. 2013); *see also Kern v. Lehigh Valley Hosp., Inc.*, 2013 WL 5925741, at *3 (Pa. Com. Pl. 2013) ("it is apparent that the Supreme Court of Pennsylvania has not wavered in its holding that reliance is an element required under the UTPCPL and that the *DeArmitt* case, which . . . was decided by the same Court as *Bennett*, concurs with the Supreme Court's previous holdings on the issue of reliance"). On January 30, 2014, the Pennsylvania Supreme Court granted allowance for appeal in *Grimes v. Enterprise Leasing of Philadelphia*, 2014 WL 349263 (Jan. 30 2014) on this key issue, certifying for appeal "whether the Superior Court erred when it held that a private plaintiff who alleges deceptive conduct under the UTPCPL's catch-all provision 73 P.S. § 201-2(4)(xxi) need not allege and prove justifiable reliance, contrary to the decisions of this court, earlier decisions of the Superior Court, and federal decisions construing the UTPCPL."

Plaintiffs filed a related Notice of Supplemental Authority at ECF No. 160, noting the case of *Belmont v. MB Investment Partners, Inc.*, 708 F.3d 470, 497-499 (3d Cir. 2013), and contending that the *Belmont* court "retreated" from *Hunt*'s UTPCPL decision when it observed that "[i]t appears that a UTPCPL claim based on deceptive conduct differs from a claim based on fraudulent conduct in that a plaintiff does not need to prove all of the elements of common-law fraud or meet the particularity requirement of Federal Rule of Civil Procedure 9(b)." *Id.* at 498 n. 33. However, *Hunt* analyzed and concluded, after reading the "stringent causation requirement" of the UTPCPL together with the statute's catch-all provision, that justifiable reliance is part and parcel with causation under the UTPCPL, and must be considered when a court analyzes whether a private plaintiff has established that its loss was suffered "as a result of" the defendant's deception. *Hunt*, 538 F.3d at 221 (citing 73 Pa. Cons. Stat. Ann. § 201-9.2(a)). This Court does not find any "retreat" from *Hunt* by the *Belmont* court; rather, the *Belmont* court plainly recognized that "[a]s a threshold issue, neither [one of the plaintiffs] have stated a UTPCPL claim against [the defendant] because they have not alleged any conduct on his part, deceptive or otherwise, that caused them to invest in North Hills." *Belmont*, 708 F.3d at 499 (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001) (noting that a UTPCPL plaintiff must demonstrate that he justifiably relied on the defendant's deceptive practice and that he suffered harm *as a result of* that reliance)).

Here, Plaintiffs' purported class, as it pertains to Plaintiffs' UTPCPL claims against Citi, fails to meet the typicality standard because the legal theories and defenses controlling the potential class members' claims are not, and would not be, consistent class-wide. In addition, Citi has an individualized lack-of-causation argument arising from the specific circumstances of named Plaintiffs' claim, which further demonstrates that the named Plaintiffs' claim is not typical of the putative class.

Plaintiffs' defined class is comprised of homeowners "who obtained financing secured by a first mortgage on property" in Pennsylvania, "wherein collection demands on said mortgage loans were made by Defendant [PHS]," and the "class includes, but is not limited to, Homeowners whose Note and Mortgage was served by Citi or [Seterus]." Am. Compl. ¶ 31.

In their Amended Complaint, Plaintiffs allege in Count VII that (1) Citi "violated the UTPCPL by misrepresenting the amount that Homeowners owed, as set forth in the previous allegations," *Id.* at ¶ 85; and (2) that "Homeowners paid the misrepresented and overcharged amounts in whole or part[, and t]he fact of the Homeowners' payments, in part for the unauthorized charges added to their debt, establish the requisite 'reliance' on Defendants' misrepresentations," *id.* at ¶ 87. As for damages, Plaintiffs claim that "Homeowners have suffered damages as a result of the overcharges and misrepresentations and overcharges made by Defendants, including, *inter alia*, payment of excessive and improper charges, including the unauthorized acceleration related foreclosure fees and costs. *Named Homeowners paid some or all of these unauthorized charges*." *Id.* at ¶ 88 (emphasis added).

As to Citi, the named Plaintiffs do not allege that they made any payment in response to the August 30, 2010 letter they received while Citi still held the servicing rights to their loan. *See* Am. Compl. ¶¶ 13, 14. Rather, Plaintiffs assert that their alleged harm, their December 10,

2010 payment of $5,362.59, was allegedly in response to a December 7, 2010 letter sent to them by Seterus, which occurred more than a month after Citi transferred its servicing rights to Seterus on November 1, 2010. *See* Pls.' Am. Compl. ¶¶ 16, 19, 20.

Plaintiffs have alleged no facts to suggest that they sustained, as the UTPCPL requires, an "ascertainable loss of money or property . . . *as a result of*" Citi's allegedly deceptive conduct. *See* 73 Pa. Cons. Stat. Ann. § 201-92 (emphasis added).   As to any UTPCPL claims, the allegations in Plaintiffs' Amended Complaint simply set forth that Plaintiffs' purported harm, their December 10, 2010 payment, was not caused by Citi, but was allegedly in response to a letter sent to them by Seterus more than a month after Citi had transferred its servicing rights to Seterus.   Accordingly, Citi argues that under the allegations in Plaintiffs' own Amended Complaint, "that [Citi's] transfer of servicing rights on November 1 and the letters purportedly sent by or on behalf of the transferee, [Seterus], are superseding or intervening causes that cut off any causal connection between actions purportedly on behalf of Citi in August 2010 and the damages plaintiffs allegedly incurred in December 2010."   This critical causation issue is likely to become a "major focus of the litigation," *Schering Plough*, 589 F.3d at 599, such that "the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class," *Beck*, 457 F.3d at 296; *see also Baynes v. George E. Mason Funeral Home, Inc.*, 2011 WL 2181469, at *6 (W.D. Pa. June 2, 2011) ("the damages recoverable under the UTPCPL must be 1) reasonably foreseeable to the defendant at the time of the transaction, and 2) proximately caused by the defendant's actions"); *Caruso v. Celsius Insulation Res., Inc.*, 101 F.R.D. 530, 535 (M.D. Pa. 1984) ("examples of individual questions that we find are not readily susceptible of common treatment are . . . the existence of superseding and intervening causes.").

