**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ALEXANDRA R. TRUNZO and ANTHONY )
HLISTA, )
                              )      Civil Action No. 2:11-cv-01124
          Plaintiffs, )
                              )
v.                                 )      Judge Mark R. Hornak
                              )
CITI MORTGAGE, et al )
                              )
          Defendants. )

## OPINION

**Mark R. Hornak, United States District Judge**

Before the Court are the latest two motions filed in the extensive three-year litigation of this case: (1) Plaintiffs' Motion for Leave to File Second Amended Complaint, ECF No. 173; and (2) Defendant Phelan, Hallinan, and Schmieg, LLP's ("PHS") Motion for Reconsideration, ECF No. 175, which relates to this Court's June 2012 ruling on PHS's motion to dismiss. For the reasons that follow, Plaintiffs' Motion is denied, and PHS's Motion is granted, on other grounds.[1]

## I. PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

The heart of Plaintiffs' motion, as Plaintiffs' represent it, is that their Proposed Second Amended Complaint ("PSAC") includes allegations presented for the first time that Plaintiffs suffered a loss by virtue of the inflation of their mortgage debt, which caused a diminution in their property value. Pls.' Br. in Supp. of Mot. to File a Second Am. Compl. ("Pls.' Br."), ECF No. 190, at 6.

---

[1] This Court explained the facts surrounding this case in *Trunzo v. Citi Mortgage*, 876 F. Supp. 2d 521 (W.D. Pa. 2012), *reconsideration denied* (July 23, 2012) ("*Trunzo I*"), as well as in *Trunzo v. Citi Mortgage*, 2014 WL 1317577 (W.D. Pa. Mar. 31, 2014) ("*Trunzo II*"), and need not reiterate them here.

Plaintiffs contend that these new allegations (1) "will reestablish the class aspect of the Hlistas' UTPCPL claims by adequately alleging that they were harmed directly by Citi's inflated lien in a way that would obviate any individualized defenses and would be typical of other class members subjected to improper overcharges with similar adverse lien losses"; (2) "this additional lien theory would also establish elements of other, previously dismissed claims," for example, "[t]he loss of property attendant to an inflation of a lien would also constitute a payment, satisfying an element of the Hlistas' Act 6 claim previously found to be deficient," and "the same loss in property would demonstrate contractual damages," *id.* at 6-7; and that (3) the PSAC "pleads the central contractual claims against Citi" because it brings to the Court's attention the provision in Plaintiffs' mortgage which "establishes that "the party that services the loan not only acquires servicing rights, but also all 'mortgage loan servicing obligations to Borrower," *id.* at 7.

Citi vehemently opposes Plaintiffs' motion, arguing that Plaintiffs' attempt to resurrect claims against it that this Court dismissed with prejudice back in June of 2012 is futile because those claims against Citi remain legally unsustainable. Citi's Opp'n to Pls.' Am. Mot. for Leave to File Second Am. Compl. ("Citi's Opp'n"), ECF No. 186, at 2.

## A.  Legal Standard

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Among the grounds that justify a court's denial of leave to amend are undue or unexplained delay, bad faith, dilatory motive, prejudice, and futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962).; *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (citing 3 *Moore's Federal Practice* ¶ 15.08[4], at 15–80 (2d ed. 1993)). In assessing "futility," the court applies the same standard of legal sufficiency as applied under

2

Rule 12(b)(6). *Id.* (citing 3 *Moore's* at ¶ 15.08[4], at 15–81). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

This Court is mindful "that the pleading philosophy of the Rules counsels in favor of liberally permitting amendments to a complaint." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013) (citing *Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir. 1984)). The motion is nevertheless committed to the "sound discretion of the district court." *Id.* (citing *Cureton v. Nat'l Collegiate Athletic Ass'n,* 252 F.3d 267, 272 (3d Cir. 2001)); *see id.* at 630-31 ("the District Court correctly determined that the City would be prejudiced because the proposed amendment would bring a new theory into the case several years after the beginning of the litigation"); *Jang v. Boston Scientific Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013) ("This court has declined to reward a wait-and-see approach to pleading"); *Arthur v. Maersk, Inc.,* 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied.").

## B. Discussion

This Court will first discuss Plaintiffs' newly-pled "automatic lien" theory, and will then move on to Plaintiffs' new allegations that Citi is a residential mortgage lender.

Plaintiffs' PSAC reveals a heavy dose of new allegations that they not only suffered a "cash loss" but a "lien loss" due to an inflation of the amount required to clear their mortgage lien. Pl.'s Br. at 8. To maintain any private action under the UTPCPL, a plaintiff must allege and prove that he or she sustained an "ascertainable loss of money or property . . . *as a result of*" the defendant's allegedly deceptive conduct. 73 Pa. Cons. Stat. Ann. § 201-9.2 (emphasis added); *see Williams v. Empire Funding Corp.*, 227 F.R.D. 362, 371 (E.D. Pa. 2005) (a private UTPCPL plaintiff must "establish that defendant's purportedly unlawful conduct caused a definable loss of money or property").

3

In Paragraphs 57, 85, 86, and 87 of their PSAC, Plaintiffs allege that they suffered damages or an "ascertainable loss" "as a result of Defendants' illegal foreclosure-related attorneys' fee charges resulting in inflated liens placed on their homes." As the law now stands[2] in Pennsylvania, there is no controlling legal authority to support Plaintiffs' theory that sending a payment demand automatically puts a "lien" on their property, thereby diminishing their property's value and triggering a UTPCPL claim, nor do Plaintiffs cite to any Pennsylvania law saying so. *See also Trunzo II*, 2014 WL 1317577, at *13 ("Apart from the fact that Plaintiffs have failed to cite any Pennsylvania state law on point with regard to an automatic lien theory under the UTPCPL that would classify the mere charging of fees as an "ascertainable loss of money or property, real or personal," Plaintiffs cannot, in effect, amend their Amended Complaint via their Brief in Opposition to Citi's Motion to Strike").

Notably, District Judge Cathy Bissoon in *Kaymark v. Bank of America*, 2014 WL 1316120 (W.D. Pa. Mar. 31, 2014), recently rejected Plaintiffs' counsel's "automatic lien" theory and concluded that where a plaintiff alleges a speculative loss based on the alleged diminution in value of his or her property, this "forward-looking" and "speculative" allegation "is insufficient to establish ascertainable loss under the []UTPCPL; "[i]n short, the law calls for loss that can be identified with some level of certainty." *Kaymark*, 2014 WL 1316120, at *2. As Citi points out in its Brief in Opposition to Plaintiffs' Motion, Plaintiffs' allegations in *Kaymark* that they "suffered an ascertainable loss by either paying the misrepresented and overcharged amounts in whole or in part, or, where Homeowners did not make an actual monetary payment, Homeowners suffered an ascertainable loss of property when the unauthorized charges were

---

[2] On January 30, 2014, the Pennsylvania Supreme Court granted allowance for appeal in *Grimes v. Enterprise Leasing of Philadelphia* to resolve the issue of "[w]hether the Superior Court erred when it held [in *Grimes* ] that a plaintiff may satisfy the UTPCPL's 'ascertainable loss' requirement by voluntarily hiring an attorney and allegedly incurring litigation costs to challenge allegedly wrongful conduct, even where, as here, the plaintiff paid no money to the defendant as a result of that conduct." *Grimes v. Enter. Leasing Co. of Philadelphia,* 84 A.3d 1058 (Pa. 2014).

