## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXANDRA R. TRUNZO and ANTHONY )
HLISTA, )
                 )
                 )         Civil Action No. 2:11-cv-01124
          Plaintiffs, )
                 )
v. )         Judge Mark R. Hornak
                 )
CITI MORTGAGE, et al., )
                 )
          Defendants. )

## OPINION

**Mark R. Hornak, United States District Judge**

Before the Court is the latest motion to dismiss filed in the now eight-year litigation of this case: Defendant Phelan Hallinan & Schmieg, LLP's ("PHS's") Motion Pursuant to Rule 12(b)(6) to Dismiss the Class Allegations of the Third Amended Complaint, ECF No. 313 ("Motion"). For the reasons that follow, PHS's Motion is denied.

## I.    Background

This case has a long and complex procedural history.[1] The Court's Opinion in *Trunzo III*, issued on August 29, 2014, boiled Plaintiffs Alexandra Trunzo and Anthony Hlista's (collectively "Plaintiffs") case down to the following claims: (1) as against CitiMortgage ("Citi"), one individual claim under the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"); (2) as against PHS, one claim under the federal Fair Debt Collection Practices Act ("FDCPA") and one claim under the UTPCPL; and (3) as against Seterus, Inc. ("Seterus"), one

---

[1] This Court explained the facts giving rise to this case in *Trunzo v. Citi Mortgage*, 876 F. Supp. 2d 521 (W.D. Pa. 2012) ) ("*Trunzo I*"), *also available at* ECF No. 74, *reconsideration denied* (July 23, 2012); *Trunzo v. Citi Mortgage*, 2014 WL 1317577 (W.D. Pa. Mar. 31, 2014) ("*Trunzo II*"), *also available at* ECF No. 171; and *Trunzo v. Citi Mortgage*, 43 F. Supp. 3d 517 (W.D. Pa. 2014) ("*Trunzo III*"), *also available at* ECF No. 207. The Court writes primarily for the benefit of the parties, so it need not reiterate the facts here. This Opinion becomes *Trunzo IV*.

1

claim under the FDCPA, one claim under the UTPCPL, and one claim for unjust enrichment. (*Trunzo III*, ECF No. 207, at 29, *also available at* 43 F. Supp. 3d at 537.) The Court stayed this case on February 26, 2015, pending the decision in *Kaymark v. Bank of America*, 783 F.3d 168 (3d Cir. 2015). (Order Granting Stay, ECF No. 233.) In February 2016, the Court ordered the parties to file an updated ADR Stipulation. (ECF No. 252.)

Citi and Plaintiffs reached a settlement agreement prior to the scheduled mediation set for July 22, 2016. (ECF Nos. 258, 264.) Seterus and Plaintiffs reached a settlement as a result of that mediation. (ECF No. 264.) Stipulations of settlement were filed on September 30, 2016, (ECF Nos. 276, 277) and approved by the Court on October 3, 2016, without hearings.[2] (ECF Nos. 278, 279.)

Plaintiffs then filed their Third Amended Class Action Complaint ("TACAC") on March 8, 2017. (ECF No. 312.) PHS is now the last remaining Defendant in this case. Only one class claim remains—alleged violation of the FDCPA, 15 U.S.C. § 1692.[3] The class description has also evolved throughout the pleading phase, but the operative TACAC pleads a purported class consisting of:

> [A]ll former or current homeowners (sometimes referred to as "Homeowners") who obtained financing secured by a first mortgage on property located within the Commonwealth of Pennsylvania, wherein (i) [PHS]'s records show that a demand for alleged foreclosure fees and costs was made in standardized communications (i.e., letters or complaints) and (ii) those foreclosure fees/costs had not been incurred at the time the communication was made. These "foreclosure fees and costs" include some or all of the following: Prothonotary / Court Costs, Additional Foreclosure Costs, and

---

[2] Despite argument back and forth in the briefs, PHS acknowledged at Oral Argument on October 3, 2017, that a fairness hearing following the settlements was not required by the Federal Rules of Civil Procedure or any statute at that procedural juncture. ECF No. 359, 14:9–12. But PHS maintains that the lack of transparency of the terms of the settlement, the lack of notice to purported class members, and the absence of a hearing are indicators that Plaintiffs do not have the best interests of the purported class in mind. Def.'s Reply Mem., ECF No. 328, at 7 (Plaintiffs "were not **required** to seek court approval of their settlement. However, the [previously cited] cases show that it is strongly advisable to do so because it eventually and inevitably will be an issue in terms of the adequacy of representation and the fairness to the class. Here, there can be little question that Plaintiffs, in the words of their own counsel "sold out the class" . . . .) (emphases in original).

[3] Plaintiffs did not re-plead any claims under the UTPCPL against PHS in the TACAC. *See* ECF No. 312; ECF No. 325, at 4 ("Plaintiffs agreed to dismiss the UTPCPL claim").