Plaintiffs cite to *Bartholomew v. Fischl*, 782 F.2d 1148, 1153 (3d Cir. 1986), for the proposition that Citi is nevertheless liable if its conduct triggered the chain of events that ultimately caused Plaintiffs' harm. Pls.' Br. in Opp'n at 15-16. However, *Bartholomew* is a § 1983 case, not a UTPCPL case, and accordingly, no mention is made in *Bartholomew* about the "stringent causation requirement" of the UTPCPL, and to the Court's knowledge *Bartholomew* has never been cited in a UTPCPL case on the issue of causation. *See generally Bartholomew*, 782 F.2d 1148. Yet, even the *Bartholomew* court makes clear that a discriminatory employment policy or an official interpretation of it in a § 1983 case must still be the proximate cause of the plaintiff's alleged injury. *Id.* at 1153.

Even if this Court were to entertain Plaintiffs' *Bartholomew* "start the ball rolling" theory, Plaintiffs' Amended Complaint and its attached exhibits demonstrate that the claims against Citi present the unique causation issues as to the named Plaintiffs that Seterus's allegedly wrongful conduct was not a "continuation" of Citi's foreclosure conduct because Plaintiffs did not make "payments based on Citi's charges after Seterus acquired the accounts." *See* Pls.' Br. in Opp'n at 16.

This is demonstrated by the various letters that Defendants sent to Plaintiffs that are at issue in this case, and upon which Plaintiffs rely in their Amended Complaint. As Citi explains, the August 30, 2010 letter allegedly sent on Citi's behalf listed charges of $138 for Property Inspections/BPO, Am. Compl. Ex. K, while the letter sent on Seterus's behalf on December 7, 2010 — which resulted in the payment that allegedly injured the Plaintiffs, Am. Compl. ¶¶ 19-20, 27, — listed "$0.00" for Property Inspections and BPO, Am. Compl. Ex. O. Similarly, Citi's August 30 letter listed $160 for Prothonotary costs, $75 for Sheriff costs, $225 for additional foreclosure costs, and $700 for attorney's fees. Am. Compl. Ex. K. The December 7 Seterus bill

that Plaintiffs actually paid listed "$0.00" for each of these categories. Am. Compl. Ex. O. And while Citi's August 30 letter listed $143.04 for late charges, Seterus's December 7 letter listed $96 in late charges. Am. Compl. Exs. K, O. Plaintiffs allege that Seterus's December 7 late charges of $96 were "actually fees for unreasonable serial inspections," Am. Compl. ¶ 20, but there is no such allegation about the $143.04 in late charges in Citi's August 30 letter. *See also Trunzo I*, 876 F. Supp. 2d at 529 (explanatory table).

As Citi notes, "[b]y Plaintiffs' own allegations, the amounts listed in the August 30 letter were never paid. Rather, Plaintiffs paid *different* amounts, *not* sought in the August 30 letter, to Seterus in December 2010 – well after Citi transferred the servicing rights for Plaintiffs' loan to Seterus." Def.'s Resp. in Supp. at 4 (citing Am. Compl. ¶ 16; *Trunzo I*, 876 F. Supp. 2d at 529). It follows that even if this Court were to entertain Plaintiffs' "continuing conduct" or "start the ball rolling" theories or Plaintiffs' unpled "automatic lien" theory (as explained below), any purported lien based on the August 30 letter, having been effectively eliminated by Seterus's December 7 letter, plainly evidences what Citi has identified as unique causation issues with the Plaintiffs' claims.

In their Brief in Opposition, Plaintiffs assert a new, never-before-pled "automatic lien" theory, contending that every time Citi levied a charge or fee on the Plaintiffs, that charge "resulted in an automatic lien on their property" and that lien purportedly represented an "ascertainable loss of the value of their property" recoverable through a UTPCPL action. Apart from the fact that Plaintiffs have failed to cite any Pennsylvania state law on point with regard to an automatic lien theory under the UTPCPL that would classify the mere charging of fees as an "ascertainable loss of money or property, real or personal," *see* 73 Pa. Cons. Stat. Ann. § 201-9.2, Plaintiffs cannot, in effect, amend their Amended Complaint via their Brief in Opposition to

Citi's Motion to Strike. *See, e.g., Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.,* 836 F.2d 173, 181 (3d Cir.1988) (a plaintiff may not amend her complaint through arguments in a brief in opposition to a motion for summary judgment; "it is one thing to set forth theories in a brief, it is quite another to make proper allegations in a complaint"); *McKivitz v. Twp. of Stowe,* 769 F. Supp. 2d 803, 836 n. 26 (W.D. Pa. 2010).