4

liened against their homes, thereby decreasing the value of their property," *id.* at *6, is almost identical to Plaintiffs' "automatic lien" allegations here, with the exception that here, Plaintiffs have also alleged that the unauthorized fees "caused Homeowners to establish an escrow deposit pending resolution of the foreclosure-related fee and cost debt dispute," PSAC ¶ 86.[3]

Plaintiffs' addition, into the mix of UTPCPL-specific averments, of an allegation that they made an escrow deposit, which was actually already alleged in Plaintiffs' Amended Complaint at Paragraph 14 and incorporated into the UTPCPL-specific averments via Paragraph 83, *see* Am. Compl. ¶¶ 14, 83, gets Plaintiffs no farther down the road towards tracking on-point, Pennsylvania case law and statutory law in support of its UTPCPL cause of action, which requires that Plaintiffs allege an "*ascertainable loss of money or property* as a result of the defendant's prohibited action." *See* 73 Pa. Cons. Stat. Ann. § 201-9.2 (emphasis added).

Regardless, a closer look at Plaintiffs' dense PSAC reveals the allegation that Plaintiffs' "counsel determined that only $3,906.44 of the requested amount represented legitimate charges under Pennsylvania law. The Hlistas promptly placed $3.906.44 into a NLSA client account which was non-interest bearing." PSAC ¶ 13. This allegation plainly sets forth Plaintiffs' acknowledgment that the amount they paid into the escrow account was money that they acknowledge *they actually owed.* Thus, this escrow account theory, like Plaintiffs' "automatic lien" theory, cannot support a plausible UTPCPL claim. Simply put, Plaintiffs have failed to plausibly allege that they suffered any loss of "money or property" through the mere issuance of payment demands on Citi's behalf.

---

[3] Although the Court notes that our Court of Appeals' recent decision in *Salvati* referenced the *possibility* of a lien constituting an ascertainable loss, it certainly did not conclusively decide this issue, or say anything more about it. *See Salvati v. Deutsche Bank Trust Co.*, 2014 WL 3719186, *3 (3d Cir. 2014) ("Because § 504 does not contain § 502's requirement that the plaintiff 'have paid' the charges and fees, this section might provide Salvati a remedy even if he never paid money to the defendants.").

Even if an "automatic lien" theory was to take hold in Pennsylvania law, this Court

already explained in *Trunzo II* that

> [a]s Citi notes, "[b]y Plaintiffs' own allegations, the amounts listed in the August
> 30 letter were never paid. Rather, Plaintiffs paid *different* amounts, *not* sought in
> the August 30 letter, to Seterus in December 2010—well after Citi transferred the
> servicing rights for Plaintiffs' loan to Seterus." Def.'s Resp. in Supp. at 4 (citing
> Am. Compl. ¶ 16; *Trunzo I*, 876 F.Supp.2d at 529). It follows that even if this
> Court were to entertain Plaintiffs' "continuing conduct" or "start the ball rolling"
> theories or Plaintiffs' unpled "automatic lien" theory (as explained below), any
> purported lien based on the August 30 letter, having been effectively eliminated
> by Seterus's December 7 letter, plainly evidences what Citi has identified as
> unique causation issues with the Plaintiffs' claims.

*Trunzo II*, 2014 WL 1317577, at *12. Therefore, this Court finds that the proposed amendment

(via the PSAC) to Plaintiff's Amended Complaint would ultimately be futile.[4]

Next up is Plaintiffs' attempt to resurrect their Act 6 claim via their PSAC. As this Court

held in June 2012 in *Trunzo I*, sections 403, 404, and 406 of Act 6 apply only to "residential

mortgage lenders," and Plaintiffs failed to allege a "sufficient factual basis for their proposition

that Citi or Seterus received, by assignment, more rights than those relating to the servicing of

Homeowner's mortgage." *Trunzo I*, 876 F. Supp. 2d at 540. At the outset of their new-and-

purportedly-improved Act 6 allegations, Plaintiffs argue, via a footnote in their PSAC, that

"[w]ith respect to Citi the Hlistas respectfully request reconsideration of the denial of the Loan

Interest and Protection Act claim with prejudice based on their repayment to the NLSA client

account . . . Also see the Amended Complaint, ¶ 14 pleading these facts." PSAC ¶ 58 n.8. The

fact that Plaintiffs allegedly made a deposit into their attorney's escrow account, of funds they

admittedly owed, goes no farther towards helping this Court divine a plausible Act 6 claim under

---

[4] On top of this is the fact that Plaintiffs have not advised the Court why this proposed amendment was not
previously available to the Plaintiffs. Rule 15 is liberal in terms of permitting amendments, but does not obligate the
Court to consider a never ending series of "test drive" pleadings. Rule 15 is not a license for a pleader to dribble out
facts that it has in hand when it initially pleads.

sections 404 and 406, based on a change in Citi's status as a servicer of Plaintiffs' mortgage as opposed to a residential mortgage lender.

Plaintiffs do newly allege in Paragraph 4 of their PSAC, which is incorporated into their Act 6-specific allegations via Paragraph 58, that Citi had more responsibilities than just servicing Plaintiffs' mortgage and should be considered a note holder or lender, by alleging that "Citi acquired all obligations under the Mortgage, but did not acquire the beneficial interest in the Note itself." *Id.* at ¶ 4 (citing to ¶ 20 of Plaintiffs' Mortgage, which was not cited in Plaintiffs' Amended Complaint, but was attached to Plaintiffs' Amended Complaint as an Exhibit). However, this Court already considered Paragraph 20 of Plaintiffs' Mortgage when it concluded that this paragraph actually supported its holding that Citi was a "loan servicer," not a note holder or lender, despite Plaintiffs' allegations to the contrary.[5] *Trunzo I*, 876 F. Supp. 2d at 534;

---

[5] This Court reprints its 2012 analysis in *Trunzo I*, 876 F. Supp. 2d at 532-34, for Plaintiffs' convenience:

The "servicing" of a mortgage, i.e. the right to collect payments from the mortgagor, exists as a separate right that can be transferred independently of other provisions in the mortgage or note. *See In re Am. Mortg. Holdings, Inc.,* 637 F.3d 246, 259–50 (3d Cir.2011) (reiterating the Bankruptcy Court's explanation that mortgages can be sold on a "servicing retained" or a "servicing released" basis); *Paslowski v. Standard Mortg. Corp. of Ga.,* 129 F.Supp.2d 793, 798 (W.D.Pa.2000) (holding that the terms of the assignment did not include the servicing rights, which were retained by the seller). The original parties to the mortgage and note, the "lender" or "note holder," can, accordingly, choose to assign only this right to collection under the debt instruments. *See, e.g., Glover v. Udren,* No. 08–990, 2011 WL 1204050, at *1 (W.D.Pa. Feb. 28, 2011). The Homeowners' mortgage itself contemplates this scenario by distinguishing between a "Note purchaser's" obligations and a "Loan Servicer's" obligations. Am. Compl. Ex. B. ¶ 20, ECF No. 34–2.