Attorney Fees. Only communications made within one year of the date the original Complaint in this case was filed are included within the class.

(TACAC, ECF No. 312, ¶ 33.)

PHS argues that the settlements with Citi and Seterus has created a "sea change" in the landscape of this case. In its Motion, PHS seeks to dismiss the sole class claim against it pursuant to Rule 12(b)(6). Given that PHS seeks to attack the class allegations on the basis that the purported class lacks ascertainability, typicality, and adequacy of representation, the Court will treat the Motion as one to strike the FDCPA class claim. In the alternative, PHS asks this Court to narrow the class definition. In the course of the extensive briefings by the parties, PHS also raised a mootness argument with regard to the entire case.[4] The Court will address the mootness issue first.

## II. Legal Standard

### a. Mootness

"Mootness asks 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010) (quoting *Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996)). The mootness doctrine demands that a "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

A case becomes moot when the issues presented before the Court are no longer "live" or "the parties lack a legally cognizable interest in the outcome." *Ehrheart*, 609 F.3d at 596 (quoting *Donovan ex. rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir.

---

[4] PHS directly put the mootness issue before the Court in its Reply Brief. (ECF No. 328.) The Court authorized Plaintiffs to respond in their Sur-Reply in Opposition. (ECF No. 336.) Then, the Court authorized another round of briefings on the issues. (*See* ECF Nos. 341, 348.) After all of the briefing concluded, the Court heard Oral Argument on October 3, 2017. (ECF No. 357.) The Court allowed the parties to file supplemental summaries of the arguments, which both PHS and Plaintiffs did. (*See* ECF Nos. 360, 361.)

3

2003)). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996).

Article III mootness has often been considered a more "flexible" requirement than the other justiciability requirements, especially in class action litigation. *Richardson v. Dir. Fed. Bureau of Prisons*, 829 F.3d 273, 278 (3d Cir. 2016). The Third Circuit has "recognized that 'in the class action context, special mootness rules apply' for determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class action." *Id.* at 278–79 (quoting *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003).

### b. **Dismissal or Limitation of Class Allegations**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 348 (2011) (quotation marks omitted). "To invoke this exception, every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)–(b)). To satisfy Rule 23(a),

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply, adequacy).

*In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting Fed. R. Civ. P. 23). Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . (2)

the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate [predominance] over any questions affecting only individual members, and that a class action is superior [superiority] to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Under Rule 23(d)(1)(D), a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). However, courts grant motions to strike under Rule 23(d)(1)(D) before class discovery only in "the rare few [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 246 (E.D. Pa. 2012) (quoting *Landsman & Funk P.C. v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011)), and "no amount of discovery will demonstrate that the class can be maintained." *Id.* at 245; *see also Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 182 (M.D. Pa. 2008) (noting that a "district court will strike class allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action"). As the Supreme Court has noted:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

"The plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion. *Id.*

## III. Discussion

### a. Mootness

In general, "[s]ettlement of a plaintiff's claims moots an action." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992). And, "when claims of the named plaintiffs become moot before class certification, dismissal of the action is required." *Id.* PHS argues that Plaintiffs' settlement with Seterus, resulting in the dismissal of the FDCPA claim against Seterus, moots Plaintiffs' own FDCPA claim against PHS. PHS alleges that FDCPA, pursuant to 15 U.S.C. §1692k(a), authorizes a maximum of $1,000 in statutory damages for each plaintiff *per action* regardless of the number of defendants or the number FDCPA violations.[5] Def.'s Supp. Mem., ECF No. 360, at 2–5. In this case, since there are two named Plaintiffs,[6] PHS contends that the total statutory FDCPA recovery available to these two individuals would be a firm $2,000, even though Plaintiffs pled FDCPA violations against both Seterus and PHS based on separate and independent conduct. PHS further alleges that the settlement with Seterus was in excess of $2,000, so Plaintiffs are not necessarily entitled to any additional award for any FDCPA

[5] Section 1692k(a) provides the amount of damages available for civil liability in both individual actions and class actions. Subparagraph 1692k(a)(2)(A) authorizes up to $1,000 in statutory damages "in the case of any action by an individual." Subparagraph 1692k(a)(2)(B) authorizes "such amount for each named plaintiff as could be recovered under subparagraph (A)" in class action cases. In other words, under either subparagraph (A) or (B), in an individual or class action, each of the named Plaintiffs in this case could recover no more than $1,000 in statutory damages against PHS. Combined, Plaintiffs themselves could recover no more than $2,000 in statutory damages regardless of whether the Court looks at this issue from the individual action or class action lens. Subparagraph 1692k(a)(2)(B) goes on to provide a statutory damages cap for the other class members in a class action: "the lesser of $500,000 or 1 per centum of the net worth of the debt collector."

[6] Named Plaintiffs Alexandra Trunzo and Anthony Hlista are a married couple, and both were on the mortgage that eventually led to these claims. *See* TACAC, ¶ 3.