In Paragraph 87 of their Amended Complaint, Plaintiffs do aver that "they suffered damages as a result of the overcharges . . . including, *inter alia,* payment of excessive and improper charges." Am. Compl. ¶ 87. However, Plaintiffs' use of the term "*inter alia*" hardly puts Citi on notice sufficient to satisfy the requirements of Federal Rule of Civil Procedure 8, let alone the pleading standards enunciated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009),[7] or even the even more stringent class action pleading requirements of *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 309-12, 316 (3d Cir. 2008).

---

[7] The Court notes that Plaintiffs have filed numerous notices of supplemental authority in support of this unpled automatic lien theory. *See In re Estate Landis,* 2014 WL 169842 (Pa. Super. 2014) (ECF No. 170) (lien is a constitutionally protected property interest under the Fifth Amendment of the United States Constitution); *Knight v. Springfield,* 2013 WL 6224622 (Pa. Super. 2013) (ECF No. 169) (the economic loss doctrine is not applicable to UTPCPL claims); *D'Agostino v. Maldonado,* 78 A.3d 527 (N.J. 2013) (ECF No. 157) (interpreting New Jersey's unfair trade practices statute); *Salvati v. Deutsche Bank Nat. Trust Co., N.A.,* 2013 WL 1314777 (W.D. Pa. 2013) (ECF No. 147) (the named Plaintiffs disagreeing with the *Salvati* court's conclusion that an unpaid fee is not an ascertainable loss).

As noted in footnote 5, above, on January 30, 2014, the Pennsylvania Supreme Court granted allowance for appeal in *Grimes v. Enterprise Leasing of Philadelphia* to resolve the issue of "[w]hether the Superior Court erred when it held [in *Grimes*] that a plaintiff may satisfy the UTPCPL's 'ascertainable loss' requirement by voluntarily hiring an attorney and allegedly incurring litigation costs to challenge allegedly wrongful conduct, even where, as here, the plaintiff paid no money to the defendant as a result of that conduct." *Grimes v. Enter. Leasing Co. of Philadelphia,* 84 A.3d 1058 (Pa. 2014); *but see generally* 73 Pa. Stat. Ann. § 201-9.2 (setting forth that "the court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees," after providing that "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater").

Regardless of the Pennsylvania Supreme Court's ultimate decision in *Grimes,* Plaintiffs, as explained above, never pled an "automatic lien" theory, and cannot, in effect, amend their Amended Complaint via their Brief in Opposition to Citi's Motion to Strike.

This Court concludes that typicality is lacking because, based on Plaintiffs' own pleading, there are necessarily individualized causation issues as to Citi under the "stringent causation requirement" of the UTPCPL, and the circumstances of the named Plaintiffs' claim, as pled by Plaintiffs, demonstrate that the named Plaintiffs' UTPCPL claim against Citi could not be typical of the purported class claims for the purpose of class-wide adjudication under Rule 23(a)(3).

### d. Adequacy

The final requirement under Rule 23(a) is that the named plaintiff must be able to "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The "adequacy" inquiry has two components: first, the adequacy inquiry "tests the qualifications of the counsel to represent the class; second, it seeks to "uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 521 (3d Cir. 2004). While the parties do not affirmatively dispute this Rule 23(a) requirement, this Court concludes that given "the challenge presented by a defense unique to a class representative[,] the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class," such that, as to Count VII against Citi, the named Plaintiffs are not an adequate representative of the purported class. *See Beck*, 457 F.3d at 301 ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

## 2. Rule 23(b)(3)

### a. Predominance

Plaintiffs "must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1),(2), or (3)." *Marcus*, 687 F.3d at 591. Even if Plaintiffs had satisfied the typicality and adequacy prerequisites of Rule 23(a), which they have not, Plaintiffs fail to satisfy the predominance requirement of Rule 23(b)(3). Rule 23(b)(3) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . (3) the court finds that the questions of law or fact common to class members predominate [predominance] over any questions affecting only individual members, and that a class action is superior [superiority] to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

"Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d at 310-11 (internal quotations omitted) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This is "a standard far more demanding than the commonality requirement of Rule 23(a)." *Id.* at 311 (internal quotations omitted). Simply put, "[i]ssues common to the class must predominate over individual issues." *Id.* (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 313-14 (3d Cir. 1998)).

"Predominance will not be met where class members' claims would lead to disparate applications of legal rules, including matters of causation, comparative fault, and the types of damages available to each plaintiff." *Porter v. Nationscredit Consumer Discount Co.*, 229 F.R.D. 497, 498 (E.D. Pa. 2005) (analyzing purported UTPCPL class and denying class certification); *see also Lester v. Percudani*, 217 F.R.D. 345, 353 (M.D. Pa. 2003) (denying class certification for a UTPCPL claim because "[a]lthough the fraudulent acts themselves may be

common to the proposed class, issues of causation and proof of damages mandate the conclusion that individual issues will predominate in a class action of this type"). Ultimately, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* (quoting *Newton v. Merrill Lynch*, 259 F.3d 154, 172 (3d Cir. 2001)).

Here, the unique causation issues as to Citi and the named Plaintiffs (lack of causation and intervening causes), as discussed in this Court's analysis of typicality, preclude satisfaction of the predominance requirement of Rule 23(b)(3). The catch-all provision under which Plaintiffs bring their UTPCPL claim against Citi requires proof of "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. Ann. § 201-9.2.