Homeowners' mortgage also specifically defines a "Loan Servicer" as an entity that collects the periodic payments due under the "Note, this Security Instrument, and Applicable Law." Am. Compl. Ex. B. ¶ 20, ECF No. 34–2. This language is consistent with the definition of a "loan servicer" in the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 (2006), *et seq.,* also referenced in Homeowners' mortgage at paragraph *533 twenty (20), which provides that an entity that receives "any scheduled periodic payments from a borrower pursuant to the terms of any loan" is a servicer. *Dahl v. AmeriQuest Mortg. Co.,* 954 A.2d 588, 594–95 (Pa.Super.Ct.2008) (citing RESPA, 12 U.S.C. § 2605(i)(2)); *See also Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355, 366–67 (6th Cir.2012) (citing RESPA's section 2605(i)(3) for the definition of "loan servicing" absent such definition in the FDCPA). As a "servicer" only receives limited rights and obligations under the mortgage contract relating to servicing, it is not a party to the original debt instruments like a "lender" or "note holder," and, therefore, cannot be held liable for breaches in obligations that remain held by the "lender" or "note holder." *See Ruff v. America's Servicing Co.,* No. 07–0489, 2008 WL 1830182, at *4 (W.D.Pa. Apr. 23, 2008) (holding that a servicer was not liable for breach of contract because it was not a party to the mortgage).

7

Am. Compl. ¶¶ 3, 4, 77, 79. Apart from taking yet another opportunity to allege the legal conclusion that "Citi is a residential mortgage lender," PSAC ¶¶ 4, 61, 62, Plaintiffs offer no new factual allegations to warrant revisiting this Court's 2012 ruling that Plaintiffs have no claims against Citi under sections 403, 404, and 406 of Act 6, nor any reason why these allegations were not made in the original Complaint or Amended Complaint.[6]

As for any effect that Plaintiffs' newly-pled "automatic lien" theory has on their Act 6 § 502 claims, there is none because for a "person"[7] to be liable under section 502 the individual or

Instead of pleading facts to support their conclusion that Citi and, subsequently, Seterus, succeeded to all obligations and duties under their note and mortgage, Homeowners contend that "discovery is ... needed to determine, from a functional or activity standpoint whether Citi and/or [Seterus] is, in fact, a lender, servicer and/ or both." Am. Compl. ¶ 45, ECF No. 34. The Court does not find that Homeowners' hope that discovery would reveal that Citi and Seterus received more than the servicing rights provides enough factual support for their breach of contract claim to survive dismissal. This is especially true considering the documents and factual allegations Homeowners themselves put forth, which undermine the plausibility of their conclusion that Seterus and Citi "stand in the shoes" of WPF or Fannie Mae.[11] *See Iqbal,* 129 S.Ct. at 1950; *Crawford Cent. Sch. Dist.,* 888 A.2d at 620. For example, the First Servicing Notice and Mortgagee Letter provide that only the servicing rights to Homeowners' note and mortgage were transferred to Citi, and these documents specifically explain that this transfer did not affect any other rights or duties under Homeowners' loan. The Second Servicing Notice then notified Homeowners that Seterus assumed the servicing of their mortgage, but no other duties.[12] Additionally, neither the mortgage nor the note requires a "servicer" to assume the same obligations as a "lender" or "note holder," and the mortgage itself creates a distinction between a "Note Purchaser" and "Servicer."[13] Finally, Homeowners *534 pled that WPF assigned the "beneficial interests" to their note and mortgage to Fannie Mae, not Citi or Seterus. Am. Compl. ¶ 4, ECF. No. 34.

Even when the Court reads the facts alleged in the Amended Complaint and related documents in the light most favorable to Homeowners—i.e. taking all facts Homeowners allege as true and drawing all reasonable inferences in their favor—the Court does not find Homeowners have sufficiently supported their legal conclusion that Citi, and then Seterus, assumed the obligations of a "note holder" or "lender" under Homeowners' note and mortgage.

[6] Plaintiffs tirelessly cite to *In re Smith*, 866 F.2d 576, 586 (3d Cir. 1989), for the "implied" proposition that a servicer is an RML under Act 6, so therefore, according to Plaintiffs, Citi must be an RML in this case. Apart from the rather significant fact that this Court concluded in *Trunzo I*, 876 F. Supp. 2d at 334, that the infamous Paragraph 20 of Plaintiffs' mortgage actually supported this Court's holding that Citi was a "loan servicer" and not a note holder or lender (despite Plaintiffs' allegations to the contrary), *In re Smith* is also distinguished from this case because it involved whether the servicer violated sections 403 and 504 of Act 6 "by failing to send Smith the required thirty day pre-foreclosure notice advising her, *inter alia*, of the lender's intention" to initiate foreclosure proceedings. *In re Smith*, 866 F.2d at 580. Here, Plaintiffs allege a violation of section 502 ostensibly relating to attorney's fees and prohibited charges, not a notice-requirement violation. These statutory provisions do not proscribe the same conduct and Plaintiffs' argument that these sections must be interpreted the same is therefore rejected.

[7] Act 6 defines a "person" as "an individual, corporation, business trust, estate trust, partnership or association or any other legal entity, and shall include but not be limited to residential mortgage lenders." 41 Pa. Stat. Ann. § 101.

legal entity must have collected some illegal charges. *See* 41 Pa. Stat. Ann. § 502 (applying only when a person "has paid" a statutorily excessive rate of interest or charges prohibited by law). In both their Amended Complaint and their PSAC, Plaintiffs request an Act 6 award of statutory damages and reasonable attorney's fees, costs, and expenses under section 503, *see* Am. Compl. ¶ 82; PSAC ¶ 71. In their PSAC, after setting forth their allegations under sections 404 and 406, Plaintiffs use a collective citation to sections 502 through 504 in the final paragraph of their Act 6 allegations, in averring that "[t]he unauthorized fees and costs that Defendants demanded and/or collected are recoverable under Act 6, §§ 502-504." PSAC ¶ 71. Section 504 provides that "[a]ny person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation, together with costs including reasonable attorney's fees and such other relief to which such person may be entitled under law." 41 Pa. Stat. Ann. § 504. Reading Plaintiffs' new addition of a request for recovery under section 504 with their additional "charges incurred" or lien allegations under Count III, and their brief in support of their Motion, in the most potentially generous light it would appear that at this PSAC juncture, Plaintiff may be requesting an amendment of its Amended Complaint to include claims under section 504.[8]

As our Court of Appeals recently explained, when analyzing sections 503 and 504 together,

> section 503 allows a borrower who prevails in an action under Act 6 to "recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee ." 41 Pa. Stat. Ann. § 503(a). Because § 504 does not contain § 502's requirement that the plaintiff "ha[ve] paid" the charges and fees, this section might provide Salvati a remedy even if he never paid money to the defendants. If § 504 provides Salvati a viable remedy, moreover, § 503 could allow him to recover attorneys' fees.

---

[8] Otherwise Plaintiffs' collective citation to sections 502 through 504 is simply a loosy-goosy collective citation that unintentionally includes a provision not referenced in their Amended Complaint.

9

*Salvati v. Deutsche Bank Nat. Trust Co., N.A.*, 2014 WL 3719186, \*3 (3d Cir. July 29, 2014).

Plaintiffs pled in Count VI of their Amended Complaint that Defendants charged attorney's fees and costs that violated sections 404 and 406 of Act 6, including those charged before the expiration of the 33-day right to cure, those charged after the 33-day right to cure but before a foreclosure complaint or other legal proceeding was filed, those charged that were not awarded by a court, and those charged before they were "actually incurred," Am. Compl. ¶ 79, and Plaintiffs pled that Defendants would increase their debt "by adding unauthorized amounts to their unpaid debt balance that [they] deemed due and owing," *id.* at ¶ 81. In their PSAC, Plaintiffs also pled under the Act 6-specific allegations that Defendants charged fees and costs that violated sections 404 and 406, including those charged before the 33-day right to cure and in excess of $50 (tracking the statutory language), those charged in excess of $50 and after the 33-day right to cure but before a foreclosure complaint or other legal proceeding was commenced, those charged before they were incurred, PSAC ¶ 65, those charged that were not awarded by a court, and Plaintiffs pled that Defendants would increase Plaintiffs' debt "by adding unauthorized amounts to their unpaid debt balance that [they] deemed due and owing," *id.* at ¶ 66.