6

violations pled against PHS. In other words, by Seterus settling its own FDCPA claim with Plaintiffs in excess of the statutory damages cap, PHS says that it need no longer answer for its own alleged FDCPA violations. After all, says PHS, Plaintiff chose to bring all their FDCPA claims in this one action, and there is a "per action" damages cap, so litigation of all FDCPA claims is over.

Plaintiffs on the other hand advocate that § 1692k authorizes a maximum of $1,000 in statutory damages for each plaintiff per action *per defendant*. Pls.' Resp. to Def.'s Sur-Reply, ECF No. 348, at 2–7. While Plaintiffs acknowledge that the number of the violations is irrelevant for purposes of statutory damages, Plaintiffs argue the number of defendants is not irrelevant, especially when those defendants allegedly committed independent and distinct FDCPA violations. Therefore, Plaintiffs assert that they are still entitled to up to $2,000 in statutory damages from PHS for all FDCPA violations by PHS, regardless of their settlement with Seterus.

With these contentions, the parties have hit upon a major split among United States District Courts, and this split has not been resolved by our Court of Appeals.[7] This Court need not pick sides today. Built into PHS's logic (that the remaining FDCPA claim is moot because the Seterus settlement gave Plaintiffs full individual FDCPA relief) are its necessary assumptions that the settlement with Seterus, whatever the number was, (1) can be allocated among claims

---

[7] *Compare Jones v. Inv. Retrievers, LLC*, No. 10-cv-1714, 2011 U.S. Dist. LEXIS 44138 (M.D. Pa. Apr. 25, 2011), *Green v. Monarch Recovery Mgmt.*, 997 F. Supp. 2d 932 (S.D. Ind. 2014), *Wilson v. NACM-Or Serv. Co.*, No. 12-01515, 2013 U.S. Dist. LEXIS 178234, at *33 (D. Or. Dec. 19, 2013), *Ganske v. Checkrite, Ltd.*, No. 96-cv-0541, 96-cv-0743, 1997 U.S. Dist. LEXIS 4345, at *12 (W.D. Wis. Jan. 6, 1997), *Gamboa v. Carruthers*, No. 10-cv-1473, 2010 U.S. Dist. LEXIS 127840, at *3 (M.D. Fla. Nov. 19, 2010), *and Overcash v. United Abstract Grp.*, 549 F. Supp. 2d 193 (N.D.N.Y. 2008), *with Goodmann v. People's Bank*, 209 F. App'x 111, 113 (3d Cir. 2006), *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004), as amended (Oct. 22, 2004), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *Blandina v. Midland Funding, LLC*, No. 13-cv-1179, 2015 U.S. Dist. LEXIS 12621, at *4–6 (E.D. Pa. Feb. 2, 2015), *Lowe v. Elite Recovery Sols. L.P.*, No. 07-cv-0627, 2008 U.S. Dist. LEXIS 8353, at *6 (E.D. Cal. Feb. 4, 2008), *Dowling v. Kucker Kraus & Bruh, LLP*, No. 99-cv-11958, 2005 U.S. Dist. LEXIS 11000, at *10 (S.D.N.Y. June 6, 2005), *and Martinez v. Scott*, No. 10-cv-1619, 2011 U.S. Dist. LEXIS 90630, at *12 (S.D. Tex. Aug. 12, 2011).

(here, to moot the claim, full FDCPA relief for both Plaintiffs would require a minimum FDCPA allocation of $2,000, notwithstanding that there were two other settled claims against Seterus: unjust enrichment and UTPCPL), and (2) settlement necessarily constitutes an admission of liability or an offer of judgment under the FDCPA. Without the first assumption, there is still some room under "the cap" for FDCPA statutory damages as to PHS. Without the second assumption, any money received by Plaintiffs cannot be definitely "categorized" as FDCPA damages. To the point, as to the second assumption, PHS is essentially seeking to use FDCPA-allocated settlement funds to off-set one hundred percent (100%) of its own potential liability under the FDCPA. Unless the Court can conclude both assumptions are true, at least some statutory damages could remain available to Plaintiffs, and their individual claims would not have been mooted.

PHS cites to FDCPA cases involving offers of judgment to support its position. However, a settlement is not synonymous with an offer of judgment. *Wolff v. Royal Am. Mgmt.*, 545 F. App'x 791, 794 (11th Cir. 2013) ("[E]ven if the plaintiff accepted the offer, without an offer of judgment, full relief had not been offered."); *Cohen v. Am. Credit Bureau, Inc.*, No. 10-cv-5112, 2012 WL 847429, 2012 U.S. Dist. LEXIS 33687, at \*9 n.5 (D.N.J. Mar. 13, 2012) ("Settlement offers are not offers of judgment pursuant to Federal Rule of Civil Procedure 68. Thus, Defendant exposed itself to increased fees and costs by not offering judgment.").