As to Citi's purportedly deceptive conduct, the named Plaintiffs' own allegations plainly demonstrate the individual issues present. Plaintiffs allege that Citi "violated the UTPCPL by misrepresenting the amount that Homeowners owed, as set forth above in the previous allegations." Am. Compl. ¶ 8. However, as analyzed above with respect to typicality, the allegations in Plaintiffs' Amended Complaint plainly set forth that Plaintiffs' purported harm, their December 10, 2010 payment, was not caused by Citi, but was allegedly was in response to a letter sent to them by Seterus, more than a month after Citi had transferred its servicing rights to Seterus. Accordingly, lack of causation will be a critical issue in this case because of the "stringent causation requirement" of the UTPCPL, and Plaintiffs' failure to plead that their harm, that December 10 payment to Seterus, occurred "as a result of" Citi's conduct. Indeed, "although the fraudulent acts themselves may be common to the proposed class, issues of causation . . . mandate the conclusion that individual issues will predominate in a class action of this type." *See Lester*, 217 F.R.D. at 353. Therefore, as to Plaintiffs' only remaining class

allegations against Citi, Plaintiffs' have failed to satisfy the predominance requirement of Rule 23(b)(3). In light of the highly-individualized inquiries that will be necessary, this Court also concludes that, looking at Plaintiffs' Amended Complaint alone, a class action against Citi under the UTPCPL is not "superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

For each, and all, of these reasons, Citi's Motion to Strike Class Allegations is therefore granted.[8]

---

[8]    Plaintiffs' Motion to Compel Defendant, Citi, To Produce Documents and for Enforcement of Fed.R.Civ.P.26(a)(1) as Interpreted by LCvR23, ECF No. 122, is rendered moot by this Opinion. In their Motion, Plaintiffs represent that the Trunzo's Request for Production of Documents is or is likely to lead to relevant class information relating to (1) Citi's alternative payment arrangement conduct; (2) Citi's refusal to accept a monthly payment conduct; and (3) Citi's mislabeling and overcharging of foreclosure costs and fees conduct. Pls.' Br. in Supp., ECF No. 123, at 1. Plaintiffs contend that Citi "failed to satisfy its initial disclosure obligations with respect to the class allegations and its class defenses under Fed.R.Civ.P.26(a)(1)(A)(ii)," Pls.' Br. in Supp. at 4-5, which requires that "a party must, without awaiting a discovery request, provide to the other parties: a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii); *see also* LCvR 23(B) ("for any action sought to be maintained as a class action, the initial disclosures provided by all parties pursuant to Fed. R. Civ. P. 26(a)(1) shall include disclosures regarding the class certification allegations and any defenses thereto").

According to Plaintiffs, "[n]ot a single document was produced about its standardized computer programs, which would show how its computer programs determined foreclosure fees and costs for the Trunzos and other homeowners in Pennsylvania." Pls.' Br. in Supp. at 5. Simply put, Plaintiffs aver that "Citi provided the same documents that it would have provided if the Trunzos had filed an individual action and, even then, it omitted many documents (including its standard practices and policies) that are or that could lead to relevant evidence with respect to the Trunzo's individual claims," concluding that "[s]uch discovery is ultimately necessary for this Honorable Court to determine the existence or non-existence of common questions of law and fact with regard to the putative class." *Id.* at 8-9.

Citi counters that "[u]nder Plaintiffs' interpretation of Rule 26(a)(1) and Local Rule LCvR 23(B), a party's initial disclosure obligations would be so broad as to purportedly require the party to automatically disclose any documents that relate in any way to the allegations of the complaint and any possible defenses." Def.'s Resp., ECF No. 134, at 1. To the contrary, Citi avers that Rule 26(a)(1) "requires only that Citi make certain disclosures concerning '*its* claims or defenses' – not Plaintiffs' claims – and LCvR 23(B) simply provides that this obligation applies to class certification 'defenses.'" *Id.* at 1-2. Regardless, Citi asserts that Plaintiffs do not need any class discovery to respond to Citi's Motion to Strike, given that "*no discovery* is needed to consider and decide Citi's Motion to Strike[] because Citi's motion is based on the allegations of the complaint and the exhibits attached to the complaint." *Id.* at 8. Citi points out that even in the face of a Motion to Strike, the Court suggested that Plaintiffs prepare a Rule 30(b)6 Notice of Deposition that would include a "tight and focused" list of topics relevant to their response to Citi's Motion to Strike, a suggestion that Plaintiffs have not followed. *Id.* at 7 n.6.

This Court agrees with Citi. As set forth above, the premise of a motion to strike class allegations is that "no amount of discovery will demonstrate that the class can be maintained." *See Goode*, 284 F.R.D. at 245; *Landsman & Funk P.C.*, 640 F.3d at 93 n.30. By virtue of this Court's granting of Citi's Motion to Strike, grounded

### b.  **PHS's Motion for Judgment on the Pleadings under Rule 12(c)**

Defendant PHS contends that it is entitled to judgment on the pleadings with respect to the class allegations set forth in Paragraphs 30 through 44 of Plaintiffs' Amended Complaint. Def.'s Mot. Pursuant to Fed. R. Civ. P. 12(c) to Dismiss ("PHS's Mot. for J.") at 2.  Under Rule 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is governed by the same standards as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, this Court must accept all allegations of the Amended Complaint as true and draw all reasonable inferences in favor of Plaintiffs.

In *Trunzo I*, this Court ruled on PHS's Motion to Dismiss under Rule 12(b)(6), ECF No. 35, and denied PHS's Motion to Dismiss Count III of Plaintiffs' Amended Complaint; dismissed with prejudice all of Plaintiffs' claims against PHS that relied on the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"); denied PHS's Motion to Dismiss Count VI of Plaintiffs' Amended Complaint, and denied PHS's Motion to Dismiss Count VII of Plaintiffs' Amended Complaint. Here, PHS has filed a Motion for Judgment on the Pleadings to dismiss Plaintiffs' Amended Complaint as to Counts III, VI, and VII, which is governed by the same standard as PHS's Motion to Dismiss Plaintiffs' Amended Complaint already ruled upon in *Trunzo I. See Turbe*, 938 F.2d at 428. Therefore, to the extent that PHS moves for Judgment on the Pleadings as to Counts III, VI, and VII, this Court denies PHS's Motion for the same reasons as before.