Plaintiffs do add[9] the allegations that "these amounts were liened against" their properties, *id.; id.* at ¶ 71, that "Act 6 statutory attorneys' fees constitute damages that are not liquidated because they must first be determined reasonable by a court," *id.* at ¶ 68, and that Defendants charged foreclosure-related fees and costs that were unreasonable because they were calculated on a flat-rate or percentage basis instead of an hourly basis and without express contractual authority in the mortgages, *id.* at ¶¶ 69, 70. However, these new allegations are

---

[9] Again, without explaining why they were unable to do so in their prior Complaints.

10

merely repetitive and duplicative additions to Plaintiffs' Act 6 claim that do not affect this Court's analysis and ruling in *Trunzo I*, in which we never held that Plaintiffs' allegations of "charges incurred" were insufficient to state an Act 6 claim under sections 404, 406, 501, 502, or 503. Nor do they affect our analysis and ruling in *Trunzo II*, in which we never concluded that Plaintiffs' allegations of "charges incurred" or their newly asserted UTPCPL "automatic lien" theory would in any way affect this Court's discussion of Act 6, which was only limited to the conclusion that PHS's argument that they are subject to the defense that no action lies against an attorney under sections 404 and 406 of Act 6 was pointless, because the only remaining Act 6 claims against PHS are for violations of section 502 of the Act. *See Trunzo II*, 2014 WL 1317577, at *17.

As for Plaintiffs' arguable new addition of section 504 into the mix, these allegations, revealed (if at all) in collective citations to the recovery provisions of Act 6, *see* PSAC ¶ 71, Request for Relief at p. 29, are the only allegations that if added to Plaintiffs' Complaint, would not be "futile" additions under the governing standard for the propriety of a court granting leave to amend under Rule 15, as similarly analyzed by our Court of Appeals in *Salvati*. However, "when justice so requires" is in effect the counterbalance to Rule 15's requirement that leave to amend "be freely given." Fed. R. Civ. P. 15(a)(2). Futility aside, the other grounds that cut against a court "freely giving" leave to amend are undue or unexplained delay, bad faith, dilatory motive, and prejudice, *see Foman*, 371 U.S. at 182; *Lorenz*, 1 F.3d at 1414.

Our Court of Appeals "has declined to reward a wait-and-see approach to pleading," *Jang*, 729 F.3d at 368, and has recognized that shoehorning in "a new theory into the case several years after the beginning of the litigation" is prejudicial to an opposing party, *CMR*, 703 F.3d at 630-31. Here, Plaintiffs seek to do exactly that. Over three years after filing their initial

11

Complaint in state court, *see* ECF No. 1-2 at 2-3; nearly three years after Seterus, with Citi and PHS's consent, removed Plaintiff's initial Complaint to this Court, ECF No. 1; nearly two years and nine months after filing their Amended Complaint, ECF No. 34; and over two years after this Court ruled on Defendants' motions to dismiss, ECF No. 74, Plaintiffs, who waited and saw how this Court viewed the sufficiency or lack thereof of their allegations, cannot now in effect press the rewind button on this case, yet again, to see how recovery under section 504 would work out, let alone do so without any explanation for such a delay in requesting such an opportunity. This Court therefore also denies Plaintiffs' request to amend their latest Act 6 allegations, both on futility grounds, as well as for Plaintiffs' undue delay with no accompanying explanation for their actions. *See CMR D.N. Corp.*, 703 F.3d at 629 ("we have refused to overturn denials of motions for leave to amend where the moving party offered no cogent reason for the delay in seeking the amendment.") (citing *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (no justification for a five-year delay); *Bjorgung v. Whitetail Resort*, 550 F.3d 263, 266 (3d Cir. 2008) (no explanation for three-and-a-half year delay); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273-74 (3d Cir. 2001) (no reasons given for two-and-a-half year delay)).

Plaintiffs also seek to resuscitate their breach of contract claim against Citi. *See* PSAC ¶¶ 89-96. In their Motion, Plaintiffs explain that they specifically included Paragraph 20 of their Mortgage in their PSAC (their Mortgage has always been attached as an exhibit to the Complaint), to draw the Court's attention to the fact that Paragraph 20 includes the provision that "[i]f the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note

purchase unless otherwise provided by the Note purchaser." Pls.' Mot. for Leave to File Second Am. Compl. ("Pls.' Mot."), ECF No. 174, ¶ 4(c). Plaintiffs propose that this amendment helps them "clarify that they suffered an economic injury as a direct result of Citi's foreclosure-related fee and cost demands" and "the inflated debt/lien" that Citi caused, *id.* at ¶ 5, and "request consideration of the denial of the contract claims with prejudice based on their payment to the NLSA client account," (a fact already pled in their Amended Complaint at Paragraph 14), PSAC ¶ 88 n. 11.

However, this Court's attention was already drawn to Paragraph 20 of Plaintiffs' mortgage in *Trunzo I*, where this Court dismissed Plaintiffs' breach of contract claim against Citi because "the provisions of [the] note and mortgage upon which Homeowners rely are, on their face, applicable only to 'note holders' and/or 'lenders'" and Citi never "assumed the obligations of a 'note holder' or 'lender' under Homeowners' note and mortgage." *Trunzo*, 876 F. Supp. 2d at 533-34. As this Court explained for the parties,

> the documents and factual allegations Homeowners themselves put forth, which undermine the plausibility of their conclusion that Seterus and Citi "stand in the shoes" of WPF or Fannie Mae. *See Iqbal,* 129 S.Ct. at 1950; *Crawford Cent. Sch. Dist.,* 888 A.2d at 620. For example, the First Servicing Notice and Mortgagee Letter provide that only the servicing rights to Homeowners' note and mortgage were transferred to Citi, and these documents specifically explain that this transfer did not affect any other rights or duties under Homeowners' loan. The Second Servicing Notice then notified Homeowners that Seterus assumed the servicing of their mortgage, but no other duties. Additionally, neither the mortgage nor the note requires a "servicer" to assume the same obligations as a "lender" or "note holder," and the mortgage itself creates a distinction between a "Note Purchaser" and "Servicer." Finally, Homeowners pled that WPF assigned the "beneficial interests" to their note and mortgage to Fannie Mae, not Citi or Seterus. Am. Compl. ¶ 4, ECF. No. 34.
>
> Even when the Court reads the facts alleged in the Amended Complaint and related documents in the light most favorable to Homeowners—i.e. taking all facts Homeowners allege as true and drawing all reasonable inferences in their favor—the Court does not find Homeowners have sufficiently supported their legal conclusion that Citi, and then Seterus, assumed the obligations of a "note

holder" or "lender" under Homeowners' note and mortgage. Accordingly, Homeowners' breach of contract claim in Count I, relating to both Seterus and Citi is dismissed with prejudice.

*Id.* As Citi points out, the PSAC "offers no new allegations sufficient to establish that Citi was the 'note holder' or 'lender' of Plaintiff's mortgage, as opposed to a mere servicer. The Plaintiffs' payments to their attorney's escrow account [an amount they admitted was actually properly owed, as opposed to the other contested charges] are irrelevant to this determination." Citi's Br. in Opp'n at 13. This Court finds that Plaintiffs' new breach of contract allegations present nothing that warrants altering this Court's 2012 dismissal of their breach of contract claim against Citi, and as such, Plaintiffs' motion to amend its breach of contract claim is denied on the grounds of futility.