PHS asserts that the mere fact of settlement implies *something* was allocated to the FDCPA claim in the Seterus settlement, and it asks this Court to essentially credit PHS with the full impact of Seterus's settlement funds that maybe were (or maybe were not) allocated to that specific FDCPA claim. The Court cannot accept that request. Here's why:

Determining after the fact how parties to a general settlement valued various claims in arriving at their settlement is inherently difficult. Consequently, such

8

valuations would be unlikely to represent precisely what factors each party weighed and how it valued them in reaching the settlement. To add to the uncertainty, the settling defendants would ordinarily have no interest in how the proceeds were allocated among the various claims. On the other hand, the plaintiff would have a real interest in aggrandizing by hindsight the amounts attributable to the claims now known to have been decided in favor of the defendant.

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 436 (3d Cir. 1993) (recognizing that while a plaintiff is entitled to only one full recovery, amounts received in settlement based on different theories of liability should not set-off a jury award against a non-settling defendant). *Gulfstream* addressed set-offs among jointly and severally liable codefendants. While this is not a case of jointly and severally liable codefendants, this Court finds support in this analysis for its conclusion that it should not allocate any of the settlement funds from the settlement with Seterus to the live FDCPA claim against PHS absent demonstratively clear record that such must be the case.

Beyond the reality that such an allocation would require a combination of mind-reading and peering behind the confidentiality curtain that exists in mediation, the fact remains that Plaintiffs originally brought FDCPA claims against PHS and Seterus for independent and distinct conduct.[8] PHS and Seterus each sent letters that allegedly distinctly violated the FDCPA. Plaintiff has thus shown that its "settlement or part thereof did not represent damages arising under the same theory of liability as those forming" the theory of liability against PHS. *Id.* at 445 n.3. Under the *Gulfstream* rational, the Court should treat the settlement proceeds from Seterus and the available damages as against PHS as distinct from one another for purposes of

---

[8] PHS disputes that the FDCPA claim differs between PHS and Seterus because PHS was alleged to be a defendant as to the November 9th and December 6th correspondence in both the original and First Amended Complaints. See ECF No. 328, at 9. This was briefly addressed at Oral Argument on October 3, 2017, where Plaintiffs pointed out that there are four letters at issue in this case, two sent by Seterus and two sent by PHS. The Court analyzed these letters in *Trunzo I*, providing a chart showing which Defendant sent which letter and showing completely different quoted costs in just about every letter. *See* ECF No. 74, at 6. Given this lack of record support for PHS's theory, the Court rejects PHS's argument that different letters sent by different Defendants citing contradictory costs and fees could not give rise to separate theories of FDCPA liability as a matter of law.

calculating available statutory damages, even if Congress did intend for independent FDCPA claims brought in the same cause of action to be assessed under one sole *damages* cap. In this case, absent any offers of judgment or other docket activity demonstrating that the full $2,000 FDCPA *damages* cap was in fact met, and in light of the fact that the theories of FDCPA liability against PHS and Seterus differed, the settlement proceeds from Seterus cannot be considered to be in full satisfaction of the FDCPA claims against PHS.

Therefore, there may well still be statutory damages on the table as to Plaintiffs' claim of FDCPA liability against PHS, and the case is not moot.[9] Furthermore, since there is only one defendant left in the case, the Court need not decide in this case the "per defendant" question.

### b.     Class Claim

Concluding there is still a live case or controversy, the Court now turns to the essential elements of Plaintiffs' class claim. PHS challenges the asserted ascertainability, commonality, typicality, and adequacy of the class. Each is discussed below in turn.

As explained above, "sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims." *Falcon*, 457 U.S. at 160. "The plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete*, 767 F.2d at 1424. PHS has only challenged the Rule 23(a) factors, so this Court need not discuss the Rule 23(b)(2) or (b)(3) factors.

---

[9] The Court need not delve into the "special mootness rules" that can save a class action when a plaintiff's individual claim is mooted by actions of the defendant(s). *Richardson*, 829 F.3d at 278.

### i. Ascertainability

"The ascertainability requirement as to a Rule 23(b)(3) class is consistent with the general understanding that the class-action device deviates from the normal course of litigation in large part to achieve judicial economy." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 (3d Cir. 2015). It is a distinct requirement, a "prerequisite" or "implicit requirement" to the Rule 23 factors, that requires its own analysis. *Id.* "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* at 163 (quoting *Hayes v. Wal-Mart*, 725 F.3d 349, 355 (3d Cir. 2015)).

In *Marcus*, our Court of Appeals concluded that the proposed class was not ascertainable because the plaintiffs could not identify cars with the allegedly defective "run-flat" tires. 687 F.3d at 593. The defendants did not have sufficient records that would demonstrate whether a putative class member's run-flat tires met the class definition, and the plaintiffs failed to offer "a reliable, administratively feasible alternative" to identify class members. *Id.* at 595.