However, while PHS titles its motion, "Motion for Judgment on the Pleadings," its motion is plainly written as a motion to strike class allegations because PHS contends that "a

---

in its analysis and review of the allegations in Plaintiffs' own Amended Complaint and its attached exhibits, and the necessary result of these analyses, Plaintiffs' Motion to Compel, ECF No. 122, is rendered moot.

defendant may move to dismiss class allegations prior to discovery where the complaint demonstrates that the requirements for maintaining a class action cannot be met." Def.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings to Dismiss Pls.' Class Action Allegations ("Def.'s Mem. in Supp."), ECF No 101, at 6-7.   Indeed, PHS avers that on its face, Plaintiffs' Amended Complaint demonstrates that (1) Plaintiffs' claims are not typical of the purported class, *id.* at 7; and (2) Plaintiffs are not adequate representatives of the purported class, *id.* at 12. Therefore, based on PHS's motion, this Court will embark on an analysis of whether Plaintiffs' class allegations as to PHS can be stricken prior to the completion of class certification discovery, based solely on the allegations set forth in Plaintiffs' Amended Complaint.

### 1. Typicality

PHS avers that Plaintiffs' purported class fails the typicality requirement of Rule 23(a) because Plaintiffs, as class representatives, are subject to unique defenses "that threaten[] to play a major role in the litigation." *Id.* at 8.   These defenses are (1) "[Plaintiffs] initiated the communication at issue" under the FDCPA § 1692e claims; (2) "[w]ith respect to the Act 6 claims, they are subject to the defense . . . that no action lies against an attorney under Sections 404 and 406 of the Act;" and (3) that "the unique circumstances of substantial attorney involvement by Messrs. Vitek and Malakoff present additional unique defenses" that extend to "all aspects of claims of deception under" the UTPCPL, as well as under the FDCPA, which "would not be subject to the 'least sophisticated consumer standard' but rather, the 'competent lawyer standard.'" *Id* at 9-11.

As discussed above, varying factual circumstances among class members will not always preclude typicality, *Newton*, 259 F.3d at 184, but typicality will be defeated where "a class representative is subject to unique defenses which threaten to become the focus of the litigation,"

*Porter*, 229 F.R.D. at 499. Ultimately, the typicality requirement is not satisfied unless the "alleged cause of [the] injuries is some common wrong" applicable to all class members. *Baby Neal*, 43 F.3d at 58.

Here, although class certification discovery has been stayed short of its completion, and neither Plaintiffs' motion for class certification nor any class expert reports have been filed, PHS avers that Plaintiffs' factual circumstances leading up to the events that triggered Plaintiffs' claims are so different from the other class members that Plaintiffs' claims and the class claims are not so related that "the interests of the class members will be fairly and adequately protected in their absence." *Marcus*, 687 F.3d at 598. However, this Court concludes that at this stage of the litigation, Plaintiffs have sufficiently plead in their Amended Complaint, as to each claim against PHS, that PHS has allegedly committed a "common wrong" applicable to all class members, *see Baby Neal*, 43 F.3d at 58.

Plaintiffs allege that PHS (1) "charge[d] and/or collect[ed] legally and contractually unauthorized charges or fees that were misrepresented to Homeowners in violation of the FDCPA," Pls.' Am. Compl. ¶ 36(3); (2) "violate[d] the LIPA, 41 P.S. § 404 and 41 P.S. § 406 when they collected prohibited foreclosure related fees and costs," *id.* at ¶ 36(6); and (3) that "violate[d] the Unfair Trade Practices and Consumer Protection Law . . . when they [] misrepresented the amount Homeowners owed and charged and collected excessive charges," *id.* at ¶ 36(7). As the Third Circuit noted in *Marcus*, "[i]f a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Marcus*, 687 F.3d at 598 (citing *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992)). This Court concludes that PHS has not advanced an argument

sufficient to demonstrate that class discovery will necessarily fail to illuminate any further evidence of a relation between the class claims and those of the named Plaintiffs sufficient to satisfy the typicality requirement of Rule 23(a).

As for PHS's alleged "unique defenses," the Court begins its discussion with Plaintiffs' claims under Act 6. Post-*Trunzo I*, the only remaining Act 6 claims against PHS are for violations of § 502 of the Act. *See* Order dated June 25, 2012, ECF No. 75. Therefore, PHS's contention that "they are subject to the defense . . . that no action lies against an attorney under Sections 404 and 406 of LIPA" is inapposite. *See Rothlein v. Portnoff Law Associates, Ltd.*,[9] 81