The "elephant in the [PSAC]," however, is the presence of two pages worth of additional allegations relating to "common questions of law and fact that predominate over any individual questions of law or fact," *see* PSAC ¶ 36(a)-36(u), and two more pages worth of additional allegations relating to "relevant mortgage terms regarding foreclosure-related fees and costs," *see id.* at ¶¶ 45-57, which, remarkably, are not mentioned in either party's PSAC-related filings. These new allegations are duplicative of Plaintiffs' Amended Complaint, and the addition of them into the mix, notably over three years after Plaintiffs' initial Complaint, would be similarly futile. Here's why.

First up: the new allegations relating to "common questions of law or fact." Paragraphs 36(a) through 36(c) of the PSAC restates elements of a section 406 claim pled in Paragraph 36(6) of the Amended Complaint; Paragraph 36(d) and 36(e) are legal questions answered by the statutory language of section 502 of Act 6; Paragraphs 36(f) through 36(i) restate elements of a UTPCPL claim pled in Paragraph 36(3) of the Amended Complaint; Paragraph 36(j) is a legal

14

question up on appeal before the Pennsylvania Supreme Court in *Grimes v. Enter. Leasing Co. of Philadelphia*, 84 A.3d 1058 (Pa. 2014); Paragraph 36(k) restates the elements of a UTPCPL claim pled in Paragraph 36(7) of the Amended Complaint; Paragraph 36(l) is essentially the same as Paragraph 36(k); Paragraph 36(m) is encompassed within that same legal question up on appeal before the Pennsylvania Supreme Court in *Grimes*, 84 A.3d 1058; Paragraph 36(n) is also a legal question up on appeal before the Pennsylvania Supreme Court in *Grimes*, 84 A.3d 1058; Paragraphs 36(o) and 36(p) are essentially the same as Paragraph 36(n); Paragraphs 36(q) and 36(r) are duplicative and restate what was pled in Paragraph 36(1)(1) of the Amended Complaint; Paragraphs 36(s) and 36(t) are duplicative and restate what was pled in Paragraph 36(1)(3) of the Amended Complaint; and finally, Paragraph 36(u) restates what was pled in Paragraphs 36(1)(1) through 36(1)(3) of the Amended Complaint. As for Plaintiffs' new allegations relating to "relevant mortgage terms," *see* PSAC ¶¶ 45-47, 51-54, Plaintiffs' mortgage was already attached to Plaintiffs' Amended Complaint, and those "relevant mortgage terms" allegations not quoting Plaintiffs' mortgage, *see id.* at ¶¶ 48-50, 55-57, were already pled in the cause-of-action-specific allegations in the Amended Complaint and are duplicative and conclusory.

Ultimately, Plaintiffs' latest allegations in their PSAC do not cure the deficiencies that triggered this Court's dismissal of some of Plaintiffs' claims in 2012, and to the extent that Plaintiffs seek to slide in another Act 6 basis for recovery under the provisions of section 504, this Court finds such an effort – made two years after this Court's *Trunzo I* opinion on Plaintiffs' Amended Complaint (which is void of any request for recovery under section 504), and made without any justifying explanation for such a significant delay – is unavailing under Rule 15.

Plaintiff's Motion for Leave to File a Second Amended Complaint is therefore denied in its entirety.

## II. PHS'S MOTION FOR RECONSIDERATION

PHS requests that this Court reconsider its Orders of June 25, 2012 and July 23, 2012, which correspond to this Court's Opinions on Defendants' Motion to Dismiss and PHS's first Motion for Reconsideration, and dismiss Count VI of Plaintiffs' Amended Complaint in light of the Pennsylvania Superior Court's April 23 decision in *Glover v. Udren Law Offices, P.C.*, 92 A.3d 24 (Pa. Super. Ct. 2014), *reargument denied* (June 23, 2014) ("*State Glover*"). PHS contends that in *State Glover*, the Superior Court "resolve[d] the issue of whether a separate substantive claim may be asserted under section 502 of LIPA and warrants the dismissal of Count VI of the Amended Complaint." PHS's Mem. of Law in Supp. of Mot. for Recons. ("Recons. Mem."), ECF No. 176, at 2.

### A. Legal Standard

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to address newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985). A motion for reconsideration will only be granted on one of the following three grounds: (1) if there has been an intervening change in controlling law; (2) if new evidence, which was not previously available, has become available; or (3) if it is necessary to correct a clear error of law or to prevent manifest injustice. *Max's Seafood Cafe ex rei Lou Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999). PHS premises its motion for reconsideration on an alleged intervening change in controlling law.

On April 23, 2014, the Superior Court affirmed Judge R. Stanton Wettick's Opinion in *Glover v. Udren Law Offices, P.C.*, No. GD-11-018015 (Pa. Ct. Com. Pl. June 13, 2012). In *Trunzo I*, this Court, while analyzing the issue of whether Act 6's section 502 is, like sections

404 and 406, applicable only to "residential mortgage lenders," found the analysis of Magistrate Judge Robert C. Mitchell in *Glover v. Udren*, 2010 WL 5829248 (W.D. Pa. Oct. 21, 2010) *report and recommendation adopted*, 2011 WL 666176 (W.D. Pa. Feb. 14, 2011) ("*Federal Glover*"), more persuasive than that of Judge Wettick. *See Trunzo I*, 876 F. Supp. 2d at 541; *see also id* at 541 n. 20 (noting Judge Wettick's opinion in which he concluded that because section 406 applies only to residential mortgage lenders, and because the defendant was not a residential mortgage lender, the plaintiff's Act 6 claims warranted dismissal for failure to plead any violations of Act 6 that would allow recovery under section 502).[10] This Court reasoned in *Trunzo I* that "Act 6 defines the term 'person' broadly, providing that it includes, but is not limited to, 'residential mortgage lenders' and encompasses individuals, corporations, business trusts, estate trusts, partnerships, and all other legal entities. § 101. Therefore, all three Defendants fall within this definition and are subject to section 502's prohibitions." *Id.* Because Plaintiffs only alleged that they remitted a payment to PHS after Citi had transferred its servicing

---

[10] This Court includes its *Trunzo I* analysis on this point for the parties' convenience:

> Section 502 provides that a person who has paid charges in violation of Act 6 or otherwise by law can recover against "*the person* who has collected such excess interest or charges." § 502 (emphasis added). As noted by the *Glover* court, the Pennsylvania legislature's use of the term "person" in section 502 as opposed to the phrase "residential mortgage lender" in sections 404 and 406 is significant. *Glover*, 2010 WL 5829248, at *7. Act 6 defines the term "person" broadly, providing that it includes, but is not limited to, "residential mortgage lenders" and encompasses individuals, corporations, business trusts, estate trusts, partnerships, and all other legal entities. § 101. Therefore, all three Defendants fall within this definition and are subject to section 502's prohibitions.
>
> However, for a person to be held liable under section 502 they must have collected some illegal charges. *See* § 502 (applying only when a person "has paid" a statutorily-excessive rate of interest or charges prohibited by law). Citi did not receive any contested payment because, as previously noted, Homeowners only allege that they remitted a payment to PHS after Citi had transferred its servicing rights to Seterus. Homeowners' claim under Act 6 section 502 against Citi is therefore dismissed with prejudice. As Homeowners' allege that PHS collected charges in violation of Act 6 on behalf of Seterus, these two Defendants' Motions to Dismiss as to claims arising under section 502 are denied.