In *Byrd*, our Court of Appeals concluded that the proposed class was ascertainable because objective records in the defendant's possession could readily identify the computers upon which the spyware function had been activated and those records could also identify the customer who leased or purchased those specific computers. 784 F.3d at 169. That Court dismissed the district court's concern that the proposed class was "overly broad" as a concern outside the scope of the Third Circuit's ascertainability test.

Here, Plaintiffs point to similarities in their proposed methods of ascertaining class members and the proposed methods applied in *Byrd*. PHS allegedly has business records and billing records that can alone identify who fits within the class description, and Plaintiffs say that

sifting through these records to determine which of those individuals meet the class description is "administratively feasible." PHS asserts that a determination of whether fees had been incurred at the time a communication was made cannot be determined on the face of a reinstatement letter or other communication, and it cannot be determined by standardized information in PHS's databases. Instead, such an inquiry would require painstaking mini-trials that would qualify such a process as "administratively infeasible." PHS also argues that Plaintiff's approach is overly broad and would capture every letter PHS had ever sent.

First, as stated above, our Circuit has rejected the opportunity to include concerns of "overly broad" or "under-inclusive" class descriptions in the ascertainability analysis. "[A]scertainability only requires the plaintiff to show that class members can be identified." *Carrera v. Bayer Corp.*, 727 F.3d 300, 308 n.2 (3d Cir. 2013). Second, this is not yet at the class certification stage. Plaintiffs have had no opportunity to test this viable theory, and PHS has no concrete examples that the process proposed will be nearly as disastrous as it claims. In all other regards, it appears to the Court that the proposed method of ascertaining class members is quite similar to that in *Byrd*. At this point, the Court cannot conclude that the ascertainability standard cannot be met as a matter of law. Plaintiffs have met their burden of advancing a prima facie showing that discovery is likely to produce substantiation of the class allegations with respect to ascertainability.

## ii. **Commonality**

This Court briefly but succinctly explained the commonality issue in *Trunzo II*, 2014 WL 1317577, at \*8. Here, the TACAC pleads a sufficient factual and legal claim common to the entire class: PHS allegedly demanded the payment of foreclosure fees and costs in standardized communications before such fees or costs had been incurred. *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *Lester v. Percudani*, 217 F.R.D. 345, 349–50 (M.D. Pa.

2003). This is enough to survive a motion to strike. *See Landsman & Funk*, 640 F.3d at 93 n.30 (stating that, ultimately, "this case is not among the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met").

### iii. **Typicality**

PHS first avers that Plaintiffs' class allegations are deficient because Plaintiffs' own claim is not typical of those of the putative class. This Court thoroughly explained the test for typicality in *Trunzo II. See* 2014 WL 1317577, at \*8–13. In sum, the Court centers its typicality inquiry on whether (1) Plaintiffs' claims are generally the same as those of the purported class with regards to the legal theory advanced and factual circumstances underlying that theory; (2) the Plaintiffs' claims are subject to a defense that is inapplicable to numerous members of the class and would likely become a major focus of the case; and (3) the interests and incentives of the representative are sufficiently aligned with those of the class. *Id.* at \*9. The focus of the Court's analysis is whether "the legal or factual position of the representatives is markedly different from that of other purported members of the class even though common issues of law or fact are present." *Marcus*, 687 F.3d at 598 (quoting 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1764 (3d ed. 2005)). Typicality exists when the injuries of the class members can be traced to a common wrong. *Id.* (citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994).

PHS challenged typicality with respect to the FDCPA claim in *Trunzo II*, and this Court rejected PHS's arguments as insufficient to defeat the typicality requirement at the motion to dismiss phase. PHS now argues that, prior to the TACAC, the FDCPA claim has always been based on an underlying Pennsylvania Loan Interest and Protection Act (also known as "Act 6")

or UPTCPL violation, and now that those claims are gone, there is no more common thread or common wrong in the case.

Plaintiffs' FDCPA claims have always rested on the general principle that PHS (1) "charge[d] and/or collect[ed] legally and contractually unauthorized charges or fees that were misrepresented to Homeowners in violation of the FDCPA." Pls.' Am. Compl., ECF No. 34, ¶ 36(3). In the Court's estimation, the FDCPA claims may and do stand alone. The FDCPA is distinct from state laws and does not require a state law violation to support a FDCPA claim. Just because the Act 6 and UPTCPL claims are no longer in the picture does not mean a class cannot exist based on FDCPA violations alone. *See Kaymark*, 783 F.3d 168 (concluding that the representation of not-yet-incurred fees as due and owing when they have yet to be incurred is a violation of the FDCPA).