---

[9] In *Rothlein*, the Pennsylvania Supreme Court concluded that Act 6's § 502, the Act's remedy provision, does not permit recovery for harm that extends beyond the subject matter of the statute - charges or fees incurred for the loan or use of money. *Rothlein*, 81 A.3d at 825 (also filed as a Notice of Supplemental Authority by Plaintiffs at ECF No. 167). PHS contends that in *Rothlein*, the Pennsylvania Supreme Court "specifically held" that § 502 is not a substantive provision of Act 6, when while analyzing § 502, the court discussed the "substantive provisions of the Act" as sections 201, 301, 401, 401.1, 402, 403, 404, 405, 406, 407, 408, 501. *See* ECF No. 168 at 1 (citing *Rothlein*, 81 A.3d at 823). This Court disagrees with PHS's reading of *Rothlein*. The *Rothlein* court did not go as far as to say that § 502 was not a substantive provision of Act 6, nor did the *Rothlein* court change the status quo of the law at the time of this Court's decision in *Trunzo I*. *See, e.g., Glover v. Udren*, 2013 WL 6237990 (W.D. Pa. Dec. 3, 2013) (post-*Rothlein* class certification decision involving underlying claim Act 6 claim for unauthorized charges under 502). In *Rothlein* the court analyzed § 502 specifically to determine whether, in the context of the other substantive provisions of the Act, recovery under § 502 was also limited to claims involving charges or fees incurred "for the loan or use of money." *Rothlein*, 81 A.3d at 823-24. Notably, the *Rothlein* court also characterized § 501 as a "substantive provisions of the Act," despite the placement of § 501 under "Article 5 Remedies and Penalties" - just like § 502. These *Rothlein* ingredients aside, *Rothlein* has never been cited for the proposition that PHS claims. For further analysis on the distinction between § 502 and §§ 404 and 406, this Court directs the parties to its *Trunzo I* analysis of claims under § 502 versus §§ 404 and 406.

> Defendants argue that section 502 is, like 404 and 406, applicable only to "residential mortgage lenders." The Court again finds the Glover decision instructive as Judge Mitchell resolved this very same dispute regarding section 502 in the context of a motion to dismiss. Section 502 provides that a person who has paid charges in violation of Act 6 or otherwise by law can recover against "the person who has collected such excess interest or charges." § 502 (emphasis added). As noted by the Glover court, the Pennsylvania legislature's use of the term "person" in section 502 as opposed to the phrase "residential mortgage lender" in sections 404 and 406 is significant. *Glover*, 2010 WL 5829248, at *7. Act 6 defines the term "person" broadly, providing that it includes, but is not limited to, "residential mortgage lenders" and encompasses individuals, corporations, business trusts, estate trusts, partnerships, and all other legal entities. § 101. Therefore, all three Defendants fall within this definition and are subject to section 502's prohibitions.

*Trunzo v. Citi Mortgage*, 876 F. Supp. 2d 521, 541 (W.D. Pa. June 25, 2012); *but see Buffone v. Udren Law Offices*, P.C., 2012 WL 9189624, at *4 (Pa. Com. Pl. June 25, 2012). The *Buffone* court rejected the argument that the term "residential mortgage lender" used in § 406 was intended to have the same meaning as the word "person" used in § 502, and concluded that because § 406 applies only to residential mortgage lenders, and since defendant was not a

A.3d 816, 825 (Pa. 2013) (recognizing recovery against an attorney or law firm under § 502 for claims arising from the loan or use of money).

PHS also contends that the named Plaintiffs "initiated the communication at issue, a defense which every Court ruling on the issue to date on the merits has held precludes the maintenance of an FDCPA action." Def.'s Mem. in Supp. at 9. As to their FDCPA claim against PHS, Plaintiffs aver that "the law firm made false representations about the "character, amount, or legal status" of Plaintiffs' debt and attempted to collect amounts under Plaintiffs' note and mortgage that were not "expressly authorized by the agreement creating the debt or permitted by law." Am. Compl. ¶¶ 60-61. PHS argued in their Motion to Dismiss that it could not be held liable under the FDCPA because the statute requires an attempt to collect a debt, and their letters were merely responses to Plaintiffs' requests for information, not "collection" or "dunning" letters. Mem. of Law in Supp. of PHS's Mot. to Dismiss Am. Compl. at 9, ECF No. 36.

However, this Court already explained in *Trunzo I* that the Court did "not find that the aforementioned cases [referenced by PHS in support of its position] stand for the proposition that any and all responses to a consumer-initiated communication *automatically* fall outside of the reach of the FDCPA. Responsive communications from debt collectors can easily be both informational and attempts to collect a debt." *Trunzo I*, 876 F. Supp. 2d at 536. Indeed, "PHS's response letter [Plaintiffs' inquiry on how to avoid foreclosure] . . . was far more than informational. Though the letter does contain the language 'in accordance with your recent request,' it also provides the following disclaimer: 'Please be advised that this firm is a debt

---

residential mortgage lender, the court would dismiss plaintiffs' claims for failure to plead any violations of Act 6 that would allow recovery under § 502. *Buffone*, 2012 WL 9189624, at *4. However, *Buffone* is distinguishable because here, Plaintiffs are claiming a broader scope of unauthorized charges than those in *Buffone*, which solely related to allegedly unauthorized attorney's fees.

collector attempting to collect a debt. Any information received will be used for that purpose.'" *Id.* "Notably, the FDCPA mandates just a disclaimer when a debt collector is in the process of collecting a debt. PHS's use of this disclosure language demonstrates that the August 30th letter was a response to a consumer inquiry as well as a collection attempt." *Id.* at 536-37.

PHS next avers that they have a unique defense of settlement, based on correspondence between Attorney Malakoff and PHS. *See* Def.'s Mem. in Supp. at 2, 10. In support of this proposition, PHS cites to a December 8, 2011 email from Attorney Malakoff to PHS, wherein Mr. Malakoff writes, "[t]hank you for the December 7, 2010 offer to resolve this matter." *See id.* at 2 (citing Def.'s Ex. B, ECF No. 101, at 27). This email was not cited to in Plaintiffs' Amended Complaint, nor was it attached to the Amended Complaint itself, but seems to have been provided to Plaintiffs as part of the parties' initial disclosures.