*Trunzo*, 876 F. Supp. 2d at 541.

rights to Seterus, this Court dismissed with prejudice Plaintiffs' section 502 claim against Citi, and denied PHS and Seterus's motions to dismiss as to that same statutory provision. *Id.* This Court's Opinion in *Trunzo I* therefore left section 502 as the only Act 6 provision under which Plaintiffs could seek recovery.

On appeal, the Superior Court, in an opinion by Judge Christine L. Donohue, agreed with Judge Wettick's analysis and concluded that section 502, found in Article V of Act 6, which sets forth the remedies and penalties granted by Act 6, "is a general *remedial* provision for conduct prohibited by Act 6 or otherwise involving the loan of money" and does not provide a separate substantive basis on which to pursue claims not otherwise actionable under the substantive provisions of the Act. *State Glover*, 92 A.3d at 30 (emphasis in original). The Superior Court specifically "reject[ed] the notion that by use of the term 'person' in section 502, the Legislature inferentially expanded the scope of potential violators of section 406 of the Act," and the Legislature's use of the term "person" in the section 502 remedial provision simply referred to the reality that "various sections of the Act do not apply *only* to residential mortgage lenders." *Id.* (emphasis in original). The *State Glover* plaintiffs, represented by the same counsel as Plaintiffs in this matter, filed a Petition for Reargument *En Banc*, which the Superior Court denied, *per curiam*, on June 23, 2014. *See* Docket Sheet, *Glover v. Udren Law Offices, P.C.*, 938 WDA 2012, available at https://ujsportal.pacourts.us/DocketSheets/Appellate.aspx (last visited Aug. 28, 2014).

In his hefty dissenting opinion, Judge David N. Wecht premised his analysis on the precept that "statutes 'predicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace' that are designed 'to ensure the fairness of market transactions,'" "must [be] construed [] broadly to effectuate their intended ends." *State Glover*,

18

92 A.3d at 35 (quoting *Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 816 (Pa. 1974)).

Judge Wecht then reasoned that

> Notably, article IV does not employ the word "persons" once in any of its provisions to refer to a lender, servicer, or debt collector. Although the word is employed elsewhere in the act to refer to an individual or entity other than a borrower, all such uses, including its use in section 502, pertain to enforcement. *See* 41 P.S. §§ 502, *supra,* 505 (providing that "[a] ny person who ... violates [Act 6] shall be guilty of a misdemeanor of the third degree," and subject to a fine), 506 (providing for enforcement by the Attorney General against "any person" who has violated Act 6 or regulations promulgated thereunder). Stated briefly, Act 6's teeth are found in article V, which specifies the mechanisms for sanctioning violations of article IV's various prohibitions governing residential mortgage transactions, *inter alia.* If, as the majority holds, section 502 does not provide a remedy for violations of article IV generally and section 406 particularly, then it is unclear how a mortgagor is protected against the conduct proscribed therein in article IV when such conduct is undertaken by debt collectors or law firms that are serving at the behest of RMLs.

*Id.* at 36. Magistrate Judge Mitchell came to a similar and related conclusion in *Federal Glover*, 2010 WL 5829248, at *7, when he analyzed that "if the legislature intended to limit recovery under § 502 against only residential mortgage lenders, it would not have utilized the word "person", a term specifically defined by the statute as "not . . . limited to residential mortgage lenders."

According to Judge Wecht, "[i]n holding that the legislature intended to restrict section 406's prohibition solely to the misconduct of RMLs acting on their own behalf and never to their debt-collecting agents or delegates, the majority constructively grants RMLs carte blanche to flout section 406's strict limitations on the imposition of various costs on mortgage debtors simply by out-sourcing collection and foreclosure activities to third parties, law firms or otherwise." *State Glover*, 92 A.3d at 36. Ultimately, "[a]s a remedial statute, Act 6 is designed to protect homeowners against certain misconduct, not just certain instances of certain

misconduct when it happens to be perpetrated by one category of "person" as defined by section 502 but not another." *Id.* at 36 n. 5.

Sections 406 and 502 have a notable distinguishing factor: section 406 prohibits the receipt of improper charges and interest, while section 502 prohibits the collection of such charges, and this factor, Judge Wecht concluded, "further reinforces the inference that collection activity in violation of section 406, *i.e.*, collection activity affiliated with an RML's ultimate receipt of such charges, is prohibited, not just collection activity undertaken by the RML, itself." *Id.* at 37. These polarized analyses by Judges Donohue and Wecht reflect the reality that the Superior Court panel majority's narrow construction of section 502, vehemently contested by Judge Wecht, is far from settled or widely accepted. Indeed, the *State Glover* docket sheet reflects that the parties are "awaiting a Supreme Court decision." *See* Docket Sheet, *Glover v. Udren Law Offices, P.C.*, 938 WDA 2012, available at https://ujsportal.pacourts.us/ DocketSheets/Appellate.aspx (last visited Aug. 28, 2014).

When a federal court is analyzing an issue of state law, it must look to the controlling law of the highest court in that state. When there is no decision from the state's highest court directly on point, "we are charged with predicting how that court would resolve the question at issue." *Colliers Lanard & Axilbund v. Lloyds of London,* 458 F.3d 231, 236 (3d Cir. 2006). "When predicting how the state's highest court would resolve the issue, we must take into consideration: (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." *Id.* Although due deference is given to the decisions of all lower Pennsylvania courts, "[t]he rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court

would rule otherwise." *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996) (also concluding that "existing decisions of Pennsylvania's intermediate appellate court provide ample guidance for us to resolve this dispute").

Here, as the parties concede, there is, as of yet, no decision from the Pennsylvania Supreme Court directly on point, so, this Court, in ruling on PHS's motion for reconsideration grounded in the Superior Court's holding in *State Glover*, is charged with predicting how the Pennsylvania Supreme Court would resolve the section 502 enigma. In making such a prediction, this Court must take into consideration (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law on this issue; and (4) decisions from other jurisdictions that have discussed this issue. *See Colliers Lanard & Axilbund,* 458 F.3d at 236.

First, *Roethlein v. Portnoff Law Associates,* 81 A.3d 816 (Pa. 2013), is the Pennsylvania Supreme Court opinion that came the closest to resolving the section 502 riddle, but the *Roethlein* court detoured before resolving the issue of whether section 502 is merely a remedial provision of Act 6. As this Court observed in *Trunzo II,*

In *Ro[e]thlein,* the Pennsylvania Supreme Court concluded that Act 6's § 502, the Act's remedy provision, does not permit recovery for harm that extends beyond the subject matter of the statute - charges or fees incurred for the loan or use of money. *Ro[e]thlein,* 81 A.3d at 825 (also filed as a Notice of Supplemental Authority by Plaintiffs at ECF No. 167). PHS contends that in *Ro[e]thlein,* the Pennsylvania Supreme Court "specifically held" that § 502 is not a substantive provision of Act 6, when while analyzing § 502, the court discussed the "substantive provisions of the Act" as sections 201, 301, 401, 401.1, 402, 403, 404, 405, 406, 407, 408, 501. *See* ECF No. 168 at 1 (citing *Ro[e]thlein,* 81 A.3d at 823). This Court disagrees with PHS's reading of *Ro[e]thlein.* The *Ro[e]thlein* court did not go as far as to say that § 502 was not a substantive provision of Act 6, nor did the *Ro[e]thlein* court change the status quo of the law at the time of this Court's decision in *Trunzo I. See, e.g., Glover v. Udren,* 2013 WL 6237990 (W.D.Pa. Dec.3, 2013) (post- *Ro[e]thlein* class certification decision involving underlying claim Act 6 claim for unauthorized charges under 502). In *Ro[e]thlein* the court analyzed § 502 specifically to determine whether, in the context of the

> other substantive provisions of the Act, recovery under § 502 was also limited to claims involving charges or fees incurred "for the loan or use of money." *Ro[e]thlein,* 81 A.3d at 823–24. Notably, the *Ro[e]thlein* court also characterized § 501 as a "substantive provisions of the Act," despite the placement of § 501 under "Article 5 Remedies and Penalties"—just like § 502. These *Ro[e]thlein* ingredients aside, *Ro[e]thlein* has never been cited for the proposition that PHS claims.