PHS also points to this Court's Opinion in *Trunzo II* in which this Court concluded there was a lack of typicality in Plaintiffs' class claims against Citi. There, "[t]he essence of Citi's whole argument is that the named Plaintiffs' allegations give rise to defenses possessed by Citi that are unique to the named Plaintiffs' specific circumstances – in particular, defenses concerning the elements of causation and deceptive conduct." 2014 WL 1317577, at \*7. PHS does not allege analogous specific defenses unique to Plaintiffs' specific circumstance here. PHS did so in *Trunzo II*, and the Court rejected each of those arguments as insufficient to defeat typicality at the motion to dismiss phase.

Finally, PHS argues that the purported class description is over-inclusive because it will capture "thousands of homeowners who never received a request for payment of filing fees for a complaint that had not yet been filed,"[10] presumably because the class description would capture those who received a demand for just about any foreclosure-related, but not yet incurred, fees or

---

[10] Def.'s Br. in Supp., ECF No. 314, at 15.

14

costs. The class could theoretically include those who received demand letters that did not include prothonotary fees but did include something that could be labeled "additional foreclosure costs." PHS essentially argues that the variety of demanded fees and costs that may have been made and the variety of circumstances in which they were made (e.g., was a complaint later filed or was a complaint never actually filed?) constitute different fish that will be improperly caught by the same net.

Plaintiffs, on the other hand, claim their class description satisfies the typicality requirement because the purported class appropriately captures those to whom PHS misrepresented prothonotary fees, attorney fees, and "additional foreclosure costs" because such costs had not in fact been incurred. Here, the alleged common thread is the receipt of standardized communication from PHS that contained a demand for payment of not-yet-incurred fees and costs in connection with collection of a debt. Whether that occurred during an actual foreclosure proceeding or not, there is alleged common wrong and a common harm.

Plaintiffs' legal theory as advanced appears to be that PHS sent standardized communications seeking to collect on fees and costs that had yet to be incurred, which is an alleged violation of the FDCPA. However, the factual circumstances underlying that legal theory may be very different among class members. The specific amounts demanded will vary, the specific type of costs or fees may be different, the relationship between the demand letter and the procedural posture of the foreclosure action may vary, and the extent to which the fee was not later incurred may change.[11]

But varying factual circumstances among class members will not always preclude typicality, *Newton v. Merrill Lynch*, 259 F.3d 154, 184 (3d Cir. 2001), but variances can be

---

[11] PHS argues there is a material difference between demanding a prothonotary fee that had yet to be incurred at the time of demand but later was incurred (because a foreclosure complaint was actually filed) and demanding a prothonotary fee that would never be incurred.

15

significant enough to make the class vehicle an inappropriate mechanism for relief. *See Trunzo II*, 2014 WL 1317577, at \*13. In *Haynes v. Wells Fargo Bank, N.A.*, class certification of an FDCPA claim was denied because, in part, "the reasonableness and propriety of individual fees and costs [allegedly improperly assessed in violation of the statute] is a fact-specific inquiry which precludes certification." No. 08-cv-183, 2017 WL 5895160, at \*5 (E.D. Tex. Oct. 30, 2017), adopted by 2017 WL 5890050 (E.D. Tex. Nov. 29, 2017). In *Haynes*, the circumstances of each debtor in the purported class would determine whether individual fees were reasonable, and this would demand a "fact-specific inquiry rather than a class-oriented decision." *Id.*[12]

In *Good v. Nationwide Credit, Inc.*, a class settlement approval case, typicality was satisfied because "all members of the proposed class received collection letters containing nearly identical language." 314 F.R.D. 141, 152 (E.D. Pa. 2016). There, the named plaintiffs' injuries were identical to all class members' injuries because all injuries derived from the verbatim allegedly illegal language in defendant's collection letter. *Id.*

Unlike *Good*, this is not a case where one sentence or clause in a letter will appear verbatim in all proposed class members' letter, giving rise to an identical injury. Here, the timing of the demand must be cross-referenced with other actions taken in the collection action, and corresponding actions by PHS will differ among the purported class. Was a complaint filed? If so, when? What were the demanded attorney's fees? What other fees were assessed and were those later incurred or never incurred? The answer to these questions, and more like this, will vary among the class members and likely vary as between the named Plaintiffs and other represented class members.

---

[12] The Magistrate Judge in *Haynes* addressed the fact-specific inquiry under the "commonality" element, but under our Circuit's framework and the circumstances in this case, the varying factual circumstances problem is best addressed under the typicality heading.

Varying fact patterns do not necessarily defeat typicality. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58. "Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Id.*

Rational discovery may turn up individual circumstances that prove the class action vehicle is inappropriate here, but that is an issue for the class certification phase, as demonstrated in *Haynes*. The TACAC sufficiently pleads a specific injury and a class that captures others who suffered from the same alleged practice. This is consistent with this Court's ruling in *Trunzo II*, where the Court denied PHS's Motion to Strike Class Allegations because the operative pleading sufficiently pled that PHS "has allegedly committed a 'common wrong' applicable to all class members," including the FDCPA class claim. *Trunzo II*, ECF No. 171, at 30. Once again, "[t]his Court concludes that PHS has not advanced an argument sufficient to demonstrate that class discovery will necessarily fail to illuminate any further evidence of a relation between the class claim[] and those of the named Plaintiffs sufficient to satisfy the typicality requirement of Rule 23(a)." *Id.* at 30–31. The TACAC adequately pleads typicality to survive a motion to strike the class claim.