That PHS now rests its argument for its "unique defense" of settlement on a document produced during preliminary discovery serves only to underscore that at this stage of the litigation, prior to the termination of class certification discovery, this Court's analysis of whether Plaintiffs' purported class satisfies the Rule 23(a) requirement of typicality will benefit from further class certification discovery and cannot be determined on the face of Plaintiffs' Amended Complaint alone, as would be necessary for this Court to grant PHS's motion to strike Plaintiffs' class allegations at this juncture. *See Landsman & Funk PC*, 640 F.3d at 93 n.30 (ultimately, "this case is not among the rare few where *the complaint itself* demonstrates that the requirements for maintaining a class action cannot be met.") (emphasis added).[10]

---

[10] PHS cites *Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 145 (3d Cir. 1997), among other cases, for the proposition that "the Court may also consider any undisputedly authentic document that a defendant attaches as exhibits to the motion," but the *Steinhardt* court makes clear that the defendant may do so only "if the plaintiff's claims are based on the document." *Id.* Here, that is not the case.

Finally, PHS contends that "Plaintiffs have alleged a claim under Section 1692e which would be subject to the defense that communications to an attorney are either not actionable or are held to a 'competent attorney' standard." Def.'s Mem. in Supp. at 11. Plaintiffs bring FDCPA claims under 15 U.S.C. § 1692f(1) and § 1692e(2)(A). Section 1692f(1) allows a debt collector to collect only those debts that are "expressly authorized by the agreement creating the debt or permitted by law." When pursuing such authorized debts, § 1692e(2)(A) provides that the collector may not use any "false, deceptive, or misleading representations . . . in connection with the collection of any debt," nor misrepresent the "character, amount, or legal status of any debt."

With regard to § 1692f(1), "the 'competent attorney standard' d[oes] not apply to the debtor's § 1692f(1) claim because the only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law." *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 269-70 (3d Cir. 2013) (citing *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011)). As for Plaintiffs' §1692e(2)(A) claims against PHS, the *Simon* court noted that in *Allen* it "did not articulate a competent-attorney standard for FDCPA claims arising out of communications to a consumer's attorney," and instead relied on its reasoning in *Allen* to support rejecting the "competent attorney" standard for claims under FDCPA provisions where the "inquiry did not turn on the reader's sophistication." *Simon*, 732 F.3d at 269-70.

Therefore, unlike the stringent, clear-cut, and well-established causation requirement of the UTPCL that this Court discussed in its analysis of Citi's Motion to Strike, this Court concludes that the difference in factual circumstances between communications made to a consumer rather than an attorney, and the Third Circuit's declination in *Simon* to once and for all

articulate a 'competent attorney standard' under the FDCPA that would affirmatively direct the analysis for such communications to a different path than that for communications to a consumer, do not present such a "unique defense" that "threatens to become the focus of the litigation." *See Porter*, 229 F.R.D. at 499; *see also Wright*, 2010 WL 786536, at * 4 ("As the parties recognize, the United States Court of Appeals for the Third Circuit has not yet spoken to whether communications between debt collectors and debtors' attorneys are actionable under the FDCPA, and there is not consensus among the other circuits that have addressed the issue.").

### 2. Adequacy

PHS avers that the named Plaintiffs are not adequate representatives of the class because (1) the proposed class would "improperly include those consumers who received validation notices and did not dispute the debt, and thus are ineligible to bring suit against PHS, and those who do not have the unique issues such as communications initiated by the consumer, communications between the alleged debt collector and counsel for the consumer, and cases involving a prima facie claim of settlement;" and (2) that Pennsylvania Rule of Professional Conduct 3.7 prohibits a lawyer from acting as an advocate at trial in which the lawyer is likely to be a necessary witness." *Id.* at 13.

As discussed earlier, the "adequacy" inquiry has two components: first, the adequacy inquiry "tests the qualifications of the counsel to represent the class; second, it seeks to "uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 521.  PHS does not contest the former requirement.  Rather, PHS seems to aver that conflicts of interest bar Plaintiffs' purported class from meeting the adequacy requirement.

PHS's validation-notice argument that there "is no allegation that any other borrowers in the putative class initiated communication prior to the initial communication by PHS and the mailing of a Validation Notice" touches instead on the typicality of Plaintiffs' allegations with respect to PHS, and PHS's attempt to demonstrate via purportedly differing factual circumstances that, on the face of Plaintiffs' Amended Complaint, typicality is clearly precluded and class certification discovery is wholly unnecessary. As this Court noted above, such differing factual circumstances are insufficient at this point, prior to the completion of class certification discovery, for this Court to conclude that those Rule 23(a) requirements are not met.

As for PHS's second point, disqualification of counsel is considered a drastic measure that should only be imposed when necessary. *See E.E.O.C. v. Hora, Inc.*, 239 Fed. Appx. 728, 731 (3d Cir. 2007). The party seeking disqualification of opposing counsel bears the burden of establishing that continued representation would be impermissible under the Rules of Professional Conduct. *Martin v. Turner,* 2011 WL 717682, at *2 (E.D. Pa. 2011) (internal quotation omitted). PHS avers that Pennsylvania Rule of Professional Conduct 3.7 "prohibits a lawyer from acting as an advocate at trial in which the lawyer is likely to be a necessary witness[,]" such that [w]here class counsel is a necessary witness, this precludes him from adequately representing the proposed class as class counsel."