*Trunzo II,* 2014 WL 1317577, at \*17 n. 9. Nor, since *Trunzo II,* has *Roethlein* been cited for that proposition. Both the majority and dissenting opinions in *State Glover* cited to *Roethlein,* but solely, in the majority's opinion, using a "*see*" cite, for *Roethlein*'s general holding rejecting a claim against private tax collectors because section 502 does not support a cause of action to challenge costs unless those costs are incurred in connection with the loan or use of money, *Roethlein,* 92 A.3d at 30, and in the dissenting opinion, for the *Roethlein* court's observation that "[n]early all of the definitions under Section 101 [of Act 6] are defined in the context of mortgage loans," *id.* at 36. While the *State Glover* court got close, nowhere does the *Glover* court cite *Roethlein* directly for the proposition that section 502 does not provide a separate substantive basis for pursuing claims not otherwise actionable under Act 6.

Second, as for this Court's review of the decisional law of Pennsylvania's intermediate appellate courts, this Court cannot say, like our Court of Appeals was able to in *U.S. Underwriters Ins. Co.,* that "existing decisions of Pennsylvania's intermediate appellate court provide ample guidance for us to resolve this dispute." *See U.S. Underwriters Ins. Co.,* 80 F.3d at 93. The Superior Court's decision in *State Glover* is the only opinion on point regarding this issue of the scope of section 502, and its thoroughly analyzed, and polarized, majority and dissenting opinions certainly don't provide "ample guidance" for this Court to predict how the Pennsylvania Supreme Court would resolve this issue. As noted, the docket sheet for *Glover* reflects that the parties are "awaiting a Supreme Court decision," *see* Docket Sheet, *Glover v.*

22

*Udren Law Offices, P.C.*, 938 WDA 2012, available at https://ujsportal.pacourts.us/ DocketSheets/Appellate.aspx (last visited Aug. 28, 2014), and in this Court's judgment, the best course of action is to wait for a Pennsylvania Supreme Court decision on this sharply divided section 502 issue before considering reconsidering its 2012 decision allowing Plaintiffs to proceed solely on their section 502 claim against PHS.

Third, this Court must consider how federal courts have interpreted this issue. Since the Superior Court's *State Glover* decision, Magistrate Judge Mitchell has reconsidered his analysis in *Federal Glover*, 2010 WL 5829248 (which this Court considered persuasive authority in *Trunzo I* and in this Court's denial of PHS's first motion for reconsideration), in a May 23, 2014 Report and Recommendation not yet addressed by District Judge Donetta W. Ambrose. *Federal Glover*, No. 08-cv-990, ECF No. 713, at p. 25 (W.D. Pa. May 22, 2014). Judge Mitchell concluded, at the summary judgment stage, based on the Superior Court's *State Glover* decision and the dissenting opinion in *Roethlein*, that the remedial provisions of section 502 do not provide an alternative claim where the plaintiff's substantive claims is predicated under section 406, and that any Act 6 claim predicated on section 406's prohibitions is limited to residential mortgage lenders. *Id.*

In reaching his recommendation to the District Court, Magistrate Judge Mitchell acknowledged that the *Roethlein* court dodged the issue of whether section 502 serves as a substantive cause of action, and read the majority opinion in *State Glover* together with the dissenting opinion in *Roethlein* setting forth that section 502 alone does not create a cause of action for an Act 6 violation, and concluded that "section 502 is not a separate cause of action where the underlying violation of Act 6, or "other" law has been dismissed." *Glover*, No. 08-cv-990, ECF No. 713, at p. 24. To this Court's knowledge, *State Glover* has only been cited once in

23

a federal court's opinion discussing Act 6, *see Stuart v. Udren Law Offices P.C.*, 2014 WL 2604926, \*5 (M.D. Pa. June 9, 2014), and once in a federal court's Order discussing the same, *see Davis, et. al. v. Bank of America, et. al.*, Civil Action No. 13-cv-4396, ECF No. 58, p. 5 (E.D. Pa. 2014). In the former, *State Glover* was cited simply for the proposition that section 406 applies only to "residential mortgage lenders," which the defendant in *Stuart* was not, and in the latter, for the very proposition that is at issue in PHS's Motion: that "section 502 is a general remedial provision for conduct prohibited by Act 6 or otherwise involving the loan of money." Notably, our Court of Appeals' July 29, 2014, unpublished, post-*State Glover* opinion in *Salvati*, while not citing to *State Glover*, implicitly recognized that where a court dismisses the underlying substantive Act 6 claim on which a remedy under sections 503 and 504 is based (in *Salvati*, because two of the defendants were not residential mortgage lenders subject to sections 403 and 406), the plaintiff cannot use sections 503 and 504 as a stand-alone basis for recovery. *See Salvati*, 2014 WL 3719186, at \*3-4.

The motion before this Court is a motion for reconsideration based on what PHS perceives as "an intervening change in controlling law" in *State Glover*, and at this time, the Court would decline to recognize that such an "intervening change in controlling law" has occurred based on a single Superior Court opinion, *Glover*, that constitutes persuasive authority, a related Pennsylvania Supreme Court opinion, *Roethlein*, that did not expressly hold that section 502 cannot support a substantive cause of action, an unpublished Court of Appeals opinion, *Salvati*, that never talked about *State Glover*, and a Report and Recommendation that has not been adopted or rejected. However, that all could change in the blink of a state supreme court eye, so if that were the only basis for reconsideration, the motion would be denied without prejudice. But wait, there's more.

This Court finds another reason to reconsider its 2012, Act 6 analysis in *Trunzo I*: Act 6 does not apply to Plaintiffs' mortgage. On August 14, 2014, this Court entered an Order to Show Cause requiring the parties to show cause as to why Plaintiffs' remaining claim under Act 6 should or should not be dismissed with prejudice, based on the analysis of District Judge Petrese B. Tucker in her August 11, 2014 Order in *Davis, et. al. v. Bank of America, et. al.*, Civil Action No. 13-cv-4396, ECF No. 58 (E.D. Pa 2014), in which she concluded that the loan at issue did not qualify as a "residential mortgage" under Act 6 because the original bona fide principal amount of the mortgage did not fall within the scope of "residential mortgages" as defined in Act 6 at the time the *Davis* plaintiffs entered into their mortgage. This Court has reviewed both parties' responses to this Court's Order to Show Cause, and concludes that here, Plaintiffs' mortgage also does not fall within the scope of "residential mortgages" as defined in Act 6 at the time Plaintiffs entered into their mortgage in 2007.