### iv. **Adequacy**

PHS challenges the adequacy of representation of both the representative Plaintiffs and their counsel. Rule 23(a) requires the named plaintiff to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Inquiry into the adequacy of the representative class members focuses on two inquiries: the qualifications of counsel to represent the class, and any conflict of interest between named parties and the class they seek to represent. *In re*

17

*Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). PHS focuses on the latter. In essence, PHS argues that Plaintiffs and Plaintiffs' counsel sold out their purported class with respect to claims brought against the deeper-pocket-Defendant Seterus, so Plaintiffs cannot be trusted to reliably champion the remaining class claim against PHS.

The Court is concerned as to whether the decision to abandon two out of three[13] class claims in exchange for an individual settlement creates an inherent conflict of interest between named parties and the class they still seek to represent with respect to the third, still present, class claim. On the other hand, the Plaintiffs have not settled any claims against PHS, and there is nothing in the record to suggest the class claim against PHS was brought to leverage a better individual settlement. The Court must decide what effect settlement with other defendants has on the adequacy of representation as against a remaining defendant. After all, there are many reasons to settle a lawsuit, and doing so does not by definition equate to impropriety.

"'The hard question concerning intraclass conflicts asks which conflicts should matter . . . what divisions should render the class representation so defective in structure as to rise to the level of a constitutional dereliction,' or violation of Rule 23(a)(4)." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012) (citing Samuel Issacharoff & Richard A. Nagareda, *Class Settlements Under Attack*, 156 U. Pa. L. Rev. 1649, 1678 (2008)). In *Dewey*, our Court of Appeals stated, "A conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental and can thus render a representative plaintiff inadequate. A conflict that is unduly speculative, however, is generally not fundamental." 681 F.3d at 184 (3d Cir. 2012) (citations omitted). Here, Plaintiffs arguably

---

[13] Two class claims pled against Seterus (FDCPA and unjust enrichment) were dismissed following the settlement, leaving the one class claim against PHS still alive. With respect to Citi, class claims were stricken by the Court (prior to the mediation) in *Trunzo II*. *See* Tel. Status Conference Tr. 7:23–24, ECF No. 256 ("[T]he Court has already ruled that no class can be certified vis-à-vis Citi."). Thus, the settlement between the Plaintiffs and Citi is irrelevant to the question of adequacy of representation because it only dealt with individual claims.

created a conflict concerning remedies by turning one out of two FDCPA class claims into a personal gain, but whether the class is at risk that Plaintiffs will do so again—and to the detriment of the purported class—is guesswork. However, the Court concludes the decision to settle class claims with another Defendant is relevant to its analysis of Plaintiffs' adequacy to represent that class against the remaining Defendant in the same case.[14]

Plaintiffs chose to bring all the claims against all of the Defendants in one lawsuit. That decision shows that the claims are not so independent that Plaintiff's decision-making with respect to other claims against co-Defendants should be considered irrelevant. While the distinctiveness of the claims and parties may have helped save Plaintiffs from a mootness problem, those decisions are not immunized from the Rule 23(a) analysis.[15]

Settlement for the benefit of the individual can be indicative of inadequate representation. *See, e.g., Hauff v. Petterson*, No. 09-cv-0639, 2009 WL 4782732 (D.N.M. Dec. 11, 2009); *Quadrel v. GNC Franchising, LLC*, No. 06-cv-0643, 2008 WL 474260, at *1 (W.D. Pa. 2008) ("Because [Plaintiff] settled his personal and representative claims he is now not an adequate representative as required by Fed. R. Civ. P. 23(a)."). In *Hauff*, the Court concluded on plaintiff's motion for class certification that the plaintiff's counsel was not a constitutionally adequate representative of the purported class. *Hauff*, 2009 WL 4782732. The plaintiff made "continued efforts to settle his individual claim" and "suggest[ed] he has asserted allegations as leverage for

---

[14] Courts regularly "take into account other litigation between the parties, especially where the plaintiff has initiated the suits, that render it likely that the representative plaintiff may disregard the interests of other class members." *Recchion on Behalf of Westinghouse Elec. Corp. v. Kirby*, 637 F. Supp. 1309, 1314 (W.D. Pa. 1986); *Blum v. Morgan Guar. Tr. Co.*, 539 F.2d 1388, 1390 (5th Cir. 1976) ("[T]he court may take into account outside entanglements that render it likely that the representative (plaintiff) may disregard the interests of the other class members.").