Rule 3.7, titled "Lawyer as Witness," sets forth that

(a) A lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness unless:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Pa. R. Prof'l Conduct 3.7(a) (emphasis added). By its terms, Rule 3.7(a) only prohibits a party's lawyer likely to be a necessary witness from action as "advocate *at trial*." *See id.*; *Evans v. Chichester Sch. Dist.,* 533 F. Supp. 2d 523, 539 (E.D. Pa. 2008) (holding that "Rule 3.7 only pertains to counsel's actions at trial"). PHS's contention that where "class counsel is a necessary witness, this precludes him from adequately representing the proposed class as class counsel," is premature at this pre-trial stage of the litigation, where class discovery has not ended and Plaintiffs have not yet filed a Motion for Class Certification. *See also Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999) ("the conflict rules do not appear to be drafted with class action procedures in mind and may be at odds with the policies underlying the class action rules."

This Court concludes that any analysis regarding the nexus between Plaintiffs' counsel as potentially necessary witnesses and the adequacy of the named Plaintiffs as representatives of the class will be reviewed at the end of class discovery and in conjunction with the class certification hearing, when the Court makes its ultimate determination as to whether or not to certify Plaintiffs' purported class. For these reasons, PHS's Motion for Judgment on the Pleadings is denied, but without prejudice to the assertion of similar arguments at a later, more appropriate, stage of the case.

### c. **Seterus's Motion to Deny Class Certification**

Also before this Court is Defendant Seterus's Motion to Deny Class Certification, based on Seterus's contention that (1) Plaintiffs' purported class includes uninjured individuals who have no claim against Seterus; (2) the class fails to meet Rule 23(a)'s commonality and typicality prerequisites; and (3) the class fails to meet the criteria of either Rule 23(b)(2), because Plaintiffs seek monetary damages, or Rule 23(b)(3), because individualized issues predominate.

Post-*Trunzo I*, three Counts remain against Defendant Seterus: Count II for Unjust Enrichment, Count III for Violation of the FDCPA; Count VI for Violation of § 502 of the Pennsylvania Loan Interest Protection Act; and Count VII for Violations of the UTPCPL. As this Court discussed above, Rule 23(b)(2) is inapplicable to this case because Plaintiffs are not requesting any "final injunctive or corresponding declaratory relief." *See* Fed. R. Civ. P. 23(b)(2). Accordingly, Plaintiffs cannot certify their class under Rule 23(b)(2).

Contrary to Defendants Citi and PHS, Defendant Seterus does not style its motion as a motion to strike class allegations before the parties resume and conclude class discovery. Rather, Seterus squarely avers that the putative class should not be certified because it fails to satisfy the Rule 23 requirements of commonality, typicality, and predominance, and because the putative class includes persons who have suffered no injuries.

With regard to this latter argument, which ties in with the requirements of commonality, typicality, and predominance, Plaintiffs' counter that "[i]t is far more likely that because of Seterus' unauthorized and/or illegal foreclosure cost practices and policies, thousands of homeowners were the recipients of the same demanded charges that were charged and liened on the Trunzos' property[,] some of which were paid." Pls.' Br. in Opp'n to Mot. to Den. Class Certification ("Pls.' Br. in Opp'n") at 10. As a result, "[c]lass discovery is also required to

obtain information about Seterus' practice and policies about intentionally mislabeled fees," and "is also required to identify and establish Seterus' standardized practice and policies with respect to those Seterus related claims this Court held were viable." *Id.* at 17.

Plaintiffs filed a Motion to Vacate the Initial Case Management Order, ECF No. 139, given that this Court had under its advisement the Defendants' motions to strike and dismiss Plaintiffs' class allegations, motions which primarily rested on Defendants' argument that it was clear from the face of Plaintiffs' Amended Complaint and its attached submissions that Plaintiffs could not meet the requirements of a class action under Federal Rule of Civil Procedure 23. This Court granted in part and denied in part Plaintiffs' Motion to Vacate, such that the provisions of subparagraphs 3(d)-(h), inclusive, of the Court's Case Management Order, ECF No. 94, were "stayed pending further Order of this Court." *See* Order dated Feb. 1, 2013; ECF No. 141. This stayed discovery related to class certification; the filing of Plaintiffs' and Defendants' expert reports as to class certification; all depositions of class certification experts; the filing of Plaintiffs' Motion for Class Certification and Defendants' ensuing Joint Memorandum in Opposition and Plaintiffs' ensuing Reply; and the parties' class certification hearing.

This Court concludes that it is not "clear from [Plaintiffs' Amended Complaint] itself that the requirements for maintaining a class action [against Seterus] cannot be met, *see Goode*, 184 F.R.D. at 238, and that "no amount of discovery will demonstrate that the class can be maintained, *id.* at 245; *Woodard*, 250 F.R.D. at 182. Indeed, as to Seterus, the issues are not "plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiffs' claims," *see Falcon*, 457 U.S. at 160, nor does Seterus even assert that "no amount of discovery will demonstrate that the class can be maintained." Therefore, it is "necessary for the court to probe behind the pleadings before

coming to rest on the certification question." *Id.* This Court denies, without prejudice, Seterus's Motion to Deny Class Certification for its reassertion at the conclusion of class discovery.

## III. CONCLUSION

For the foregoing reasons, (1) Defendant CitiMortgage, Inc.'s Motion to Strike Class Allegations is granted; (2) Defendant Phelan, Hallinan, and Schmieg, LLP's Motion Pursuant to Federal Rule of Civil Procedure 12(c) to Dismiss Class Action Allegations is denied without prejudice; and (3) Defendant Seterus, Inc.'s Motion to Deny Class Certification is also denied without prejudice. An appropriate Order will follow.

Dated: March 31, 2014
cc: All counsel of record

Mark R. Hornak
United States District Judge