By its terms, Act 6 only applies to "residential mortgages." Under the current version of the statute, a residential mortgage is defined as "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit." 41 Pa. Stat. Ann. § 101. The current "base figure" is defined as "two hundred seventeen thousand eight hundred seventy-three dollars ($217,873), as adjusted annually for inflation by the department through notice published in the Pennsylvania Bulletin." *Id.* This current base figure has been in effect since 2008, when Act 6 was amended to increase the base figure from $50,000 to $217,873. *See* Interest— Maximum Interest Rates, 2008 Pa. Legis. Serv. Act 2008-57 (S.B. 483) (Purdon's) ("the definition of "residential mortgage" in section 101 of the act of January 30, 1974 (P.L. 13, No.

25

6), referred to as the Loan Interest and Protection Law and more commonly referred to as the Usury Law, amended April 6, 1979 (P.L. 15, No. 4), is amended and the section is amended by adding definitions to read [as follows]").

Notwithstanding the 2008 amendment, courts have looked to the bona fide principal amount set at the time of the transaction, and not at a subsequent date, for considering whether a residential mortgage comes under Act 6. *See In re Harris-Pena*, 446 B.R. 178, 187 (Bankr. E.D. Pa. 2009) (noting the 2008 amendment to Act 6, but applying the pre-2008, $50,000 principal amount limit for loan that closed in 2001); *In re Grayboyes*, 2006 WL 437546, *7 (E.D. Pa. 2006) *aff'd sub nom. In re Grayboyes*, 223 F. App'x 112 (3d Cir. 2007) ("The principal amount of a loan must be measured at the time of the consummation of the transaction, rather than at subsequent dates. . . . This methodology comports with the statutory definition of 'residential mortgage,' which specifies the '*original* bona fide principal amount' of the mortgage.").

Here, on August 31, 2007, Plaintiffs obtained a loan from West Penn Financial Services Center to purchase property at 2925 Idaho Avenue, Bethel Park, Pennsylvania. Pl.'s Am. Compl. ¶¶ 2-3, Exs. A, B. Plaintiffs' original loan principal amount was $69,900, secured by a first priority mortgage. *See id.* at ¶¶ 8-9, Exs. A, B. At the time that Plaintiffs entered into their mortgage contract, Act 6 defined a residential mortgage, in relevant part, as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less." *See* 2008 Pa. Legis. Serv. Act 2008-57 (S.B. 483). The bona fide principal amount of Plaintiffs' mortgage exceeds Act 6's $50,000 bona fide principal amount for residential mortgages in place at the time the transaction was consummated in August of 2007, and therefore, Act 6 does not apply to Plaintiffs' mortgage loan.

Plaintiffs aver that such an analysis, paralleling that in *Davis*, is contrary to Pennsylvania law because the *Davis* court "conflate[d] the parties' substantive rights in a mortgage loan contract with procedural rights to enforce those substantive rights which statutory amendments may change," and claims that "numerous Pennsylvania courts . . . have held that the procedures necessary to bring a foreclosure action . . . may be changed by subsequent laws, even where those procedures affect mortgages executed prior to the statutory amendment." Pls.' Resp. to Order to Show Cause ("Pls.' Resp."), ECF No. 203, at 2. However, Plaintiffs' analysis disembodies the remaining Act 6 provision under which they could recover, section 502,[11] from section 101, which provides all of the substantive definitions through which Act 6 is interpreted. In support of their argument, Plaintiffs primarily cite to *First National Bank of Pennsylvania v. Flanagan*, 528 A.2d 134 (Pa. 1987), and the red-flagged *Ministers and Missionaries Benefit Board of the American Baptist Churches v. Goldsworthy*, 385 A.2d 358 (Pa. Super. Ct. 1978) *disapproved of by Marra v. Stocker*, 615 A.2d 326 (Pa. 1992). Plaintiffs correctly note that the *Flanagan* court drew a distinction between substantive rights under the contract and procedural rights to enforce those substantive rights. *Compare Flanagan*, 528 A.2d at 270 ("A later law cannot abridge rights under a prior contract. The only substantive laws in effect when the parties enter into a contract are implicitly incorporated into it."), *with id.* at 271 ("the contract clauses of our state and federal constitutions do not preclude the legislature from passing laws which impose new procedures on enforcement of a substantive right").

Plaintiffs then use *Flanagan* to support their argument that "[t]he Pennsylvania Legislature's action in 2008 expanding coverage of the pre-foreclosure procedural requirements was also effective as to existing mortgages," citing in particular the language in section 406,

---

[11] Plaintiffs do not discuss section 502, and instead obfuscate the issue by grounding their analysis in their Response in section 406 of the Act. Post-*Trunzo I*, the only remaining claims for Plaintiffs under Act 6 are those claims against PHS and Seterus under section 502 of the Act. *See Trunzo I*, 876 F. Supp. 2d at 540-41.

"upon commencement of foreclosure or other legal action" and "prior to commencement of foreclosure or other legal action" as somehow demonstrating that the effective date of the amendment only needs to precede the "commencement of foreclosure or other legal action," not the execution of the mortgage. Pls.' Resp. at 5 (paying no heed to the first five words of section 406, "with regard to residential mortgages").

Apart from the rather significant fact that the only remaining Act 6 claims in this case are those under section 502, not section 406, Plaintiffs' analysis disembodies the remaining Act 6 provision under which they can recover, section 502, from section 101, which provides all of the definitions through which Act 6 is interpreted. Section 502 of Act 5 provides, in pertinent part, that

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law *or has paid charges prohibited or in excess of those allowed by this act or otherwise by law* may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges.

41 Pa. Stat. Ann. § 502 (emphasis added). Plaintiffs' remaining section 502 claim is grounded on factual allegations that PHS and Seterus collected improper foreclosure-related costs, and factual allegations that those costs related solely, and unequivocally, to Plaintiffs' mortgage. *See* Pls.' Am. Compl. ¶¶ 2, 8, 9, 74-82, Exs. A, B. There is nothing "procedural" about Plaintiffs' ability to recover under section 502 when the "paid charges prohibited or in excess of those allowed by this Act," pursuant to Plaintiffs' own allegations, occurred because their mortgage, purportedly a residential mortgage, was in foreclosure. *See id.* Plaintiffs' attempt to distinguish *Harris-Pena* and *In re Grayboyes* because those cases only dealt with "substantive rights" is therefore inapposite.

Plaintiffs' mortgage, at the time Plaintiffs entered into it, simply did not meet section 101's definition of a "residential mortgage." The definitions of section 101 define the contours

28

of the substantive rights protected by Act 6. Because Plaintiffs' mortgage does not fall within the scope of the pre-2008 definition of a residential mortgage under the Act, Plaintiffs are without a predicate violation of Act 6 for which they can recover under section 502, *State Glover*, or no *State Glover*. Therefore, Plaintiffs' remaining section 502 claims against PHS and Seterus are dismissed, with prejudice.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File a Second Amended Complaint is denied, Defendant PHS's second Motion for Reconsideration is granted, on other grounds, and Plaintiffs' remaining section 502 claims against PHS and Seterus are dismissed, with prejudice.

This leaves the following claims in the case: (1) as to Citi, Count VII: Plaintiffs' individual claim under the UTPCPL, 73 Pa. Cons. Stat. Ann. § 201-2(4)(xxi); (2) as to PHS, Count III: Plaintiffs' claim under the FDCPA, and Count VII: Plaintiffs' claim under the UTPCPL, § 201-2(4)(xxi); and (3) as to Seterus, Count II: Plaintiffs' claim of unjust enrichment, Count III: Plaintiffs' claim under the FDCPA, and Count VII: Plaintiffs' claim under the UTPCPL, 201-2(4)(xxi).

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: August 27, 2014

cc: All counsel of record

29