[15] Adequacy of representation goes beyond the inquiry of justiciability. The question here has evolved from a threshold justiciability issue whether Plaintiffs *can* bring their claims to a more permeating issue of whether Plaintiffs *should* be the ones bringing claims on behalf of others. The chief concern "of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183.

his individual claims rather than in the interests of the putative class." *Id.* at *10. To be clear, Plaintiffs never suggested (and PHS has not overtly alleged as much) that any pled class claims were asserted for individual settlement leverage, but the facts show the purported class pled against PHS could be at a higher risk of being treated as such leverage.

Neither party has pointed to any cases with facts similar to this case, but parallels can be drawn to the conflict that arises when a plaintiff suing a company is also a stock holder and that same plaintiff brings a derivative action as leverage to obtain a favorable settlement against the company in the direct action. In those cases, courts weigh the likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal or whether the suit seeks to protect all shareholders. *See, e.g.*, *Recchion*, 637 F. Supp. at 1315. In *Recchion*, the court noted that when the representative stake as a shareholder "paled in comparison" with the shareholder's outside interests such as in the direct suit, there was substantial likelihood of abuse of the process and the derivative claim should not be allowed to proceed. *Id.*

Applying this concept to this case, Plaintiffs' stake as named Plaintiffs in a successful class litigation against PHS would result in a recovery of $2,000 at most.[16] Plaintiffs' stake in a successful individual action against PHS would also result in $2,000 at most.[17] The difference is PHS's exposure: a defendant's exposure in an FDCPA class action case is $2,000 *plus* one percent of its net worth or $500,000, whichever is less.[18] Plaintiffs, by holding the class claim card, in theory have significant bargaining power for a settlement substantially in excess of $2,000.

---

[16] In a successful class action, 15 U.S.C § 1692k authorizes statutory damages for each named plaintiff of up to $1,000. 15 U.S.C § 1692k(a)(2)(B).

[17] "[I]n the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C § 1692k(a)(2)(A).

[18] In a successful class action, 15 U.S.C § 1692k authorizes statutory damages for each named plaintiff of up to $1,000 and for the rest of the class, "without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C § 1692k(a)(2)(B).

It is true that the value of Plaintiffs' individual claims appears to "pale" in comparison to the value of the individual claim *and* the purported class claim. Therefore, the Court can surmise that the class claim could be "a particularly effective weapon for purposes of obtaining a favorable settlement." *Recchion*, 637 F. Supp. at 1315. But are the Plaintiffs so likely to use this weapon at the expense of the class that the Court must strike the class action allegations? [19]

The ironic part of PHS's allegation of inadequate representation is that their concern (that Plaintiffs will "sell out" the class) only materializes if PHS itself decides to settle with Plaintiffs prior to class certification. Plaintiffs cannot "sell out" the class if Defendant does not buy it. PHS opted not to settle at the Court-ordered mediation and continues to vigorously defend its case before the Court. PHS's concern of another "sell out" depends solely on PHS doing something they have, in this eight-year long litigation, yet to do. Of course, PHS could change its mind, but the contentious relationship between the parties (or at least some of their counsel) demonstrates that this concern may remain hypothetical. "Purely hypothetical, potential or remote conflicts of interest do not disable plaintiff from being an adequate representative." *Recchion*, 637 F. Supp. at 1314; *Nat'l Veterans Legal Servs. Program v. United States*, 235 F. Supp. 3d 32, 41 (D.D.C. 2017) ("[C]onflicts will not defeat the adequacy requirement if they are speculative or hypothetical.") (citing *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003)); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 355 (N.D. Ill. 2007) ("Courts do not deny class certification on speculative or hypothetical conflicts.").

While this hypothetical finds support in the history of the case, the Court's concerns do not rise to the level necessary to defeat adequate representation at the motion to dismiss phase.

---

[19] PHS has suggested that because Plaintiffs no longer have a mortgage on their home that they do not suffer the kind of harm that the class may be suffering. This is a case for statutory damages. The FDCPA does not delineate the right to recovery based on one's indebtedness (or lack thereof). PHS points to no case law that the financial health of a party affects his or her ability to be an adequate representative for a class of individuals who may or may not still have a mortgage.

This, like the typicality requirement, may be an issue that materializes in consideration of class certification. For example, events between now and a certification motion may create more parallels to *Hauff*, where the plaintiff repeatedly attempted to use class claims for leverage in proposed individual settlement offers. 2009 WL 4782732 (D.N.M. Dec. 11, 2009). Or, discovery may demonstrate Plaintiffs' and Plaintiffs' counsel's sufficiently (or insufficiently) zealous advocacy for the class. Or, the parties may nonetheless settle their differences in a permissible and mutually agreeable fashion. In any event, the Court cannot conclude at this juncture that Plaintiffs are inadequate representatives as a matter of law.

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the Class Allegations of the TCAC, ECF No. 313, is denied without prejudice.

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: February 7, 2018
cc:  All counsel of record